IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER SCHRAMM, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 22-1443 (MN) |
| | ) |
| BRENDA MAYRACK, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

David P. Primack, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Wilmington, DE; William W. Palmer, PALMER LAW GROUP – Attorneys for Plaintiffs.

Arthur G. Connolly, Max B. Walton, Christina M. Thompson, CONNOLLY GALLAGHER LLP, Wilmington, DE – Attorneys for Defendants.

September 29, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, and Ludovic Bonnin ("Plaintiffs") brought this putative class action[1] against Defendants Brenda Mayrack, in her individual and official capacity as the Delaware State Escheator, Brian Wishnow, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, Richard J. Geisenberger, in his official capacity as the Secretary of Finance for the State of Delaware, and the State of Delaware ("Defendants"), challenging Defendants' alleged actions in connection with the escheatment and sale of stocks owned by Plaintiffs under the Delaware Unclaimed Property Law, 12 Del. C. §§ 1130-1190 ("UPL").  (D.I. 1).  Plaintiffs asserted causes of action under 42 U.S.C. § 1983, claiming that Defendants violated their rights under the takings and due process clauses of the United States Constitution.  Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (D.I. 11, 12), which has been fully briefed (*see* D.I. 14 & D.I. 15).  For the reasons set forth below, Defendants' motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.

**I.     BACKGROUND**

    **A.     Delaware Unclaimed Property Law**

This case concerns Delaware's Escheat Law, commonly referred to as the Delaware Unclaimed Property Law or "UPL."  12 Del. C. §§ 1130-1190.  Derived from feudal property concepts, escheat is a procedure by which "a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). Despite societal evolution away from feudalism, the concept of "escheat" remains.  Today, "the

---

[1]   Because Defendants do not address Plaintiffs' claims as they relate to class certification or otherwise challenge the certification of the class, the Court does not address class certification here.

state steps in the place of the feudal lord, by virtue of its sovereignty." *Escheat*, Black's Law Dictionary (11th ed. 2019) (quoting 4 James Kent, *Commentaries on American Law*, *423-24 (George Comstock ed., 11th ed. 1866)); *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 485-86 (3d Cir. 2017) (quoting the same with approval). Underlying Delaware's Escheat Law, and those of the other forty-nine states and the District of Columbia, is the idea that the state "provide[s] for the safekeeping of abandoned property and . . . reunite[s] the abandoned property with its owner.'" *Marathon*, 876 F.3d at 488 (quoting *N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012)).

The UPL, as amended in 2017, applies to "unclaimed property," which includes "tangible property . . . or a fixed and certain interest in intangible property held, issued, or owed in the course of a holder's business or by a government[.]" 12 Del. C. § 1130(19). The UPL covers the type of property at issue here, securities, which it defines as "[a] share, participation, debt obligation or similar interest issued by a corporation . . . or similar entity." *Id.* § 1130(21). Property is presumed abandoned "if it is unclaimed by the owner at the time specified" in the UPL.[2] *Id.* § 1133. Conversely, property is not presumed abandoned if the owner affirmatively indicates ownership of it during the statutorily prescribed period and in certain specified ways.[3] *See id.* § 1136.

---

[2]   Plaintiffs argue that "[a]s a threshold matter, the owner of the [unclaimed] property must be lost or unknown to the State of Delaware." (D.I. 1 ¶ 14); *see also* D.I. 14 at 9 ("The facts in discovery will show Plaintiffs . . . are not 'unknown' or 'lost,' but . . . are otherwise very well known to the State of Delaware[.]"). This is inaccurate and irrelevant. Contrary to Plaintiffs' contentions (which they provide no citations for in support), the UPL does not classify or differentiate property based upon whether the property owner is "lost" or "unknown."

[3]   Under the UPL, indication of an owner's interest in property includes: (1) a record communicated by the owner to the holder concerning the property or the account in which the property is held, (2) an oral communication by the owner to the holder concerning the property, if the holder contemporaneously makes and preserves a record of the fact of the owner's communication, (3) presentment of a check or other instrument of payment of a

The UPL applies to presumed abandoned property, regardless of where it is located in two circumstances: (1) when the last-known address of the owner, as shown on the records of the holder, is in Delaware, and (2) when the holder is domiciled in Delaware. *Id.* §§ 1140, 1141. For the UPL to apply in the second case, any of the following circumstances must also be met: (1) another state is not entitled to the property because there is no last-known address of the owner in the records of the holder, (2) the state of the last-known address of the owner does not provide for custodial taking of the property, or (3) the last-known address of the owner is in a foreign country. *Id.* § 1141. Pursuant to the UPL, holders, defined by the statute as "any person having possession, custody, or control of the property of another person," *id.* § 1130(10), must report and transfer custody of the property to the state if its owner fails to affirmatively indicate ownership as provided. *See id.* §§ 1133, 1146.

In addition to its reporting and transfer requirements, the UPL requires holders to provide notice to property owners of presumed abandoned property. *Id.* §§ 1148, 1149. Holders must, via first-class mail, advise owners that the "property will be transferred to the custody of the State Escheator" if the owner does not contact the holder within thirty days of the notice. *Id.* § 1149. If no response is received, the holder must report the property to the State in accordance with the UPL. *See id.* § 1142. In addition to notice by the holder prior to the report and transfer of the property to the state, for securities and other non-monetary property, the UPL requires that the State Escheator send written notice to the owner once such property is held by the state. *Id.* § 1150. For presumed abandoned property of all types, the State Escheator is required to biannually publish

---

dividend, interest payment, or other distribution, (4) activity directed by an owner in the account in which the property is held, and payment of a premium on an insurance policy. 12 Del. C. § 1136(b).

3

a notice that meets certain statutory requirements in a daily newspaper in Delaware and to maintain a regularly updated, internet-based searchable unclaimed property database. *Id.*

Although the property is transferred to the state, ownership does not transfer. Rather, the state holds the presumed abandoned property until claimed by the owner or the owner's successor in interest. *See id.* § 1165. Once property has been transferred to the state, any person claiming an interest in the property may file a claim with the State Escheator. *Id.* Until the owner claims the property, the State can use the funds for the general welfare. *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 531 (D. Del. 2016).

### B. This Case

Unlike many other escheat cases brought by companies challenging unclaimed property audits,[4] this matter is brought by individuals as a putative class action regarding the escheatment of securities. Here, Plaintiffs are four individuals who allege that their personal property, in the form of various stocks,[5] was "seized, sold, and otherwise destroyed" (Schramm), or "seized" (Kydd, Hilferty, and Bonnin) "without any notice whatsoever." (D.I. 1 ¶¶ 3-6). Defendants are employees of the Delaware State government authorized to enforce the UPL and the State itself.

Although certain portions of the Complaint could be construed as challenging the constitutionality of the UPL itself, the balance of the allegations suggest that Plaintiffs are solely

---

[4] *See, e.g.*, *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527 (D. Del. 2016), *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481 (3d Cir. 2017), *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393 (3d Cir. 2021).

[5] It appears that each plaintiff held shares of different stocks prior to the alleged escheatment. Schramm held shares of Amazon.com, Inc. stock, Kydd held shares of PEPCO Holdings, Inc., Agere Systems, Inc., Sunoco, Inc., Anadarko Petroleum Corporation, New Jersey Resources Corporation, AT&T, Inc., and Bankers Life & Casualty Co. stocks, and Hilferty was issued rebates for Inmar Brand Solutions, Inc. The Complaint does not indicate what stocks Bonnin held, only that he had "shares of stock." (D.I. 1 ¶¶ 3-6). The Complaint does not include how many shares the Plaintiffs held or the value of those shares for any of the above stocks.

challenging Defendants' actions, in their official capacities, as *ultra vires*.[6] In that regard, the Complaint "challenges the Defendants' misapplication of" the UPL (D.I. 1 ¶ 10), specifically alleging that "Defendants misapply the Unclaimed Property Law so that private property is seized, sold, and otherwise destroyed without notice to the owners so that the Delaware government acting as 'feudal lord' may generate revenue." (*Id.* ¶ 12). Plaintiffs further allege that "[u]nless the Defendants are restrained and enjoined from continuing to enforce and administer the UPL in a manner that violates Plaintiffs' constitutional rights, they will continue to do so far into the foreseeable future." (*Id.* ¶ 63).

Plaintiffs claim that they "received no constitutional notice before their property was seized" by Defendants and "were unsuccessful in seeking return of their property pursuant to the post-deprivation procedures." Specifically, according to Plaintiffs, "[p]ost seizure, the private property was not restored; instead, Plaintiffs received an arbitrary amount of cash without interest." (D.I. 1 ¶ 25).[7]

---

[6] Indeed, Plaintiffs confirm that "the question of whether the UPL itself is constitutional is not before the Court." (D.I. 14 at 11). Rather, Plaintiffs emphasize that their "central contention is that the State Escheator's *actions* under color of the UPL – like the seizure of property for which the State Escheator has no authority under the UPL, and the refusal to provide notice or just compensation – are unconstitutional." (*Id.*).

[7] Plaintiffs style their Complaint as presenting eight issues. (D.I. 1 ¶ 27). One such issue concerns Delaware's use of audit firms, specifically, "[w]hether the Defendants retain privately commissioned 'Auditors' . . . when they have no constitutional or statutory authority for them to do so, and who are paid a percentage of the seized private property with no notice to the owners." (*Id.* ¶ 27(7)). It is wholly unclear, however, how the State's use of audit firms is relevant to Plaintiffs' claims. As pleaded, the Court agrees with Defendants that Plaintiffs lack standing to challenge Delaware's use of audit firms because they have not established any concrete or particularized harm caused by Defendants as it relates to the performance of audits. (*See* D.I. 12 at 18-19; *see also* D.I. 1 ¶¶ 27(7), 33-38).

5

Plaintiffs filed their Complaint on November 2, 2022. (D.I. 1). On January 5, 2023, Defendants moved to dismiss the Complaint, seeking to dismiss all claims and defendants. (D.I. 11, 12). That motion has been fully briefed. (*See* D.I. 14, 15).

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Fed. Savings and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendants raise a factual challenge. (D.I. 12 at 10). As Defendants note in their briefing, Plaintiffs bear the burden to prove that jurisdiction does in fact exist. *Mortensen*, 549 F.2d at 891. However, the Plaintiffs' "burden is relatively light, since dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Blair v. Wal-Mart Stores Inc.*, No. 03-cv-717, 2004 WL 2283560, *2 (D. Del. Sept. 30, 2004) (internal quotation marks and citations omitted).

"A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim . . . only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fildelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). The Third Circuit has noted that "[t]he threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is [] lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989).

B.      **Rule 12(b)(6) Standard**

A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citation omitted). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

7

### III. DISCUSSION

#### A. Defenses

##### 1. Eleventh Amendment

Defendants urge dismissal of the state of Delaware, a named defendant, because any claims against the state are barred by the Eleventh Amendment. (D.I. 12 at 10). In response, Plaintiffs focus their attention on the state official Defendants, and offer nothing to answer Defendants' argument that claims against the state are barred by the Eleventh Amendment, beyond declaring the State "a necessary and indispensable party." (D.I. 14 at 7).

The states of this country "possess immunity from suit in the federal courts, also known as Eleventh Amendment immunity." *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008) (tracing history of state sovereign immunity in the United States). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, by its terms, the Eleventh Amendment bars suits against states in federal court. *See, e.g.*, *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008). The Supreme Court has additionally and consistently clarified that it extends to suits against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *accord Lombardo*, 540 F.3d at 194 (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

This immunity, however, "is not absolute*,*" *Lombardo*, 540 F.3d at 195, and there are "three narrowly circumscribed exceptions": (1) "abrogation by Act of Congress"; (2) "suits against individual state officials for prospective relief to remedy an ongoing violation of federal law"; and (3) "waiver by state consent to suit," *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 344-45 (3d Cir. 2003) (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271

8

F.3d 491, 503 (3d Cir. 2001)). Plaintiffs have not argued that any of these exceptions apply to the State of Delaware itself in this case, and the Court can determine no reason as to why they would. Accordingly, the claims against the State of Delaware will be dismissed with prejudice.

### 2. **Qualified Immunity**

Plaintiffs have brought suit against three state officials, Brenda Mayrack, Brian Wishnow, and Richard J. Geisenberger, but sue only Defendant Mayrack in both her individual *and* official capacities.[8] Defendants argue that the claims against Defendant Mayrack in her individual capacity should be dismissed on qualified immunity grounds. (D.I. 14 at 19-20). Qualified immunity shields officials from personal liability for "conduct [that] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, to survive a claim of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (internal quotation marks and citation omitted); *see also Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (courts have discretion in determining which of the two prongs in the qualified immunity test to resolve first). "A right is 'clearly established' if, in the *specific context of the case*, there was sufficient precedent to put the defendants on notice that their conduct was constitutionally prohibited." *Sykes v. Carroll*, 477 Fed. App'x 861, 864 (3d Cir. 2012).

Immunity questions should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). A court may determine, on a motion to dismiss, that a defendant is entitled to an immunity defense "only when the immunity is established on the face

---

[8]   The other Defendants are sued only in their official capacities.

9

of the complaint," as is the case here. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001); *see also Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989). Liability in a section 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. That is, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). If "a reasonable official could have believed the actions to be lawful, the official is entitled to immunity." *Leveto*, 258 F.3d at 163.

Although Plaintiffs allege that Defendant Mayrack was personally involved in "institut[ing] an arbitrary and capricious system," (D.I. 1 ¶ 7), and "issu[ing] oral instructions to block and frustrate the claim process," (*Id.* ¶ 18), these allegations are conclusory and lack particularity. Plaintiffs note in their opposition brief that they "do not allege that the State Escheator ever complied with the UPL during the time in question." (D.I. 14 at 10). In addition to being conclusory, these allegations fail to suggest that Defendant Mayrack acted in a way that a reasonable official would have known to be unlawful. To the extent Plaintiffs claims are based on the monetary conversion of their shares of stock, the "State Escheator is not liable in any action for any act by the State Escheator made in good faith under" the section of the UPL concerning the "[r]ecovery of securities or value by owner." *See* 12 Del. C. § 1160. Thus, because Plaintiffs' allegations that Defendant Mayrack was personally involved in an unconstitutional scheme were not made "with appropriate particularity" and there is no indication that her conduct was such that

a reasonable official would have known it to be unlawful, the claims against Defendant Mayrack in her individual capacity will be dismissed with prejudice.

### B. Constitutional Claims

Plaintiffs assert two causes of action under 42 U.S.C. § 1983, claiming that Defendants violated their rights under the takings and due process clauses of the United States Constitution. A section 1983 claim requires plaintiffs to demonstrate that defendants, acting under color of state law, deprived them of a right secured by the Constitution or the laws of the United States. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Here, because Defendants are state actors for purposes of section 1983, the Court's focus is on whether Plaintiffs have adequately alleged a violation of their constitutional rights.

#### 1. Takings Clause

The takings clause prohibits states from taking private property for public use without just compensation. U.S. Const. amend. V, XIV. "To succeed on a takings claim, a plaintiff must show that the state's action affected a 'legally cognizable property interest.'" *Temple-Inland*, 192 F. Supp. 3d at 551 (quoting *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012)). "Without a legally cognizable property interest, [a plaintiff] has no cognizable takings claim." *In re Trustees of Conneaut Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017). Thus, "[a] threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022).

A holder generally has no property interest in abandoned property. *Delaware v. New York*, 507 U.S. 490, 502 (1993) ("Funds held by a debtor become subject to escheat because the debtor has no interest in the funds."). Thus, there is no unlawful taking when a state seeks to escheat abandoned property. *Riggs Nat'l Bank of Wash. D.C. v. Dist. of Columbia*, 581 A.2d 1229, 1243

11

(D.C. 1990) (noting that a takings claim would fail because the abandoned funds to be escheated to the state were not the property of plaintiff).

Here, Plaintiffs allege that after their property, in the form of securities, was transferred to the State, they "were unsuccessful in seeking return of their property pursuant to the post-deprivation procedures." (D.I. 1 ¶ 25). Plaintiffs further allege that their "private property was not restored; instead, Plaintiffs received an arbitrary amount of cash without interest." (*Id.*). Plaintiffs, however, provide no information regarding the value of the property that was escheated or the amount of cash that they received, as individuals, or in total, other than that it was "arbitrary." (D.I. 1 ¶ 25; *see generally* D.I. 1). Based on the limited information provided in the Complaint regarding the value of the property escheated, the purported taking appears to be the State's failure to pay interest on the escheated property. *See* D.I. 1 ¶ 25 ("Plaintiffs received an arbitrary amount of cash *without interest*." (emphasis added)).

Defendants argue that Plaintiffs' claims regarding the inadequacy of the amount of cash ("an arbitrary amount . . . without interest") they received from the State are not ripe because Plaintiffs were "required to seek relief under the statutory scheme[.]" (D.I. 12 at 11). Contrary to Defendants' argument, however, although the UPL does include procedures for making claims and appealing the State Escheator's determinations, there is no legal requirement that Plaintiffs exhaust Defendants' administrative claim process. *See Pakdel v. City of San Francisco*, 141 S. Ct. 2226, 2230 (2021) (section 1983 "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials' . . . [and] includes 'the settled rule' that 'exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983.'" (quoting *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019))).

Defendants also argue that Plaintiffs' takings clause claims are not viable because the exercise of the State's authority under the UPL does not constitute a taking. (D.I. 12 at 11-12). Defendants emphasize that there can be no unlawful taking of abandoned property and further, that the State's non-payment of interest on unclaimed property does not amount to a taking. (*Id.* at 12-13). Thus, according to Defendants, because Plaintiffs property was considered abandoned under the UPL, there can be no unlawful taking as to that property or related interest. Plaintiffs do not dispute that owners of presumed abandoned property are not entitled to interest, but rather argue that the property was not abandoned, or should not have been presumed abandoned. (*See* D.I. 14 at 9-10). Despite their assertions that their property was not abandoned, Plaintiffs do not challenge the statutory basis for "[w]hen property [is] presumed abandoned," 12 Del. C. § 1133, but instead argue again that they received insufficient notice. Because Plaintiffs do not dispute that their property was presumed abandoned under the UPL and presumed abandoned property is not entitled to interest, they have failed to assert that they had legally cognizable property interests affected by the State's action. *See Temple-Inland*, 192 F. Supp. 3d at 551.

In sum, the Court finds that Plaintiffs have not adequately alleged a takings clause violation. The Complaint includes only conclusory allegations regarding the escheat of Plaintiffs' property. Plaintiffs provide no information regarding the value of the property escheated or the cash recovered. Rather, the Complaint states only that Plaintiffs' "private property was not restored; instead, Plaintiffs received an arbitrary amount of cash without interest." (D.I. 1 ¶ 25). It is unclear whether the value of this "arbitrary amount" was more, less, or the same as the value of Plaintiffs' securities. Although it appears that Plaintiffs' takings claim is based on the State's failure to pay interest on the escheated property, the Complaint includes nothing about the value of the interest, only that the cash Plaintiffs received, was "without interest." (*Id.*). Thus, the

Complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs' taking clause claim will be dismissed without prejudice.

### 2. Due Process Clause

The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish a prima facie case of a procedural due process violation, a plaintiff "must allege state sponsored-deprivation of a protected interest in life, liberty or property." *Rusnak v. Williams*, 44 Fed. App'x 555, 558 (3d Cir. 2002). A protected property interest is one based on "a legitimate claim of entitlement" under state or federal law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The "due process of law" essentially requires that the government provide a person "notice and opportunity to be heard" in connection with the deprivation of such a protected property interest. *Zappan v. Pa. Bd. of Prob. and Parole*, 152 Fed. App'x 211, 220 (3d Cir. 2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Thus, in analyzing a procedural due process claim, the Court must "determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment" and if the interest is one protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

Here, assuming the allegations of the Complaint to be true, the Court finds that Plaintiffs plausibly allege a violation of their Fourteenth Amendment due process rights. It is undisputed that the escheatment process at issue constitutes state action. Plaintiffs allege that, as a result of that state action, they suffered a deprivation of a property interest, specifically the shares of stocks they owned. Indeed, Defendants do not contest that Plaintiffs' property, in the form of various stocks, which Defendants believed to be abandoned, was escheated to the state. Further, it appears

that Plaintiffs' shares of stock were later sold. (D.I. 1 ¶ 25) (claiming "the private property was not restored; instead, Plaintiffs received an arbitrary amount of cash without interest"). Defendants, however, contend that Plaintiffs had no property interest in the stocks once they were presumed abandoned. (D.I. 12 at 13). Accepting Plaintiffs' contentions as true, the Court must determine whether they received constitutionally adequate process.

Plaintiffs allege that their property was "seized" or "seized, sold, and otherwise destroyed" "without any notice whatsoever." (D.I. 1 ¶¶ 3-6). Defendants argue that (1) no notice is required once property is presumed abandoned under the UPL and (2) additional notice is provided anyway. (D.I. 12 at 13-14). Defendants maintain that because the UPL's "presumption of abandonment is self-executing . . . 'no specific notice need be given of an impending lapse.'" (D.I. 12 at 13) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 533 (1982)). Rather, Defendants proffer that the UPL itself serves as notice. Despite this, as Defendants acknowledge, additional notice is required by the UPL. Specifically, the UPL requires that the holder of unclaimed property provide mailed notice to the owner before the property is reported or transferred to the state. *See* 12 Del. C. §§ 1148, 1149. Then, after the property has escheated to the State, additional notice is provided, this time by the State. *Id.* § 1150.[9] Specifically, the UPL requires that the State Escheator send written notice to the owner of a security presumed abandoned, informing the owner that the property is being held by the State Escheator. *Id.* The UPL requires that such notice be given prior to monetary conversion of the security. (D.I. 12 at 15 (citing 12 Del. C. §§ 1150, 1160)). This notice is not required, however, if "the State Escheator determines that the notice would not

---

[9] The Court understands Defendants' arguments to be based on the idea that once property is presumed abandoned, it is in effect, always abandoned, until and unless a claim is successfully made. This, however, seems inconsistent with the fact that the UPL imposes a notice obligation on holders before escheatment and the State itself after escheatment and prior to conversion.

15

be received by the owner or . . . the total value of the security . . . does not exceed $50." 12 Del. C. § 1150.

Accordingly, Plaintiffs' due process challenge depends at least in part on a determination of facts not yet developed, specifically whether Plaintiffs received the notice required by the UPL prior to the transfer and monetary conversion of their property. Because this factual issue is highly relevant to the case, and it can be resolved in relatively short order, the parties are directed to meet and confer and submit a joint schedule for conducting expedited discovery regarding the notice, if any, Plaintiffs received as it relates to their property. Thus, Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment due process claim is denied.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART. Plaintiffs' claims are dismissed with prejudice as to the State of Delaware and Defendant Mayrack in her individual capacity. Plaintiffs' claim for violation of the takings clause of the Fifth Amendment under 42 U.S.C. § 1983 is dismissed without prejudice because the Complaint fails to sufficiently plead the claim. Plaintiffs are given leave to amend their Complaint within thirty days of the Order accompanying this Opinion, to the extent they can adequately plead a Fifth Amendment takings clause claim. Defendants' motion to dismiss Plaintiffs' claim for violation of their Fourteenth Amendment due process rights under 42 U.S.C. § 1983 is denied; however, within thirty days of the Order accompanying this opinion, the parties are directed to meet and confer and submit a joint schedule for conducting expedited discovery related to the notice, if any, Plaintiffs received regarding the escheatment of their property.

An appropriate Order will be entered.