IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER SCHRAMM, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | C.A. No. 22-1443 (MN) |
| ) | |
| BRENDA MAYRACK, et al., ) | |
| ) | |
| Defendant.  ) | |

# **MEMORANDUM OPINION**

David P. Primack, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Wilmington, DE; William W. Palmer, PALMER LAW GROUP – Attorneys for Plaintiffs.

Arthur G. Connolly, Max B. Walton, Christina M. Thompson, CONNOLLY GALLAGHER LLP, Wilmington, DE – Attorneys for Defendants.

September 26, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

On October 23, 2023, Plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, and Ludovic Bonnin ("Plaintiffs") filed an Amended Complaint ("the Amended Complaint") in their putative class action against Defendants Brenda Mayrack, in her capacity as the Delaware State Escheator, Brian Wishnow, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property and Richard J. Geisenberger, in his capacity as the Secretary of Finance for the State of Delaware (collectively, "Defendants"), challenging Defendants' alleged actions in connection with the escheatment and sale of stocks owned by Plaintiffs under the Delaware Unclaimed Property Law, 12 Del. C. §§ 1130-1190 ("UPL"). (D.I. 23). The Amended Complaint asserts causes of action under 42 U.S.C. § 1983, claiming that Defendants violated Plaintiffs' rights under the United States Constitution's Fifth Amendment takings clause and Fourteenth Amendment due process clause. (D.I. 23 at 21-29). Defendants have moved to dismiss Plaintiffs' takings clause claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 27, 28). For the reasons set forth below, Defendants' motion to dismiss this claim is granted.

**I.    BACKGROUND**

Plaintiffs brought this case as a putative class action against the State of Delaware and four of its employees. (D.I. 1 at 1-4). In their initial complaint ("the Complaint"), Plaintiffs alleged that Defendants misapplied Delaware's Unclaimed Property Law ("the UPL") to seize securities. (D.I. 1 at 2-21).[1] Plaintiffs alleged that in doing so, Defendants violated their rights under two

---

[1] As explained in a previous Memorandum Opinion, the UPL codifies the common-law doctrine of escheat, which permits a sovereign to take title of abandoned property. (D.I. 17 at 2-5). The UPL, 12 Del. C. §§ 1130-1190, specifies when securities are considered "abandoned," when and how Delaware's State Escheator may take custody of such securities, and how individuals may seek their return. (D.I. 17 at 2-5). Until property held

1

provisions of the U.S. Constitution: the Fourteenth Amendment due process clause and the Fifth Amendment takings clause. (D.I. 1 at 21-23). Plaintiffs sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and attorney's fees pursuant to 42 U.S.C. § 1988. (D.I. 1 at 23-24).

Defendants moved to dismiss the Complaint (D.I. 11), which this Court granted-in-part and denied-in-part on September 29, 2023 (D.I. 17, 18). The Court dismissed with prejudice Plaintiffs' claims against the State of Delaware and Delaware State Escheator Brenda Mayrack ("Mayrack") in her personal capacity (D.I. 18 at 1), but allowed Plaintiffs' Fourteenth Amendment due process claim to proceed against the remaining Defendants (D.I. 18 at 2).

The Court also dismissed Plaintiffs' Fifth Amendment takings clause claim ("the takings claim") without prejudice (D.I. 18 at 1). The Court found that "Plaintiffs lack[ed] standing to challenge Delaware's use of audit firms" to administer the UPL, "because they have not established any concrete or particularized harm caused by Defendants as it relates to the performance of audits." (D.I. 17 at 6 n.7). The Court further observed that:

> Plaintiffs provide no information regarding the value of the property escheated [by Defendants under the UPL] or the cash recovered [by Plaintiffs]. Rather, the Complaint states only that Plaintiffs' "private property was not restored; instead, Plaintiffs received an arbitrary amount of cash without interest." (D.I. 1 ¶ 25). It is unclear whether the value of this "arbitrary amount" was more, less, or the same as the value of Plaintiffs' securities. Although it appears that Plaintiffs' takings claim is based on the State's failure to pay interest on the escheated property, the Complaint includes nothing about the value of the interest, only that the cash Plaintiffs received, was "without interest." (*Id.*).

(D.I. 17 at 14)

---

under this statute is claimed, the state may use these funds for the general welfare. (D.I. 17 at 5) (citing *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 531 (D. Del. 2016)).

2

Thus, the Court found that the Complaint lacked "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (D.I. 17 at 14-15 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted))). The Court, however, granted Plaintiffs leave to amend the Complaint "to the extent they can adequately plead a Fifth Amendment takings clause claim." (D.I. 17 at 17; D.I. 18 at 1).

Plaintiffs filed an amended complaint ("the Amended Complaint") on October 30, 2023. (D.I. 23). The Amended Complaint largely resembles the Complaint but contains a new paragraph ("paragraph 68") with several additional arguments against the UPL. (D.I. 23 at 22-27; D.I. 23-1 at 24-28). It does not, however, allege the value of the interest which Plaintiffs believe they were owed. (D.I. 23 at 22-27).

On November 17, 2023, Defendants filed a motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). (D.I. 27, 28). The motion has been fully briefed. (D.I. 28, 35, 45). Although Defendants' motion asks the Court to dismiss the entire Amended Complaint, (D.I. 27), the opening brief supporting the motion argues only for dismissal of the takings claim. (D.I. 28 at 1, 14, 16-19, 21, 22, 23, 24, 27). The Court will accordingly only consider the takings claim.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Fed. Savings and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendants raise a factual challenge. (D.I. 12 at 10). As

3

Defendants note in their briefing, Plaintiffs bear the burden to prove that jurisdiction does in fact exist. *Mortensen*, 549 F.2d at 891. However, the Plaintiffs' "burden is relatively light, since dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Blair v. Wal-Mart Stores Inc.*, No. 03-cv-717, 2004 WL 2283560, *2 (D. Del. Sept. 30, 2004) (internal quotation marks and citations omitted).

"A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim . . . only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fildelcor*, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). The Third Circuit has noted that "[t]he threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is [] lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989).

B. <u>**Rule 12(b)(6) Standard**</u>

A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).  A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted.  *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

### III. DISCUSSION

#### A. Plaintiffs Lack Standing to Sue on Behalf of Corporations or to Challenge the State's Use of Auditors

Defendants challenge jurisdiction under Rule 12(b)(1), arguing that Plaintiffs lack standing to bring derivative suits on behalf of "the unspecified corporations in which they purportedly own stock," or to challenge the use of third-party auditors to help administer the UPL.  (D.I. 28 at 15-16; D.I. 45 at 11-12).  For their part, Plaintiffs state that they "do not allege 'derivative' standing on behalf of . . . the Corporations in which the injured Plaintiffs and [putative] Class Members were shareholders."  (D.I. 35 at 17).

"Standing is a jurisdictional matter." *Nichols v. City of Rehoboth Beach*, C.A. No. 15-602 GMS, 2015 WL 8751180 at *3 (D. Del. Dec. 14, 2015). Moreover, when as here a defendant raises a factual challenge in a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction (D.I. 28 at 12), "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortenson*, 549 F.2d at 891. Here, Plaintiffs have disclaimed standing to sue on behalf of any corporations in which they own stock, and the Court agrees that they lack this standing.

Defendants also allege that Plaintiffs lack standing to challenge Defendants' use of third-party auditors. (D.I. 28 at 16; D.I. 45 at 11-12). When the Court dismissed Plaintiffs' Complaint, it found that "Plaintiffs lack[ed] standing to challenge Delaware's use of audit firms because they have not established any concrete or particularized harm caused by Defendants as it relates to the performance of audits." (D.I. 17 at 6 n.7) (citing D.I. 12 at 18-19 and D.I. 1 ¶¶ 27(7), 33-38). The Amended Complaint does not cure this defect. Paragraph 68 alleges that third-party auditors engage in several unscrupulous practices. (D.I. 23 at 24-25). It further states that two Plaintiffs who reside abroad, Walter Schramm and Jan Peters, were assigned fake United States addresses "so that the[ir] property may be inputted into the Delaware property seizure system and then listed on the broken and grossly deficient website." (D.I. 23 at 25). Yet it does not specify how this alleged act harmed either of those plaintiffs, or give any other examples of Plaintiff-specific harm that arose from auditors' actions. (D.I. 23 at 24-25). Plaintiffs have therefore not cured the defect in the Complaint.

Defendants ask the Court to dismiss Plaintiffs' entire amended takings claim on the basis of their failing to demonstrate standing to sue on behalf of corporations or regarding the use of third-party auditors. (D.I. 28 at 15-16). As Plaintiffs have sued "on behalf of themselves" (D.I. 23 at 1) and raise some allegations against Defendants without discussing the auditors (D.I. 23

6

¶ 68(11)), the Court disagrees that these two standing deficiencies undermine the amended takings claim to the extent it is brought on behalf of the named Plaintiffs.  It will therefore evaluate Defendants' challenges to this Claim on Eleventh Amendment and Rule 12(b)(6) grounds.

> **B.     The Eleventh Amendment Bars Plaintiffs From Seeking Return Of Stocks Or Refunds From Their Sale**

Defendants argue that this Court lacks subject-matter jurisdiction over "Plaintiffs' claims for retrospective relief and for damages paid from public funds" because these claims "are not properly pled and are barred by the Eleventh Amendment."  (D.I. 28 at 16-17).  The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

The Amended Complaint includes a request that this Court grant "injunctive relief requiring Defendants to return the property belonging to each Plaintiff and Class Member with substantive Due Process rights." (D.I. 23 at 28).  Defendants argue that the Eleventh Amendment's grant of sovereign immunity to states bars this request.  They cite the U.S. Supreme Court's holding in *Edelman v. Jordan*, 415 U.S. 651, 677 (1974), that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief," and "may not include a retroactive award which requires the payment of funds from the state treasury." (D.I. 28 at 17 (also citing similar holdings in *Fla. Dept. of State v. Treasure Salvors, Inc*. 458 U.S. 670, 689-90 (1982) and *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 344-45 (3d Cir. 2003)).

The Court agrees that the Eleventh Amendment bars Plaintiffs from seeking return of their stock.  In one of the cases Plaintiffs cite, *Taylor v. Westly*, the Ninth Circuit found claims seeking return of stock held by a state escheator, or proceeds from the sale of that stock, are not blocked

7

by *Edelman*'s interpretation of the Eleventh Amendment because "money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars" 402 F.3d 924, 930-35 (9th Cir. 2005) (cited in D.I. 35 at 18)). Consistent with that, the District of New Jersey found that *Taylor* permitted a suit against that state's escheator, in part because New Jersey's Unclaimed Property Act requires one-quarter of escheated funds to be placed in a separate trust fund. *Salvato v. Harris*, Civil Action No. 21-12706 (FLW), 2022 WL 1224962 at *6 (D. N.J. April 26, 2022) (citing N.J.S.A. 46:30B-74(c)). It found that this requirement "confirms the custodial nature of New Jersey's unclaimed property laws," and distinguished New Jersey's escheat laws from those of other states that require deposit of unclaimed property in the state's general fund – laws whose administrators had been found protected by Eleventh Amendment immunity. *Id.* (citing *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 695 (W.D. Tex. 2006)).

Delaware's escheat laws fall into the latter category. Unlike New Jersey's laws, they do not guarantee that a certain percentage of all receipts be set aside to cover escheat claims. Instead, they state that "the State Escheator shall deposit into the General Fund all moneys or proceeds of property received," except for annual receipts that exceed $554 million, which are placed into an "Escheat Special Fund" for "extraordinary escheat claims." *See* 12 Del.C. § 1163(a) (requiring deposit into the general fund "subject to the limitations" in 29 Del.C. § 6102(s)) *and* 29 Del.C. § 6102(s) and (w) (setting $554 million limit for general fund escheat deposits)). The State Escheator also pays claims out of the General Fund. 29 Del.C. § 1168.

Plaintiffs do not seek property from the state's Escheat Special Fund. (D.I. 23). The Court therefore cannot conclude that they are seeking property from an escheat system "of a custodial nature," *Salvato*, 2022 WL 1224962 at *6, one whose administrators would not be protected by

Eleventh Amendment Sovereign Immunity. The Eleventh Amendment bars their request for injunctive relief for a return of property or proceeds from its sale.

### C. The Amended Complaint's Takings Claim Otherwise Fails

The Fifth Amendment's takings clause prohibits states from taking private property for public use without just compensation. U.S. Const. amend. V, XIV. Plaintiffs' Complaint failed to state a takings clause claim because it did not indicate either how much interest Plaintiffs believed they were owed or how the "arbitrary amount" of cash Plaintiffs received compared to the value of their allegedly-seized securities. (D.I. 17 at 14-15). The Amended Complaint (D.I. 26) does not correct these defects.

Plaintiffs have asserted several new allegations in paragraph 68 of their Amended Complaint. (D.I. 23-1 at 24-28). Defendants ask the Court to ignore them; they argue that "leave was granted to allow Plaintiffs to allege specific facts regarding the value of Plaintiffs' claims, the amounts paid, or the amount of interest purportedly due," and that "this disregard of the Court's directive warrants dismissal of the Amended Takings Claim." (D.I. 28 at 14). The Court disagrees; it did not restrict Plaintiffs as Defendants suggest. It granted Plaintiffs leave to amend "to the extent they can adequately plead a Fifth Amendment takings clause claim." (D.I. 17 at 17).

Although Plaintiffs had more leeway to amend their complaint than Defendants contend, the Amended Complaint still fails to plead a Fifth Amendment takings clause claim that can survive dismissal under Rule 12(b)(6). "To succeed on a takings clause claim, a plaintiff must show that the state's action affected a 'legally cognizable property interest.'" *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 551 (D. Del. 2016) (quoting *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012)). Thus, "[a] threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022).

9

The Amended Complaint asserts no such interest.  Three of the four named Plaintiffs allege that Defendants seized shares of their stock, (D.I. 23 at 2-3),[2] and one subsection of the Amended Complaint's newly-added paragraph 68 argues that this alleged seizure causes "irreparable harm" because it "severs all stock rights including those that include dividends (i.e. more property), stock splits (property), [and] material information on the growth of their investments and the opportunity to purchase more stock."  (D.I. 23 ¶ 68(11)).  The Court cannot conclude that these stock rights amount to a "legally cognizable property interest."  *Nekrilov*, 45 F.4th at 669.

The Supreme Court has held that "a mere unilateral expectation or an abstract need is not a property interest entitled to protection."  *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161 (1980).  Both the Third Circuit and the Federal Circuit have since applied this ruling to situations where takings clause claims fell short of Rule 12(b)(6)'s standards.  *See Newark Cab Association v. City of Newark,* 901 F.3d 146, 154 (3d Cir. 2018) *and American Bankers Association v. United States*, 932 F.3d 1375, 1385 (Fed. Cir. 2019).  The Federal Circuit did so in a case involving stock dividends and found that a party without a contractual right to receive those dividends had a "mere unilateral expectation"– not a protected property interest.  *See American Bankers Association*, 932 F.3d at 1385.  Here, too, Plaintiffs have not established that they were contractually entitled to dividends or any of the other stock-related benefits they list.  (D.I. 23 at 2-3, 26-27).  They have therefore not established a protected property interest related to stocks.

The same subsection of paragraph 68 alleges that Defendants "seize, sell, and destroy private property when it has no monetary value," property such as "love letters," "paper military citations of valor," and "the crayon picture of a deceased child."  (D.I. 23 ¶ 68(11)).  Regardless

---

[2]   The fourth named Plaintiff, Mark Hilferty, states that he "was issued rebates for Inmar Brand Solutions, Inc.," but does not specify what property Defendants allegedly seized. (D.I. 23 at 2).

of whether the takings clause protects a property interest in such items, Plaintiffs have not alleged that Defendants took this kind of property from them; as Defendants point out (D.I. 28 at 24) Plaintiffs only support this claim with two news stories about practices by California's government in the late 2000s. (D.I. 23 ¶ 68(11)). Plaintiffs effectively ask this Court to infer that, because these kinds of property seizures took place years ago under another state's escheat laws, Defendants also carried them out against Plaintiffs. Such an "unwarranted inference" cannot withstand a motion to dismiss for failure to state a claim. *Morse*, 132 F.3d at 906. The Court thus cannot treat Defendants' alleged seizure of property without monetary value (D.I. 23 ¶ 68(11)) as a takings clause violation.

The Amened Complaint's new section, paragraph 68, does not allege any other property seizures not already discussed in the Complaint and considered by this Court. (D.I. 23 at 22-27). Plaintiffs have therefore not shown that they could be entitled to relief from these practices and cannot maintain their takings claim on behalf of themselves or any other putative class members. *See, e.g., Martino v. Mazie*, No. 22-2019, 2023 WL 1990306 at *3 (3d Cir. Feb. 14, 2023) (affirming denial of putative class action after concluding that named plaintiffs had failed to state a claim upon which relief could be granted).

### D. The Court Will Strike Paragraph 68's Other Arguments

As noted above, this Court granted Plaintiffs leave to amend "to the extent they can adequately plead a Fifth Amendment takings clause claim." (D.I. 17 at 17). Yet the remaining subsections of paragraph 68 fall outside this instruction. In these new subsections, Plaintiffs: (1) argue for the first time that Defendants violated other Constitutional safeguards and federal securities laws (D.I. 23 ¶¶ 68(2), (3), (9), (10))[3]; (2) expand upon their allegations regarding third-

---

[3]   *See Jones v. Flowers*, 547 U.S. 220 (2006) (cited at D.I. 23 ¶ 68(2); case involving Fourteenth Amendment due process clause); 15 U.S.C. §§ 77a-77bbb, 78a-78hh (cited at

11

party auditors (D.I. 23 ¶¶ 68(4) – 68(9)); and (3) reiterate other arguments made in the Complaint and elsewhere in the Amended Complaint.[4] The Court agrees with Defendants that these additions exceed the Court's leave to amend. (D.I. 28 at 14). None even attempts to identify a property interest not already considered by this Court – the requisite first step of a takings clause claim. *Temple-Inland*, 192 F. Supp. at 551.

This District has adopted the District of New Jersey's rule that when a defendant moves to dismiss complaint amendments pursuant to Federal Rule of Civil Procedure 12(b)(6), and the court concludes that the challenged amendments exceed the leave-to-amend scope, "it is proper for the Court to, instead, deem Defendants' motion a motion to strike pursuant to [Federal] Rule [of Civil Procedure] 12(f) . . . and strike the amendments." *U.F.C.W. Local 56 Health and Welfare Fund v. J.D.'s Market*, 240 F.R.D. 149, 154 n.5 (D. N.J. 2007). *See also Good Kaisha IP Bridge 1 v. TCL Communication Technology Holdings Ltd.*, C.A. No. 15-634-JFB-SRF, 2018 WL 11426956 at *12 (D. Del. Feb. 28, 2018). The Court found in the previous section that subsection ¶ 68(11) did not

---

D.I. 23 ¶ 68(3); federal securities statutes allegedly undermined by Defendants' actions); U.S. Const. art VI. Cl. 2 (Supremacy Clause; cited at D.I. 23 ¶ 68(10) as an allegedly-violated provision); *United States v. Winstar Corp.,* 518 U.S. 839, 896 (1996) (cited at D.I. 23 ¶ 68(9) to argue that "the Supreme Court has long expressed constitutional concern with governmental self-interest").

[4] *See* D.I. 23 ¶ 68(1) (new statement that the UPL "results in seizure of private property from citizens who have no nexus with the state of Delaware whatsoever" such as Plaintiff Schramm) *and* D.I. 23 at 2, 11 (text present in both complaints describing Plaintiff Schramm as an Italian resident and listing as an issue "whether Defendants may seize private property outside the borders of the State from Individuals and business with no nexus to the state of Delaware" such as Plaintiff Schramm); D.I. 23 ¶ 68(12) (new text that UPL has been "subverted into a revenue stream and a cash cow by Defendants") *and* D.I. 23 at 13 (text present in both complaints that Defendants treat UPL "solely as a revenue generator for the State of Delaware"); D.I. 23 ¶ 68 (new allegation in paragraph 68's preamble that Plaintiffs are private property "owners," rather than "holders" with custody over but no interest in the private property) *and* D.I. 23 at 21 (statement from both complaints that Plaintiffs "have a constitutionally protected property interest in the private property that they own").

state a claim. It now strikes the remaining subsections as outside the scope of Plaintiff's leave to amend.

Given that all of the Plaintiffs' amendments have either been stricken or fail to state a takings-clause claim for relief, the Court need not evaluate Defendants' argument that these allegations "are insufficient as a matter of law to overcome the presumption that government agents have properly discharged their official duties," (D.I. 28 at 26) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)), to grant their motion to dismiss.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss (D.I. 27, 28) will be GRANTED with respect to the Amended Complaint's Second Claim for Relief. (D.I. 23 at 22-28). An appropriate order will issue.