## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER SCHRAMM; CHRISTINE KYDD; MARK HILFERTY; LUDOVIC BONNIN, on behalf of themselves and other persons similarly situated, | |
| *Plaintiffs,* | |
| v. | C.A. No. 22-1443-MN |
| BRENDA MAYRACK, in her capacity as the Delaware State Escheator, BRIAN WISHNOW, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, MICHAEL R. SMITH, in his official capacity as the Secretary of Finance for the State of Delaware; | CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL |
| *Defendants.* | |

## <u>OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS</u>

CONNOLLY GALLAGHER LLP
Arthur G. Connolly (#2667)
Max B. Walton (#3876)
Christina M. Thompson (#3976)
Lisa R. Hatfield (#4967)
1201 N. Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
cthompson@connollygallagher.com
lhatfield@connollygallagher.com
*Attorneys for Defendants*

Dated: March 20, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

SUMMARY OF ARGUMENT ............................................................................. 3

FACTUAL BACKGROUND ................................................................................ 5

    A.    Facts Relating to Briefing Delays on MTD II ........................................ 5

    B.    Discovery Delays .................................................................................. 6

    C.    Briefing Delays on Summary Judgment Motions ................................... 7

ARGUMENT ..................................................................................................... 8

    A.    Legal Standard ..................................................................................... 9

    B.    Substantive Sanctions Are Warranted. ................................................ 10

        1.    Grounds for Sanctions Under D. Del. LR 1.3(a) ...................... 10

        2.    Substantive Sanctions under D. Del. LR 1.3(b) are Appropriate ............. 11

        3.    Plaintiff's Conduct Violates the Model Rules and the Delaware Rules of Professional Conduct ................................................. 13

        4.    Consideration of Additional Sanctions ..................................... 15

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*,
  29 F.3d 863 (3d Cir. 1994)...................................................................................11, 15

*Briscoe v. Klaus*,
  538 F.3d 252 (3d Cir. 2008).........................................................................................11

*In re Carmine*,
  559 A.2d 248 (Del. 1989) .............................................................................................13

*Cooper v. Hutchinson*,
  184 F.2d 119 (3d Cir. 1950).........................................................................................10

*Cox v. United Parcel Service, Inc.*,
  753 F. App'x. 103 (3d Cir. 2018) ................................................................................12

*e360 Insight, Inc. v. Spamhaus*,
  658 F.3d 637 (7th Cir. 2011) .......................................................................................12

*Emerson v. Thiel Coll.*,
  296 F.3d 184 (3d Cir. 2002).........................................................................................12

*Gomez v. Am. Med. Sys. Inc.*,
  No. CV-20-00393-PHX-ROS, 2021 WL 763838 (D. Ariz. Feb. 26, 2021) ...........15

*Harris v. City of Philadelphia*,
  47 F.3d 1311 (3d Cir.1995)............................................................................................9

*Hildebrand v. Allegheny County*,
  923 F.3d 128 (3d Cir. 2020)..............................................................................11, 12, 15

*Johnson v. Trueblood*,
  629 F.2d 302 (3d Cir. 1980).........................................................................................10

*In re Joy Global, Inc. f/k/a Harnischfeger Industries, Inc.*, Civ. No. 01-039-LPS,
  2011 Wl 5865542 (D. Del. Nov. 22, 2011) ................................................................9

*In re Mance*,
  869 A.2d 339(D.C. 2005) .............................................................................................15

*Matter of McCann*,
  669 A.2d 49 (Del. 1995) ...............................................................................................13

*Off. of Chief Disciplinary Couns. v. Miller*,
　　239 A.3d 288 (Conn. 2020) ........................................................................14

*In re Poliquin*,
　　49 A.3d 1115 (Del. 2012) ....................................................................13, 14

*In re Pro Hac Vice Counsel Supreme Court of State*,
　　2014 WL 5408405 (Del. Oct. 21, 2014) ..................................................13

*In re Prudential Ins. Co. America Sales Practice Litigation Actions*,
　　278 F.3d 175 (3d Cir. 2002)........................................................................9

*Republic of the Philippines v. Westinghouse Electric Corp.*,
　　43 F.3d 65 (3d Cir. 1994)............................................................................9

*Santana v. Office of Prof'l Conduct*,
　　496 P.3d 50 (Utah 2021) ...........................................................................13

*Skretvedt v. EI DuPont de Nemours and Co.*,
　　98 Fed. App'x. 99 (3d Cir. 2004)...........................................................9, 10

*Skretvedt v. EI DuPont de Nemours and Co.*,
　　C.A. 98-61-MPT, 2009 WL 1649495 (D. Del. June 12, 2009) .................9

*Twin Spans Business Park, LLC v. Cincinnati Insurance Co.*,
　　C.A. No. 19-476-SB-SRF, 2021 WL 5161836 (D. Del. Nov. 5, 2021)...................10

*Vial v. Mayrack*,
　　Case No. 1:24-cv-01313-MN...................................................................1, 4

**Other Authorities**

ABA Model Rule 1.3 .....................................................................13, 14, 15

D. Del. LR 1.3 .................................................................................. *passim*

D. Del. LR 16.4....................................................................................4, 8, 12

D. Del. LR 26.2.......................................................................................8

D. Del. LR 7.1.1 ................................................................................ *passim*

D. Del. LR 83.5 .......................................................................................3

D. Del. LR 83.5(c) .................................................................................10

D. Del. LR 83.6.....................................................................................3, 10

Del. R. Civ. P. Rule 11...........................................................................11

iii

Delaware Lawyers' Rules of Professional Conduct Rule 3.4(c) ....................................................13

Delaware Lawyers' Rules of Professional Conduct Rule 8.4(d) ...................................................14

Fed. R. Civ. P. 6(b)(1)(A) .......................................................................................................4, 5, 12

Fed. R. Civ. P. 30(b)(6) ...................................................................................................................2, 6

## NATURE AND STAGE OF THE PROCEEDINGS

On September 29, 2023, the Court held that Plaintiffs failed to adequately plead a Takings Clause claim ("Takings Claim") but granted them leave to amend "to the extent they can adequately plead a Fifth Amendment takings clause claim" within thirty days. D.I. 17 at 16. The Court also directed the parties to confer on a schedule for expedited discovery regarding the notice, if any, Plaintiffs received regarding the escheatment of their property (the "Notice Claim"). *Id.*

Defendants subsequently submitted a proposed scheduling order, which was countered with significant changes aimed at allowing, among other things, Plaintiffs to expand the scope of discovery. *See* Ex. A. Unable to agree, competing proposals were submitted to the Court. D.I. 20. On October 27, 2023, the Court adopted Defendants' proposal. D.I. 21. On November 1, the Scheduling Order Governing Amendment of the Complaint and Expedited Discovery (as amended from time to time, the "Discovery Order") was entered limiting expedited discovery to Plaintiffs' Notice Claim (D.I. 24) and the requiring Amended Complaint to be filed by October 30, discovery requests by November 15, responses by December 8, document production by December 15, and depositions completed by January 15, 2024. *Id.* After its entry, Plaintiffs stated their intent to seek leave of Court to amend the complaint. *See* Ex. B. Notably, Plaintiffs indicated they intended to add the Borquez family as a plaintiff.[1] *Id.* However, on October 30, 2023, Plaintiffs filed their Amended Class Action Complaint without including Borquez. D.I. 23.

On November 17, 2023, Defendants filed their second motion to dismiss the Takings Claim and accompanying brief (collectively, "MTD II"). D.I. 27-28. As discussed *infra*, Plaintiffs did not file their responsive brief until January 3, 2024, five days late and without Defendants' agreement.

---

[1]     A representative of the Borquez family is the Plaintiff in *Vial v. Mayrack*, Case No. 1:24-cv-01313-MN, which was filed by Mr. Palmer's law firm and a different Delaware law firm on December 4, 2024.

D.I. 35. On January 4, 2024, Plaintiffs filed a Motion for Leave to Allow Late Filing with a declaration from lead counsel Mr. Palmer ("Late Motion"). D.I. 36. Defendants responded on January 17, highlighting Plaintiffs' failure to meet and confer as required by D. Del. LR 7.1.1 (D.I. 37), but not taking a position on the requested relief. Plaintiffs' late filed brief was allowed, and following briefing, on September 26, 2024, this Court again dismissed the Takings Claim, this time with prejudice. D.I. 79.

On February 13, 2024, Plaintiffs noticed the depositions of Defendant Mayrack and a Rule 30(b)(6) deposition (collectively, the "Mayrack Depositions") for February 15. D.I. 46-47. This notice contained deposition topics exceeding the scope of discovery ordered by the Court (*Id.*), which necessitated Court intervention.  Plaintiffs' attempts to exceed the scope were denied by Judge Burke in April 2024. D.I. 60. Depositions followed in August and September.

On October 15, 2024, the Court entered a stipulated scheduling order for cross motions for summary judgment (D.I. 83) (as amended from time to time, the "MSJ Scheduling Order"). After missing the initial deadline, Plaintiffs filed their motion for summary judgment ("Plaintiffs MSJ") on November 20, 2024. D.I. 86, 88. Defendants filed their responsive brief to the Plaintiffs MSJ, cross motion and accompanying brief for summary judgment (collectively, the "Defendants MSJ" and collectively with the Plaintiffs MSJ, the "Summary Judgment Motions") on December 20, 2024. D. I. 94, 95.

Plaintiffs' responsive briefing on the Summary Judgment Motions was due on January 9, 2025. At Plaintiffs' request, Defendants agreed to six extensions of this deadline since January 7. D.I. 101, 107, 108, 110, 111. Ex. C.  On February 20, when granting the extension Defendants noted "[p]lease note we may not receive approval for any further extensions for Plaintiffs. Defendants opening and answering brief was filed two months ago on December 20." *Id.* at 6. On

2

February 27, the day before the brief was due, Mr. Palmer's office asked if Defendants would be amenable to stipulating to "a short 3–4-day extension." *Id.* at 7. The final extension granted was until March 5, 2025 (D.I. 111) with Defendants stating, "[t]hat's it. We will oppose any further extension requests vigorously." *Id.* at 8.

Plaintiffs did not file their briefing by March 5, and Defendants received no communication regarding this missed deadline. On March 11, in response to the Court Clerk's inquiry, Plaintiffs' local counsel apologized for the delay, stated he needed to confer with Mr. Palmer later that evening and promised to provide an exact date for the expected briefing thereafter. Ex. D at 3-4. Defendants notified the Court of their intent to file this Motion the following day. *Id.* at 2. Over twenty-four hours after the Court's inquiry, Plaintiffs informed the Court that "I can assure the Court that the Reply/Answering Brief will be completed on or before March 20, 2025." *Id.* at 1-2.

This motion requests that, based upon Plaintiffs' and their counsel's repeated violations of the rules and failure to file briefs when due, Plaintiffs should, at minimum, be barred from submitting any additional briefing on the Summary Judgment Motions. Due to the egregious and repeated nature of rule violations and missed Court-ordered deadlines, Defendants also request that this Court rule in their favor on the case dispositive Summary Judgment Motions as a sanction. Defendants also request that Mr. Palmer be issued, at minimum, a public reprimand, and if appropriate, a hearing should be set to determine if Mr. Palmer's *pro hac* should be revoked.

## SUMMARY OF ARGUMENT

Plaintiffs' persistent non-compliance with court orders, Local Rules, and agreements with counsel warrants imposing both financial and substantive sanctions under D. Del. LR 1.3, D. Del. LR 83.5 and 83.6. As noted *supra*, Plaintiffs have missed court-ordered or mutually agreed deadlines at least three (3) times, made an overwhelming number of extension requests (some of which are not documented herein) in this litigation and prolonged this litigation by refusing to

3

abide by the terms of the Discovery Order. The latest series of six extension requests over two months culminated in a nonconsensual, estimated fifteen-day delay in filing their responsive briefing. "Expedited" discovery has been hindered by Plaintiffs' refusal to accept the discovery scope limitations ordered by this Court. Their attempts to exceed these limits forced Defendants to invest resources, including submitting a discovery dispute to Judge Burke. Notwithstanding this decision, Plaintiffs asked questions outside the scope of the Court's order at the Mayrack Depositions.[2] As a result of Plaintiffs' unwillingness to accept the multiple rulings of this Court on the scope of discovery, the discovery expected to be "resolved in relatively short order" (D.I. 17 at 16) was significantly delayed. Plaintiffs' repeated failures to timely file responsive pleadings, last-minute extension requests, often in violation of D. Del. LR 7.1.1, 16.4 and Fed. R. Civ. P. 6(b)(1)(A), and rejection of Court ordered discovery limitations have significantly impeded this case and support the award of sanctions.

Defendants do not submit this Motion lightly. Throughout this litigation, they have been extremely accommodating to Plaintiffs' repeated requests for extensions. Plaintiffs' clear and ongoing exploitation of Defendants' accommodating nature and Plaintiffs' disregard for the rules of this Court can no longer be ignored. Given these clear patterns of behavior, the imposition of sanctions is necessary to ensure compliance and uphold the seriousness of the Court's orders.

---

[2]    Defendants note that during Ms. Mayrack's depositions, Mr. Palmer repeatedly asked questions beyond the limited scope set by the Discovery Order and Judge's Burke's ruling and used said testimony as a basis for allegations in the Vial case.

## FACTUAL BACKGROUND

### A.     Facts Relating to Briefing Delays on MTD II

Plaintiffs have a consistent pattern of playing fast and loose with rules and ignoring Court-ordered deadlines. Plaintiffs' responsive briefing to MTD II was due on December 1, 2023. D.I. 28. On that date, they requested an extension to December 22, 2023, which Defendants agreed to, and the Court approved. D.I. 29. Plaintiffs did not file their brief by the extended deadline.

Instead, Mr. Palmer contacted Defendants' counsel at 5:30 p.m. on Friday, December 22, 2023, to request another extension. Ex. E, at 7-8. He indicated that a TRO filed on December 11 in a case pending in California required him to work nonstop over the weekend, as a settlement was not proposed until December 22. *Id.*. In light of the holiday, Defendants agreed to extend the deadline to December 27. *Id.* at 7. However, this extension is not documented by the Court because Plaintiffs failed to provide a stipulation to Defendants.

On Wednesday, December 27, 2023, Mr. Palmer requested an additional day to file Plaintiffs' brief. *Id.* at 5. After Defendants' counsel agreed, Mr. Palmer replied "may I kindly request through Friday. We prevailed in the TRO/PI Injunction hearing which lead to settlement discussions and the sale of our client's company and property." *Id.* at 3. Again however, Plaintiffs did not prepare a stipulation to document this extension. Consequently, the Defendants' counsel drafted a stipulation confirming that Plaintiffs would file a responsive pleading to MTD II by Friday, December 29. *Id.* at 1. This stipulation was agreed upon by both parties and filed on the due date, December 29. *Id.*; D.I. 34. Nonetheless, nothing was filed by Plaintiffs.

Instead, and with no communication to Defendants, Plaintiffs filed their brief five days later on January 3, 2024. D.I. 35. The following day, Plaintiffs submitted their Late Motion, along with a declaration from Mr. Palmer, without conferring with Defendants as required by D. Del. LR 7.1.1. D.I. 36. Mr. Palmer again cited the 'surprise TRO' and the need for immediate discovery

in that case prevented him from working on the brief. *Id.* He also mentioned that the senior paralegal assigned to the case was unavailable due to family obligations. *Id.* Taking Mr. Palmer at his word, Defendants took no position on the Late Motion. D.I. 37.  In total, Plaintiffs missed two filing deadlines, requested extensions of their deadline to file on or after the due date three times, failed to meet and confer once and were required to seek leave to file their responsive pleading.

### B.    Discovery Delays

On the December 8, 2023 discovery response deadline, Plaintiffs requested "a little extra time" on the responses." Ex. F at 7.  On the agreed extension date, December 13, Plaintiffs requested another extension, citing the impact of the surprise TRO, and sought a mutual extension until December 20. *Id.* at 4. Both parties served their discovery responses on December 20. D.I. 32, 33. On February 1, 2024, Plaintiffs requested to meet and confer regarding the Mayrack Depositions and provided proposed deposition notices to Defendants. Ex. G at 14.  The next day, Defendants' counsel informed Plaintiffs that the notices exceeded the Court's order and advised that they would seek a protective order. *Id.* at 12. After further discussion, the Plaintiffs agreed to submit compliant notices. *Id.* at 4, 11. The revised notices continued to exceed the scope of the Court's order. *Id.* at 1. On February 13, Plaintiffs noticed the offending depositions. D.I. 46-47.

Following this, the Court was notified of the discovery dispute on February 21, 2024, and it was referred to Judge Burke. D.I. 50. On February 28, Judge Burke issued an oral order requiring Plaintiffs to file a letter brief by March 6, and scheduled a video teleconference for April 22. D.I. 52. On March 11, Judge Burke issued an oral order stating that, "in light of Plaintiffs' counsel's unopposed request," the letter brief was now due on March 18. D.I. 53. Plaintiffs filed their letter brief on this date (D.I. 54, 55), and Defendants timely responded on March 25. D.I. 56. On April 22, 2024, Judge Burke issued an oral order denying Plaintiffs' attempts to overreach, stating that:

> [t]he Court agrees with Defendants that the Rule 30(b)(6) topics listed in Plaintiffs' deposition notice are overly broad and pertain to more than simply the notice Plaintiffs themselves did or did not receive. Plaintiffs' requests also seek discovery on generalized notice practices under [the DUPL] and how they relate to the United States Constitution's requirements. Indeed, in their briefing, Plaintiffs confirm that they are 'entitled' to and plan to elicit testimony on Defendants' 'notice' programs,' including whether such notice passes constitutional muster. Such discovery would violate Judge Noreika's prior orders.

D.I. 60. In sum, Plaintiffs attempt to defy the Court ordered limitations on discovery extended the time to take deposition testimony by a minimum of three months.

### C.    Briefing Delays on Summary Judgment Motions

Plaintiffs MSJ was due on November 14, 2024, Defendants MSJ on December 14, 2024, and all briefing was expected to be completed by January 18, 2025. Plaintiffs did not file anything on November 14. Instead, on November 15, they requested an extension until November 19, claiming they were obtaining "key notice information" necessary for their briefing. Ex. H, at 2. Defendants agreed, but Plaintiffs did not prepare a stipulation in connection with this extension. As a result, on November 18, 2024, the Court contacted Plaintiffs' counsel to inquire as to its status. *Id.* at 5.

Plaintiffs thereafter requested an additional one-day extension until November 20 *Id.* at 4-5. Defendants agreed to the extension, moving the due date for Defendants MSJ December 20, 2024, Plaintiffs' responses to January 9, 2025, and Defendants' responses to January 24, 2025. D.I. 85. The Plaintiffs MSJ and Defendants MSJ were filed as contemplated on November 20 (D.I. 86, 88) and December 20, 2024.  D. I. 94, 95.

Plaintiffs thereafter requested and received from Defendants six (6) extensions to file their combined reply and answering brief:

- January 7th: extension requested to January 17. D.I. 101. Ex. C, at 1.

- January 14th: extension requested to January 31, due to close proximity of Mr. Palmer's personal residence to the California wildfires and his

relocation to his Sacramento office which he had been working from "over the past few weeks" and also some "medical issues" he experienced the week of the due date. *Id*. at 2; D.I. 107. Although Plaintiffs requested a one-week extension, under the circumstances, Defendants offered, and Plaintiff accepted, a two-week extension. *Id*., at 3.

- January 31st (due date): three-week extension requested to February 21 because "upcoming deadlines in other matters" necessitated more time, and again noting the wildfires near Mr. Palmer's personal residence along with flooding. *Id*. at 4; D.I. 108.

- February 20th (day before deadline): extension requested to February 28 because Mr. Palmer was working in Europe, contracted food poisoning that left him bedridden and a "close friend" was expected to pass away shortly which would require Mr. Palmer to travel to London to "be with her and her family." *Id*. at 5; D.I. 110.

- February 27th (one day prior to the due date): extension requested a "three to four" day extension because Mr. Palmer's close friend and now "very ill client" needed to update documents, but Mr. Palmer experienced "unavoidable delays" because of her limited periods of consciousness. *Id*., at 6.  Defendants agreed to a three-business day extension to March 5 and expressly stated that it would agree to no further extensions. *Id.*, at 7; D. I. 111.

Plaintiffs never filed anything on March 5 and never contacted Defendants' counsel.

## ARGUMENT

Plaintiffs' extreme laxity, neglect, and repeated violations of rules and court orders warrant the imposition of sanctions. These serious infractions include but are not limited to: (i) consistently prioritizing other matters over deadlines in this case; and (ii) refusing to acknowledge the limitations imposed by this Court's orders. Plaintiffs' counsel has violated at least three rules of this Court (D. Del. LR 7.1.1, 16.4, and 26.2), failed to comply with Court orders *at least* five times, delayed expedited discovery with a frivolous challenge, and breached no less than three Model Rules and their identical Delaware Rules of Professional Conduct ("DRPC") counterpart. Defendants aver that financial and substantive sanctions are warranted. Defendants assert that, at a minimum, this behavior justifies sanctions under D. Del. LR 1.3(a) and a ruling on the competing

Summary Judgment Motions in Defendants' favor under D. Del. LR 1.3(b), and consideration of further sanctions to ensure that this misconduct is not repeated in other matters before this Court.

### A.    Legal Standard

"[A] district court has *inherent* authority to impose sanctions upon those who would abuse the judicial process." *Republic of the Philippines v. Westinghouse Electric Corp.,* 43 F.3d 65, 73 (3d Cir. 1994) (emphasis in original). Imposing sanctions under the court's inherent authority usually requires a finding of bad faith, though not always. *Id.* at 74, n.11; *In re Prudential Ins. Co. America Sales Practice Litigation Actions*, 278 F.3d 175, 181 (3d Cir. 2002). This Court has ruled that dismissal may be appropriate if a litigant acts in "flagrant bad faith" or with "callous disregard" of court orders. *Skretvedt v. EI DuPont de Nemours and Co.*, C.A. 98-61-MPT, 2009 WL 1649495, at *3 (D. Del. June 12, 2009) (citing *Harris v. City of Philadelphia,* 47 F.3d 1311, 1330 n. 18 (3d Cir.1995)). The Court may utilize dismissal to prevent unnecessary delays in ongoing cases. *Skretvedt*, 2009 WL 1649495, at *3 (citations omitted) (affirming dismissal of case because "Plaintiff has shown a callous disregard for the court's orders and its inquiries . . . allowing his case to unnecessarily congest the court's calendar. Despite the repeated efforts and allowances by the court, his inaction demonstrates that there are no remaining issues to address.").

Moreover, this Court has general sanctioning power "for violations of the Rules, as well as for violations of the Fed. R. Civ. P. and any order of the Court" which "may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney." D. Del. LR 1.3(a). This includes the authority to strike pleadings for local rule violations. *See e.g., In re Joy Global, Inc. f/k/a Harnischfeger Industries, Inc.*, Civ. No. 01-039-LPS, 2011 WL 5865542, at *1 (D. Del. Nov. 22, 2011) (sanctioning for violating local rule on page limitations without Court permission). "Likewise, failure of counsel to comply with the Rules relating to motions may result in the determination of the motion against the offending party." D. Del. LR

1.3(b). The imposition and type of sanctions are within the discretion of the Court. *Skretvedt v. EI DuPont de Nemours and Co.*, 98 Fed. App'x. 99, 102 (3d Cir. 2004) (citing to D. Del. LR 1.3(a)).

The Court also has disciplinary powers under D. Del. LR 83.6(e) for professional misconduct by lawyers (D. Del. LR 83.6(e)(1)), enabling it to impose appropriate sanctions as needed. D. Del. LR 83.6(e)(4). All attorneys admitted to the bar of this Court "including attorneys admitted on motion or otherwise" are governed by the American Bar Association's Model Rules of Professional Conduct ("Model Rules"). D. Del. LR 83.6(d); *see also see also Cooper v. Hutchinson,* 184 F.2d 119, 123 (3d Cir. 1950) (holding that "the rights and duties of an outside lawyer, once so admitted, appear to be the same as those of a local lawyer."). A judge may also revoke pro hac vice admission for good cause (D. Del. LR 83.5(c)), with the Third Circuit and this Court noting that violations of any disciplinary standard could justify such revocation. *Twin Spans Business Park, LLC v. Cincinnati Insurance Co.,* C.A. No. 19-476-SB-SRF, 2021 WL 5161836, *2 (D. Del. Nov. 5, 2021) (quoting *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980) ("Admission *pro hac vice* is a privilege, and as such, the privilege may be revoked as a sanction for unethical behavior.").

### B.    Substantive Sanctions Are Warranted.

#### 1.    Grounds for Sanctions Under D. Del. LR 1.3(a)

As noted, the Court has authority under D. Del. LR 1.3(a) to impose financial and other sanctions on Plaintiffs for failing to comply with its rules and orders. Defendants contend that, at minimum, the Court should deny the late filing of any pleadings from Plaintiffs in response to the Summary Judgment Motions. Defendants generously granted Plaintiffs six extensions totaling two months. When Defendants were no longer willing to agree to further extensions, Plaintiffs simply ignored the deadline without the prior permission of the Court. After a week of silence, and only in response to this Court's inquiry, Plaintiffs audaciously advised that it would be another eight

days before the brief would be filed and retroactive permission for its delay would be requested. In total, Plaintiffs will have taken <u>70</u> additional days to prepare and file their responsive twenty (20) page brief. The Court should not permit the filing at this late juncture.

Defendants further submit that financial sanctions under D. Del. LR 1.3(a) are appropriate and should be imposed herein. Plaintiffs' dilatory conduct throughout this case includes multiple violations of the Local Rules and orders of this Court as well as violations of the Model Rules and DRPC that have resulted in expenditure of additional time and money to respond to, and most times document, Plaintiffs' extensions and overall prolonging of this case due, in large part, to Mr. Palmer's ever conflicting work schedule and his prioritization of other matters.[3] Under these circumstances, Defendants' respectfully submit that financial sanctions are appropriate under D. Del. LR 1.3(a) as well as denial of any attempted late filing by Plaintiffs.

### 2.    Substantive Sanctions under D. Del. LR 1.3(b) are Appropriate

Defendants respectfully submit that this Court should also impose substantive sanctions under D. Del. LR 1.3(b) by deciding the Summary Judgment Motions in Defendants' favor. Granting such case dispositive relief is justified and warranted under the facts presented herein.

The timeline of events demonstrates that Plaintiffs' neglect reflects a broader pattern of misconduct rather than isolated incidents. "[E]xtensive or repeated delay or delinquency constitutes a history of dilatoriness ...." *Hildebrand v. Allegheny County*, 923 F.3d 128, 135 (3d Cir. 2020) (citing *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund,* 29 F.3d 863, 874 (3d Cir. 1994)). "Normally, 'conduct that occurs one or two times is insufficient to demonstrate a

---

[3]    Additionally, although not cited as a ground for sanctions herein, a determination by this Court that Plaintiffs filed the Complaint and Amended Complaint with full knowledge that their claims were time-barred and arose under a prior, now defunct version of the DUPL may constitute a Rule 11 violation.

'history of dilatoriness,'" *Hildebrand,* 923 F.3d at 135 (quoting *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008)); *see also Emerson v. Thiel Coll.,* 296 F.3d 184, 191 (3d Cir. 2002) (recognizing that multiple stay requests and missed deadlines constitutes dilatory conduct). As noted by the Seventh Circuit, all events contributing to delays must be considered." *See e360 Insight, Inc. v. Spamhaus*, 658 F.3d 637, 643 (7th Cir. 2011) ("[W]e weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit"). "If a party receives four extensions of discovery deadlines and misses them all without justification, they may not get a fifth chance." *See Cox v. United Parcel Service, Inc.,* 753 F. App'x. 103, 103 (3d Cir. 2018).

The record reveals a troubling frequency of missed deadlines and extension requests, most of which were made on the actual due date or thereafter. This violates D. Del. LR 16.4 which mandates that "a request for an extension of deadlines for completion of discovery…shall be made by motion or stipulation ***prior*** to expiration of the date deadline." D. Del. LR 16.4 (emphasis added). Additionally, Fed. R. Civ. P. 6(b)(1)(A) requires that requests to extend the time for any act be made prior to the expiration of the original time or any extension thereof. A brief synopsis of the multitude of missed deadlines, extension requests and violations of the local rules, federal rules and orders of this Court by the Plaintiffs are provided as follows:

- **MTD II**. Plaintiffs (i) made their first extension request on the due date; (ii) failed to file by the extended deadline; (iii) requested an extension on the due date—after hours on a Friday—blaming delays on other matters; (iv) sought a third extension on the due date and then requested an additional two days when agreed; (v) executed a stipulation the morning of the due date to file their pleading but did not do so; (vi) remained silent and filed the brief five days late; and (vii) filed the Late Filing Motion the following day in violation of D. Del. LR 7.1.1.

- **Summary Judgment Motions.** Plaintiffs: (i) missed their deadline to file the Plaintiffs' MSJ; (ii) requested a five-day extension from Defendants the following day; (iii) sought an additional two-day extension on the eve of the due date; (iv) after filing, requested six extensions of their responsive pleading date, primarily due to Mr. Palmer's personal and work conflicts; (v) upon being advised by Defendants that no further extensions would be granted, ignored the filing deadline; and (vi) upon Court inquiry, advised that yet another eight days was required.

3.    **Plaintiffs' Conduct Violates the Model Rules and the Delaware Rules of Professional Conduct**

Plaintiffs' disregard of deadlines violates not only Local and Federal Rules but also the Model Rules and the DRPC. Model Rule 1.3 mandates that an attorney "shall act with reasonable diligence and promptness in representing a client." Failing to meet deadlines established by a scheduling order constitutes a violation of DRPC 1.3 (identical to Model Rule 1.3). *See In re Poliquin*, 49 A.3d 1115, 1132 (Del. 2012); *see also Santana v. Office of Prof'l Conduct*, 496 P.3d 50, 56 (Utah 2021) (upholding district court's finding that counsel violated professional conduct rules by failing to provide initial disclosures to opposing counsel even after extension).

Model Rule and DRPC 3.4(c) each state that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal," and thus, attorneys cannot disobey this Court's orders. *See Poliquin*, 49 A.3d at 1133; *In re Pro Hac Vice Counsel Supreme Court of State,* 2014 WL 5408405, at *4 (Del. Oct. 21, 2014) (violation of Rule 3.4(c) for knowingly ignoring a court's seizure order); *Matter of McCann*, 669 A.2d 49, 54 (Del. 1995) (finding that an attorney lacked the "required diligence of promptness" by "regularly missed filing deadlines") (citing *In re Carmine*, 559 A.2d 248, 251 (Del. 1989) (failure to timely file motion and briefs violated DRPC 3.4(c)).

Model Rule 8.4(d) and its identical counterpart in the DRPC define professional misconduct for a lawyer as engaging in conduct that is prejudicial to the administration of justice. For instance, in *Poliquin*, it was determined that "[b]y failing repeatedly to meet deadlines for filing briefs and motions for extensions, by filing a brief out of time without prior authorization and prior consent of opposing counsel, and for other performance deficiencies by repeatedly failing to meet filing deadlines, submitting briefs without prior authorization, and exhibiting other performance deficiencies, counsel violated Rule 8.4(d)." *In re Poliquin*, 49 A.3d at 1133-34; *see also Miller*, 239 A.3d at 301 (holding that a lack of diligence impedes timely proceedings, which was prejudicial to the administration of justice).

Almost every instance of missed deadlines or requests for extensions has been attributed to Mr. Palmer's personal matters or work conflicts. Since January 9, when Plaintiffs' responsive briefing was due, Mr. Palmer has sought to justify his dilatory filings based on wildfires, flooding, a serious health issue, food poisoning, and work obligations in Europe including the death of a friend-turned-client that required Mr. Palmer to assist with death bed estate planning. Plaintiffs have now missed their March 5 responsive filing deadline by two weeks with no explanation or outreach to the Defendants.

Although Defendants recognize that it is conceivable Mr. Palmer has experienced a string of bad luck, it does not justify his failure to timely notify the Court and opposing counsel, rather than seeking extensions on the date briefs were due (or worse yet, after the deadline had passed), and to find alternative counsel if necessary to assist his client. *See e.g.,* ABA Model Rule 1.3, Comment 2 (a "lawyer's work load must be controlled so that each matter can be handled competently."); *Off. of Chief Disciplinary Couns. v. Miller,* 239 A.3d 288, 301 (Conn. 2020) (finding a violation of Rule 1.3 based on counsel's repeated need to reschedule status

14

conferences, cancellation of scheduled depositions and waiting until the last minute to seek relief from the Court due to insufficient work capacity); *In re Mance,* 869 A.2d 339, 342(D.C. 2005) (violations of, among others, Rule 1.3 attributed to attorney's "overwhelming case load at the time of the events at issue"); *Gomez v. Am. Med. Sys. Inc.*, No. CV-20-00393-PHX-ROS, 2021 WL 763838, at *2 (D. Ariz. Feb. 26, 2021) (lawyer may not blame paralegal for missed deadline when it was lawyer's duty to represent client diligently).

Given the number of missed deadlines, extension requests, and rule violations, Plaintiffs' counsel's behavior is willful and in bad faith. "Willfulness involves intentional or self-serving behavior." *Hildebrand,* 923 F.3d at 135 (quoting, *Adams*, 29 F.3d at 875). Plaintiffs have repeatedly missed deadlines and failed to seek necessary extensions until the last moment, showing a lack of respect for the court's processes. The California TRO motion alone caused Plaintiffs to miss three deadlines in this case. Mr. Palmer's conflicting work commitments predominate his extension requests confirming that he prioritizes his obligations in other matters over complying with the orders of this Court. Moreover, Mr. Palmer's consistent habit of seeking last-minute extensions reveals a pattern of poor time management rather than legitimate cause or necessity.

### 4.    Consideration of Additional Sanctions

In addition to the sanctions requests *supra*, the magnitude and egregiousness of these violations, Defendants respectfully request that, at a minimum, the Court should issue a public reprimand to Mr. Palmer to discourage any future repetition of this matter. Further, if the Court deems it warranted, a hearing should be set to determine if Mr. Palmer's *pro hac* should be revoked.

**CONCLUSION**

Defendants respectfully request that this Court enter the Defendants' proposed order to preclude further brief submissions, entering Summary Judgment in Defendants' favor, awarding attorneys' fees and monetary sanctions, and providing such other relief as the Court may deem just and proper.

CONNOLLY GALLAGHER LLP

*/s/ Max B. Walton*
Arthur G. Connolly (#2667)
Max B. Walton (#3876)
Christina M. Thompson (#3976)
Lisa R. Hatfield (#4967)
1201 N. Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
cthompson@connollygallagher.com
lhatfield@connollygallagher.com

*Attorneys for Defendants*

Dated: March 20, 2025

16