**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| WALTER SCHRAMM; CHRISTINE KYDD; MARK HILFERTY; LUDOVIC BONNIN, on behalf of themselves and other persons similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BRENDA MAYRACK, in her capacity as the Delaware State Escheator, BRIAN WISHNOW, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, and RICHARD J. GEISENBERGER, in his official capacity as the Secretary of Finance for the State of Delaware,<br><br>　　　　　　　　　　　Defendants. | C.A. No.: 22-1443-MN |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Gaston P. Loomis, Esquire (No. 4812)
300 Delaware Ave., Suite 1014
Wilmington, DE 19801
Telephone: (302) 300-4512
E-mail: gloomis@mdmc-law.com

-and-

PALMER LAW GROUP, a PLC
William W. Palmer (*Pro Hac Vice*)
907 Westwood Blvd., No. 218
Los Angeles, CA  90024
Telephone: (310) 984-5074
E-mail: wpalmer@palmercorp.com

*Attorneys for plaintiffs Walter Schramm; Christine
Kydd; Mark Hilferty; Ludovic Bonnin and Members
of the Proposed Class*

Dated:　　　　March 20, 2025

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   REPLY IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT ......... 4

   A.   The Defendants' Pre-2017 Notice Process Was Unconstitutional on its Face ................4

   B.   The Expert Witness Declaration Which Reviews Defendants' Broken Website And
        The Declaration Discussing Defendants' Generic Publication Notice Should Not be
        Stricken ................................................................................................................11

III.  ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
      JUDGMENT ................................................................................................... 11

   A.   Plaintiffs Have Standing to Pursue Injunctive And Declaratory Relief.........................11

   B.   Plaintiffs' Claims Are Not Barred by The Eleventh Amendment .................................13

   C.   No Statute of Limitations Applies to The Claims in This Case Because The
        Plaintiffs And Class Seek an Accounting of The Wrongfully Seized Property And
        Prospective Relief Such as Constitutional Notice. ......................................................17

IV.   CONCLUSION ............................................................................................... 18

CERTIFICATE OF SERVICE ...................................................................................... 19

## TABLE OF AUTHORITIES

Eleventh Amendment ............................................................................................................. *passim*

Fourteenth Amendment ................................................................................... 6, 8, 10, 18

### CASES

*Bolling v. Sharpe,*
    347 U.S. 497, 499–500 (1954) .................................................................................. 8

*Connecticut Mutual Life Insurance Co. v. Moore,*
    68 S. Ct. 682, 686 (1947) ........................................................................................ 17

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ................................................................................................ 16

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,*
    459 U.S. 400, 412-13 & n.14 (1983) ........................................................................ 3

*Ex parte Young,*
    209 U.S. 123, 159-160 (1908) ................................................................................. 16

*Fuentes v. Shevin,*
    407 U.S. 67 (1972) .................................................................................................... 8

*Gannett Co., Inc. v. DePasquale,*
    443 U.S. 368, 377 (1979) ........................................................................................ 12

*Griffin v. Illinois,*
    351 U.S. 12, 23 (1956) .............................................................................................. 8

*Hall v. Borough of Roselle,*
    747 F.2d 838, 843 (3d Cir. 1984 .............................................................................. 6

*Jones v. Flowers,*
    547 U.S. 220 (2006) ................................................................................. 1, 2, 6, 7, 10

*Malone v. Bowdoin,*
    369 U.S. 643 (1962) ................................................................................................ 14

*Mennonite Bd. of Missions v. Adams,*
    462 U.S. 791 (1983) .............................................................................................. 7, 8

*Mullane v. Central Hanover Bank & Tr. Co.,*
    339 U.S. 306, 314 (1950) ............................................... 1, 2, 3, 5, 6, 7, 10, 12, 15, 17

*Publicker Industries, Inc. v. Cohen,*
    733 F.2d 1059, 1061 (3d Cir. 1984) ........................................................................ 12

*Plemons v. Gale*,
    396 F.3d 569 (4th Cir. 2005) .................................................................. 7

*Shipes v. Trinity Industries*,
    987 F.2d 311, 322 (8th Cir. 1993) .................................................... 5, 6

*Sniadach v. Family Fin. Corp. of Bay View*,
    395 U.S. 337, 338 (1969) ...................................................................... 8

*Suever v. Connell*,
    439 F.3d 1142 (9th Cir. 2006) ......................................... 5, 11, 14, 17

*Taylor v. Westly*,
    402 F.3d 924 (9th Cir. 2005); *reh'g* and *reh'g en banc den.*,
    (May 13, 2005) ...................................................................................... 13

*Taylor v. Westly,*
    488 F.3d 1197, 1200-02 (9th Cir. 2007)..........................................9, 11

*Taylor v. Yee,*
    136 S. Ct. 929 (2016) ............................................................................1

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993) ................................................................................. 8

*United States v. Winstar Corp.*,
    518 U.S. 839, 896 (1996) ....................................................................... 3

*United States Trust Co. of N.Y. v. New Jersey*,
    431 U.S. 1, 26 (1977)............................................................................ 3

*Washington v. Udall*,
    417 F.2d 1310, 1316 (9th Cir. 1969) ................................................ 14

*Weinstein v. Bradford*,
    423 U.S. 147, 149 (1975)..................................................................... 12

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155, 164 (1980)....................................................................... 9

## DELAWARE STATE STATUTES

12 Del. C. § 1133 .................................................................................... 2

12 Del. C. § 1136 ............................................................................... 2, 6

12 Del. C. § 1154 .................................................................................... 3

12 Del. C. § 1155 ...................................................................................................................... 2

Plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, Ludovic Bonnin (collectively, "Plaintiffs"), on behalf of themselves and similarly situated Class Members file their Reply Brief in Support of their Motion for Summary Judgment against defendants Brenda Mayrack, in her capacity as the Delaware State Escheator ("Mayrack" or "State Escheator"); Brian Wishnow, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property ("Assistant Director"); and Richard J. Geisenberger, in his official capacity as the Secretary of Finance for the State of Delaware ("Secretary") (collectively, hereafter "Defendants") and Opposition to Defendants' Motion for Summary Judgment.

## I.  INTRODUCTION

The limited discovery allowed in this case confirmed the citizens' worst fears that the process used to seize private property as "unclaimed" and "abandoned" and which arbitrarily labels citizens as "lost" and "unknown" was and is unconstitutional.  Each of the Plaintiffs and Class Representatives testified that they learned their property had been seized not from the state officials who had the constitutional and statutory duty to do so, but from third parties (called "finders") who earn a percentage of the property for tracking down property owners and filing claim forms on their behalf. Each of the Plaintiffs hold other property that is at risk to the unnoticed property seizure program at issue here.  The private citizens and their counsel learned the mechanics of the Delaware unclaimed property program for the first time during the deposition of State Escheator Brenda Mayrack on August 7, 2024.    Defendants have now arbitrarily designated the deposition transcripts as "confidential" and insist that the helpful testimony may not be shown to the public.

It is fundamental that the constitutional notice requires direct mail to the property owner's last-known address and publication notice in newspapers of general circulation reasonably calculated to reach the rightful owner prior to transfer of the property.  *See Jones v. Flowers*, 547 U.S. 220 (2006) ("*Jones*"); *Mullane v. Central Hanover Bank & Tr.*, 339 U.S. 306 (1950) ("*Mullane*"); *Taylor v. Yee*, 136 S. Ct. 929 (2016) ("*Taylor v. Yee*").  The rightful owner then purportedly has the opportunity to claim his or her property before it is sold or otherwise destroyed.  When the rightful owner is located, the property is to be returned to the owner.  12 Del. C. § 1154.  But this statutory

1

unclaimed property process utterly fails when no prior notice to the property owners is provided prior to seizure. These owners otherwise have no way of knowing that their property is to be taken for use by the Delaware government as unclaimed property and therefore have no reason to search a government website and to file a claim form.

Defendants concede that prior to January 2017, property was seized without any constitutional notice at all. Instead, names of foreign property owners like plaintiffs Walter Schramm and Ludovic Bonnin and those from other states were published only in the local Delaware newspaper "The News Journal." As Ms. Mayrack testified, no attention was paid to whether the names were omitted or misspelled, and addresses were partial or missing altogether. (Deposition of Brenda Mayrack dated August 7, 2024 ("Mayrack Depo.") at 70:17-21.) Two of the plaintiffs reside in foreign countries and it is unclear what would draw their eyes to the Delaware News Journal in order to locate their valuable stockholdings. (Mayrack Deposition 22:22-24, 23:1-1.) In the Supreme Court's words in *Jones* and *Mullane*, the notice was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, *supra*.

The Undisputed Facts further show that after January 2017, the constitutional notice provided by the Defendants did not improve but worsened. The pre-January 2017 specific publication notice, even in its defective form, was replaced with generic advertisements directed to no one in particular. (Mayrack Deposition 21:9-13; *see also*, Declaration of Jan Peters in Support of Plaintiffs' Motion for Summary Judgment ("Peters Decl.") In turn, these generic advertisements point the public to a broken, nonfunctional website. (Mayrack Depo. 21:17-24.) The State Escheator confirmed that the state government next mails notice to knowingly stale addresses but makes no effort to locate the correct address for the property owners. (Mayrack Depo. 69:11-15.) Instead, the government uses the same addresses which the "holder" (or business entity) has already concluded are stale. (Mayrack Depo. 73:22-24.) As discussed further below, fundamental constitutional law requires state officials to correct address information through readily available public records.

Even worse, the State Escheator confirmed that the escheatment program has been contracted away to the contingent fee commissioned private auditors. Defendants (and Kelmar Associates, LLC) complain at page 29 of Defendants' Motion for Summary Judgment that Kelmar's name is "mentioned 14 times" in the Opening Brief, but the State Escheator Ms. Mayrack testified that Kelmar Associates is effectively running the unclaimed property program. (Mayrack Depo. 83:6-16.) This is because the major functions have been contracted to Kelmar Associates, including the notice function. The auditor is paid a percentage of 10% of all seized property and yet in a classic conflict of interest Kelmar Associates are now the private party charged with providing notice to the property owners that their stocks and other valuable property have been seized for use by the government. Kelmar Associates obviously loses money when property owners are notified and their property will not escheat unless the owners act. Therefore, it is not in Kelmar Associates' best interest to protect the owner's constitutional right to be secure in their property. Ms. Mayrack confirmed that is the private auditors who are responsible for maintaining the inoperative, broken website and for mailing the notices on behalf of the government. (Mayrack Depo. 83:6-15.)

In *Mullane*, 339 U.S. 306, *supra*, even when the exacerbating feature of fiscal self-interest was absent, the Highest Court held that notice by newspaper publication, standing alone, was insufficient with respect to known present beneficiaries of a trust and did not satisfy due process: "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Id.* at 315.)

The results of the fatally flawed system at issue now speak for themselves. The underlying statutory purpose of the Delaware Unclaimed Property Law ("DUPL") is to protect private rights by locating and returning private property to "unknown" owners, and not to declare "known" citizens to be "unknown" simply for purposes of seizing their property for use by the State as a "revenue stream." Defendants' procedures have hardly produced "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Id.* at 313.) Indeed, the opposite is true.

Each of the Plaintiffs have standing whether to seek an accounting and to assure that every member of the Class receives notice that their property has been seized and is in the possession of the state officials, and to obtain payment of interest on the private funds. The injured property owners who compose the putative class have yet to receive constitutional, or any notice for that matter, of the property seizures. Further, whether the seizures occurred under the pre-2017 version or the current iteration of the DUPL statutory scheme, the only notice received by property owners is "post-deprivation" only after the property is seized, destroyed, and sold for use by the government. Each of the Plaintiffs and presumably many Class Members own other private property and the unnoticed seizure process is capable of repetition.

The state officials expend the bulk of their pleading arguing that their unconstitutional actions are protected by the 11th Amendment and that they or that a 2-year statute of limitations allows them to keep the seized property as though it now belongs to the State. The fundamental problem with this Eleventh Amendment line of argument is that all of the funds in question are private and not government funds as other courts have found.

## II.  REPLY IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT

## A.    The Defendants' Pre-2017 Notice Process Was Unconstitutional on its Face.

The First Amended Complaint ("FAC") alleges the DUPL is unconstitutional as applied. The Undisputed Facts show that the only notice provided by the state officials prior to January 2017 was via post-deprivation publication notice in an obscure Delaware newspaper called The News Journal which was published twice a year. At a glance, the newspaper notice produced by Defendants are defective and contain no or partial owner names, wrong descriptions, incomplete address, etc. (*See* Mayrack Depo. 21:9-13; Exhibits 9-10.) This issue was briefed in Plaintiffs' opening papers and no legal authority is offered by the Defendants for the proposition that state officials may seize private property without prior notice and then publish incomplete information to property owners to alert them that their valuable stocks and other property has been seized and sold. As discussed in the following pages, just the opposite is true.

As to their next point, Defendants point to "a searchable website" as providing constitutional notice. But like their first argument, Defendants offer no constitutional authority in their brief for this proposition. The searchable website is exactly that, it places the onus on the property owner to discover that his property has been seized, destroyed, and sold by the state government and then to initiate a series of queries that - hopefully – direct him to the proceeds from the sale of his property. Therefore, the state officials have shifted their constitutional notice obligations to the general public by publishing generic advertisements addressed to no one in particular to search the state government's website if he believes that his stocks, safe deposit contents, bank savings accounts, cashiers' checks, Starbucks gift cards, etc., have been seized and sold for use by the state government. As discussed further below, there is no constitutional authority for this argument. In fact, every federal court that has been presented with this novel "website theory of constitutional notice" has rejected it.

The State Escheator does not provide *Mullane*-style constitutional "publication notice," but merely generic "advertisements." *Mullane* held that such advertisements are not constitutionally adequate (except in special circumstances) because "[c]hance alone" brings a person's attention to "an advertisement in small type inserted in the back pages of a newspaper." *Mullane*, 339 U.S. at 315. Courts have uniformly held such advertisements to be insufficient as a matter of due process. *Taylor*, 488 F.3d at 1201, *supra*; *see also Suever v. Connell*, 439 F.3d 1142, 1148 (9th Cir. 2006); *Taylor v. Westly*, 402 F.3d 924, 926-29 (9th Cir. 2005); *Shipes v. Trinity Industries*, 987 F.2d 311, 322 (8th Cir. 1993); *Hall v. Borough of Roselle*, 747 F.2d 838, 843 (3d Cir. 1984).

Nor does the State Escheator's "searchable website" provide constitutionally adequate notice. In reality, the website conveys no notice at all to property owners and is nothing more than a catalogue of the owners' sold and destroyed property. As the Ninth Circuit acknowledged, "California cites no authority for the proposition that due process is satisfied by a newspaper advertisement saying that a person concerned about his property can check a website to see whether he has already been (or soon will be) deprived of it." 488 F.3d at 1201.

5

Moreover, the State Escheator does not provide any notice (direct mail, publication notice, or even listing the owners' names on the searchable website) with respect to property valued under $50. This is not a small matter. The State Escheator recently disclosed that he has seized $68 million since 2007 in amounts less than $50 belonging to citizens without even requesting the names of the owners or providing any notice whatsoever.

Delaware likewise provides no notice to residents of other Countries and States whose property is taken and sold – these individuals do not pay taxes in Delaware, hold no residency in the State, and would have no reason to be alerted by a generic advertisement published in a Delaware newspaper, or to search the State Escheator's website.

A fortiori, the Defendants' argument cannot be squared with *Jones*, 547 U.S. 220, *supra*, in which this Court held that "[b]efore a state may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones*, 547 U.S. at 223 (quoting *Mullane*, 339 U.S. at 313). The Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225 (emphasis added). The Court found there were "several reasonable steps the State could have taken," and that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id*. One reasonable step would have been for the State to "resend notice by regular mail, so that a signature was not required." *Id*. This would "increase the chances of actual notice to [the petitioner] if—as it turned out—he had moved." *Id*. at 235. This Court concluded:

> There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs. The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them. In this case, the State is exerting extraordinary power against a property owner-taking and selling a house he owns. It is not too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed.

*Id*. at 239.

6

Precisely the same reasoning applies here.  In *Jones*, that Court reasoned that a State may not rely solely on mailed notice "when the government learns its attempt at notice has failed." *Id*. at 227. The record evidence in this case demonstrates that Delaware's attempts at notice under the UPL scheme predictably failed, not once but millions of times.   The scheme has resulted in a situation where millions of people have been denied meaningful notice of the seizure of their property, just as the homeowner in *Jones* was not afforded meaningful notice.   And just as in *Jones*, "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." *Id*. at 230.

The Supreme Court made clear in *Jones* that the State was required to undertake "reasonable steps" to provide notice and "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id*. at 234.  The Court cited *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005) (cited in *Jones*, 547 U.S. at 227), which observed that, "as most cases addressing this situation recognize, it is, at the very least, reasonable to require examination (or reexamination) of all available public records when initial mailings have been promptly returned as undeliverable." 396 F.3d at 577 (emphasis added).  "Extraordinary efforts typically describe searches beyond the public record, not searches of the public record." Id. (internal quotation marks and citation omitted and emphasis in original).

Similarly, in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), the Court held that when the identity and location of a mortgagee can be obtained through examination of public records, "constructive notice alone does not satisfy the mandate of *Mullane*." *Id*. at 798. Moreover, a "party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Id*. at 799.  Although a party required to provide notice need not "undertake extraordinary efforts to discover ... whereabouts ... not in the public record," it must use "reasonably diligent efforts to discover addresses that are reasonably ascertainable." *Id*. at 798. The Defendants' conduct in this case is strikingly inconsistent with Supreme Court's precedent.

The website operates only after the fact, after the State Escheator has seized the owner's property without individualized notice. In *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) ("*Fuentes*"), the

7

Supreme Court held that "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment," even where a statute "include[s] recovery provisions" allowing the property owner to reclaim the property. *Fuentes*, 407 U.S. at 85, *supra*.  The Supreme Court has uniformly rejected attempts to justify the seizure of property without notice by pointing to an after-the-fact opportunity for the property's return. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 54 (1993); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983).

Further, Defendants maintain, remarkably, that property valued at less than $50 deserves no constitutional protection whatsoever under the standard requirement of pre-deprivation notice.  That statement puts to shame even Anatole France's mockery of the "majestic equality" of a legal regime that forbid rich and poor alike to beg in the streets and sleep under the bridges of Paris. *Griffin v. Illinois*, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring).  Because the very idea of due process implies equal justice under law, *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954), there can be no arbitrary floor on the quantum of property eligible for protection under the Fourteenth Amendment. Thankfully, no such floor exists. *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338 (1969), involved a $34 garnishment that the court held invalid for lack of prior notice, even though the garnishment would be "unfrozen" if the wage-earner prevailed in a subsequent proceeding. *Id*., at 339. *Fuentes v. Shevin*, 407 U.S. 67, *supra*, involved several property owners, one of whom claimed a stove and stereo worth just $500; another with a bed, a table, and other household goods; and a third with child's clothes, furniture, and toys. *Id*., at 71–72.

Put simply, the State Escheator cannot shift the burden of conveying constitutional notice from the government to property owners, requiring them to ferret out their own property information on an often-broken government website when, lacking notice, they would have no reason to look on the website in the first place.

No decisions approve the seizure and appropriation of property with no pre-deprivation individualized notice whatsoever.  Nor has any court wavered in its holding that due process is not satisfied "by a newspaper advertisement saying that a person concerned about his property can check

a website to see whether he has already been (or soon will be) deprived of it." *Taylor v. Westley*, 488

F.3d 1197, 1201 (9th Cir. 2007).

The Defendants' website is admittedly broken and inoperative. The Plaintiffs provided the

testimony of an expert witness to further confirm this fact:

> "This website is plagued by many easily-remedied deficiencies that make it more
> difficult (or impossible) to locate unclaimed property." (Declaration of Jan Peters in
> Support of Plaintiffs' Motion for Summary Judgment ("Peters Decl.") at ¶ 3.) …"This
> website is primitive." (Peters Decl., at ¶ 6.) …"Even beyond the search problems, the
> results themselves do not enable an owner to ensure that the property referenced is
> actually theirs." (*Id*., at ¶ 12.) …"In sum, this primitive website conveys no notice to
> property owners and though it could be updated and corrected, it is seriously flawed
> and largely inoperable. Objectively, it is not an example of a government actually
> wishing to return property to its owner." (*Id*., at ¶ 22.)

The Defendants offer no law or testimony to refute these basic points and at the same time

decline to repair the broken website so that the injured Class Members might reclaim the salvage

value or what is left of their property.

The Undisputed Facts show us that the state officials order companies or "Holders" in the

parlance of the DUPL, to sell private property, such as the contents of safe deposit boxes, so that the

government employees may evade their constitutional obligations. (Mayrack Deposition 27:22)

Further, the State officials pay no interest on the private funds in violation of Supreme Court

precedent. *See Webb's Fabulous Pharmacies*, *Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). Like the

other novel propositions of law in Defendants' brief, it is the government actors who are ordering the

private companies to destroy and to monetize the citizens' property. Ms. Mayrack testified that this

process is also done as a cost savings so that the government is not required to store the property. Ms.

Mayrack testified to the cost savings on the defective publication notice received under the current

DUPL as opposed to the pre-2017 version with the more detailed names and description. (Mayrack

Deposition 36:16-24, 37:1-6.) In short, the state officials save money by not following the law.

Ms. Mayrack testified that the state officials have contracted both the website and direct mail

functions to the private auditors, which make their money from seizing and selling private property.

As noted, this is an egregious conflict of interest. More to the point, the Supreme Court has held that

the state officials may not delegate their constitutional notice obligations to private parties.

In *Jones*, 547 U.S. 220, *supra*, the Supreme Court reaffirmed that "[*b*]*efore* a state may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones*, 547 U.S. at 223 (emphasis added and quoting *Mullane*, 339 U.S. at 313). The Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take *additional reasonable steps* to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones*, 547 U.S. 220, *supra* (emphasis added). In *Jones*, Chief Justice Roberts, writing for the Supreme Court, reasoned that a State may not rely solely on mailed notice "when the government learns its attempt at notice has failed." *Id.* at 227. The Supreme Court concluded:

> "There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs. The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them."

*Id.* at 239.

Finally, the Defendants' other statute of limitations and other defenses have no application to the facts at hand. Plaintiffs and Class seek prospective injunctive relief to correct the gross constitutional deficiencies noted above. This Court did not authorize any discovery into the defenses outlined in the Defendants' Answer [DKT No. 84] which was filed after the Court's order authorizing narrow discovery directed to the Defendants' notice to Plaintiffs and Class Members [DKT No. 60]. This case involves ownership of private property for which no constitutional notice was conveyed. As noted in other cases, Plaintiffs and Class Members are entitled to an accounting, direct mail post-deprivation notice so that they may claim the remains or salvage of their private property. *See*, *e.g*., *Suever v. Connell* 439 F.3d 1142, *supra*.

**B.    The Expert Witness Declaration Which Reviews Defendants' Broken Website And The Declaration Discussing Defendants' Generic Publication Notice Should Not be Stricken.**

Defendants contend that they provide a novel form of constitutional notice via a "searchable website." The Expert Witness Declaration of Jan Peters shows the Court that the website is broken and inoperative. By contrast, the Defendants claim the website is functional, though it is not. Given

that the website is one of the government officials' touted forms of post-deprivation notice to the property owners, it should at the very least function. Plaintiffs have conclusively shown that not only is there no constitutional support for this form of website notice, but it does not work.

Contrary to Defendants' assertions that they provided the generic advertisements to the Plaintiffs, including the number of times that advertisements run copies of each year, the Defendants did not provide this information to Plaintiffs. Instead, Defendants, through their counsel, simply directed the Plaintiffs' counsel to locate the publications on their own and left it to them to discover the advertisements. Aside from generalized notice addressed to no one in particular, Plaintiffs found that the advertisement are almost impossible to find and buried in back pages of internet publications. *See* Declaration of Cherese Bayani in Support of Plaintiffs' Motion for Summary Judgment ("Bayani Decl.").

### III. ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.     Plaintiffs Have Standing to Pursue Injunctive And Declaratory Relief.

The threshold for standing in escheatment cases does not require Plaintiffs to identify property at imminent risk of escheatment. In *Taylor v. Westly*, 488 F.3d 1197, *supra*, for example, the "plaintiffs' securities ha[d] been lost to escheat," and they sought to enjoin the California Controller from escheating private property without notice "calculated to be received by the owner." *Taylor II*, 488 F.3d at 1199, *supra*. That Court specifically rejected the Controller's argument that the likelihood of recurrence was too remote to confer standing for injunctive relief. First, That Court recognized "the injuries suffered by plaintiffs include not only those attendant to having their property escheated without notice, but also include . . . the cost of having to constantly monitor their property to avoid escheat, either by devoting significant time to searching the internet themselves, by paying a service to do the same, or by 'churning' their property so that it stays active and avoids escheat… ." *Id.* at 1199–1200. That Court then reasoned that "at the very least, the injuries attendant to having to continually monitor one's property will recur as long as California's system remains in place." *Id.,* at 1200. As explained below, the record before the Court reflects as much here: Plaintiffs and Class

11

Members will be forced to monitor their remaining stocks to avoid being pilfered again and therefore the Plaintiffs and Class have standing.

As discussed in this section and reviewed in those that follow, the claims of the Plaintiffs and Class Members are not moot but are live and challenge seizures under the current version of the DUPL while seeking interest and accounting, and notice to property owners under the pre-2017 version of the DUPL.

As an additional argument for standing, in this case the test to determine mootness is also whether the underlying dispute is "capable of repetition, yet evading review." *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1061 (3d Cir. 1984) ("*Publicker*") (citing *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, (1911)).  The Supreme Court has established two conditions that must be satisfied to meet this particular test: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Publicker* at 1061*, supra* (citing *Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 377* (1979), *quoting Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)).

Because the underlying dispute is capable of repetition, yet evading review, Plaintiffs and the Class ask the Court to deny the state officials' motion for summary judgment and to otherwise dismiss this case based on mootness, and instead to turn to the merits of this case.

In *Mullane*, 339 U.S. 306, *supra*, even when the exacerbating feature of fiscal self-interest was absent, the Court held that notice by newspaper publication was insufficient with respect to known present beneficiaries of a trust and did not satisfy due process.  This Court observed that the "elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. at 313. "[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. at 315.

The results of this fatally flawed system speak for themselves.  The ostensible statutory purpose of the DUPL program is to locate and return private property to "unknown" owners, but as the Court may now see, the Defendants make now effort to locate "unknown" owners and do not cross-check readily available public records.  Instead, Defendants declare "known" citizens  to  be "unknown"  simply    for purposes of seizing their property for use by the State.   Delaware's procedures have hardly produced "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  339 U.S. at 313.  Indeed, the opposite is true.

The Undisputed Facts are that the State Escheator undertakes "no reasonable steps" to locate "lost" and "unknown" owners in order to provide constitutional notice.

**B.    Plaintiffs' Claims Are Not Barred by The Eleventh Amendment.**

The *Eleventh Amendment* does not bar the Plaintiffs' and Class's claims insofar as the claims request the return of the putative Class Member's property. In *Taylor v. Westley*, 402 F.3d 924 (9th Cir. 2005)*,* the Ninth Circuit held that the *Eleventh Amendment* did not apply to funds that had been escheated, but not permanently escheated, because the State held such funds in custodial trust for the benefit of property owners--the funds were not state funds.  *Id.*, at 931 ("Before California escheated property is 'permanently' escheated, it is like a car that is towed and held in an impound lot. The car is in the custody of the impounding government, but it is held for its owner, if one turns up.") Claims requesting the return of individuals' property are less likely to offend a state's sovereign immunity than claims requesting the payment of government funds.  *Id.*, at 932-35. Hence, although the *Eleventh Amendment* ordinarily bars claims primarily requesting funds held in the State's coffers, sovereign immunity does not apply to claims alleging such funds are individuals' property that the State improperly seized through *ultra vires* or unconstitutional acts.  *Id.*; *see also Suever v. Connell* 439 F.3d 1142, *supra*.

*Taylor* found that the *Eleventh Amendment* did not bar the plaintiffs' claims requesting return of the plaintiffs' property because these claims alleged both *ultra vires* and unconstitutional acts.

*Taylor* employed the sovereign immunity framework established in *Malone v. Bowdoin*, 369 U.S. 643

(1962):

> [A] plaintiff's . . . claim for return of his property [will not be barred by state sovereign
> immunity] . . . if the claim falls into one of two categories: (1) it must be based on the
> public official having acted beyond his statutory authority (the "ultra vires
> exception") or (2) the plaintiff's theory must be that the action leading to the
> government's possession of the property was constitutionally infirm.

*Taylor* at 933, *supra* (quoting *Washington v. Udall,* 417 F.2d 1310, 1316 (9th Cir. 1969)) (footnotes
omitted).

The plaintiffs in *Taylor* averred that the Controller seized their property through *ultra vires*

acts. An official's act is not *ultra vires* just because he erroneously applies his delegated duty but only

when he acts outside the scope of his duty. *Id.* "Allegations that an officer violated 'a plain legal

duty' can take the officer's actions outside the scope of her delegated responsibilities." *Id.*, at 934

(quoting *Udall,* 417 F.2d at 1316). Just as in the case at bar, some of the plaintiffs' claims in *Taylor*

alleged the Controller had violated a "plain legal duty": the "plaintiffs asserted that they and their

stock were wholly outside the escheat scheme because they were never actually 'lost' as the statute

requires." *Id.*, at 934.

> For instance, the complaint in *Taylor* alleged that "the Controller takes these actions
> though the individual is known to the company and a list of the known owners of the
> stock is provided to the Controller that includes, in nearly every case, the
> stockowners' addresses, taxpayer and social security numbers."

*Taylor* at 934 fn.53, *supra.*

The plaintiffs in *Taylor* also averred that the state official escheated their property through

unconstitutional acts. Just as in this case, the complaint in *Taylor* alleged that the Controller violated

the plaintiffs' due process rights by failing to give adequate notice before seizing their property. *Id.*

These are the Undisputed Facts supporting Plaintiffs' Motion for Summary Judgment because neither

version of the DUPL passes constitutional muster to provide notice to the "known" owners before

their property rights are disturbed. The *Taylor* court concluded, "Assuming that the plaintiffs'

allegations are true, as we must, the Controller failed to give 'notice reasonably calculated, under all

the circumstances, to apprise interested parties' of the fact that their property was being taken and

sold." *Id.* (quoting *Mullane,* 339 U.S. at 314, *supra*).  Here the Undisputed Facts show the Court that

no constitutional notice whatsoever was provided to the property owners. This is despite the fact that the primary purpose of the statutory is to return the private property to the rightful owner – Defendants never explain how this primary purpose is accomplished without notifying the property owners.

Applying *Taylor*'s principles to the highly analogous facts here, the *Eleventh Amendment* does not bar the Plaintiffs' and Class's claims requesting the return of the Class's property, an accounting, and other prospective relief. First, the amended complaint here alleges that the State Escheator acted *ultra vires* by improperly seizing property ineligible for escheat. FAC at ¶ 31. Like the complaint in *Taylor*, the Plaintiffs' and Class's complaint avers that the State Escheator seized (and continues to seize) property from "known" property owners. *Id.*, at ¶ 34. Second, the FAC avers that the State Escheator acted unconstitutionally by providing inadequate notice to property owners whose property was to be escheated. *Id.*, at ¶ 68. Again, this is the factual record of this case.

Accordingly, the Plaintiffs' and Class's request that the State Escheator return the members' private property is not barred by the State's sovereign immunity. The State has no right or legitimate interest in the seized private funds in this case. Certainly, the State Escheator would not suggest that the State is allowed to keep private property and funds permanently which were seized without any constitutional notice. In fact, during her deposition, the State Escheator commented that it was strange that the property owners live at the same addresses. (Mayrack Depo. 82:22-24; 83:1-4.) Therefore, one may assume that had the state officials ever bothered to send direct mail notice to the property owners prior to seizure, then the Class Members might have acted to protect their property rights.

In their opening paragraph Defendants boast that they have returned $1.5 Billion to property owners over the last 2 years. But this statement is out of context and begs why property was seized and not returned and what percentage does this represent of the total amount of seized property during the same 2-year time period. How much money was Kelmar Associates paid to run this defective property seizure program? Discovery was properly limited at this stage of the litigation, but these are obvious inquiries. Notably, event under Defendants' misplaced Eleventh Amendment theory, Kelmar Associates is not a state official entitled to Eleventh Amendment Immunity as Defendants might have this Court believe. The complaint may be further amended to focus on Kelmar Associates, now that

15

we have the State Escheater Brenda Mayrack's deposition testimony which explains the process to the public for the first time.

The Supreme Court has long expressed constitutional "concern with governmental self-interest" when "the State's self-interest is at stake.'"  *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26 (1977)).  In *Winstar*, the Court spoke of the "taint" of "a governmental object of self-relief" where the government is party to a contract.  *Id.*; *see also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412-13 & n.14 (1983) (holding that a stricter level of scrutiny applies under the Contract Clause when a State alters its own contractual obligations).

Further, there are other forms of relief which are available to the Court and the injured citizens which do not violate the Eleventh Amendment.  The Supreme Court in *Ex parte Young* held that a federal court could enjoin a state officer to conform his future behavior to federal law. *Ex parte Young*, 209 U.S. 123, 159-160 (1908).  *Ex parte Young* created an exception to the *Eleventh Amendment* by holding that a state official who acts unconstitutionally is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct" because the State could not grant immunity for such an act. *Id.*, at 160.  Decades later, in *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court limited the scope of *Ex Parte Young's* exception to prospective equitable relief and state funds "ancillary" to such relief.  *Id.*, at 663-69. For example, the Court could order the State Escheator, and its highly paid private contractor Kelmar Associates, to fix the broken website and from this point forward to properly maintain and to enter critical data into the website.

The *Taylor* Court held that the district court erred when it found that the *Ex parte Young* exception to the *Eleventh Amendment* did not apply to the Class's complaint in its entirety because the complaint "fails to allege an 'ongoing violation of federal law' or to seek 'relief properly characterized as prospective'." The amended complaint in this case alleges exactly the types of harm that, if proven, would amount to "ongoing violation[s] of federal law," including, but not limited to: The State Escheator's practices of publishing constitutionally inadequate notice for property to be escheated, seizing assets that are ineligible for escheat; and misplacing escheated property so that it

16

cannot be returned to its owner; failing to pay interest for use of the private funds, etc. The FAC requests prospective relief to remedy these ongoing violations: including an injunction to require the State Escheator to publish constitutionally adequate notice, to refrain from seizing property ineligible for escheat, and to undertake an accounting of funds illegally seized and held within the State's escheat system. *See Taylor*, 402 F.3d at 935-36, *supra*; *Suever*, 439 F.3d 1142, *supra*. These private funds must be disgorged and form the private pool of money from which a remedy for the injured citizens may be fashioned.

**C.    No Statute of Limitations Applies to The Claims in This Case Because The Plaintiffs And Class Seek an Accounting of The Wrongfully Seized Property And Prospective Relief Such as Constitutional Notice.**

Under the statutory language of the DUPL there is no deadline by which a property owner may be forced to claim his or her property back from the custody of the State Escheator. The private property does not belong to the State but is held in trust for the true owner until he or she steps forward to claim it.

The DUPL is a statutory scheme theoretically designed to reunite lost property with its rightful owner. *See Connecticut Mutual Life Insurance Co. v. Moore*, 68 S. Ct. 682, 686 (1947). The DUPL allows the State of Delaware to escheat certain types of unclaimed property held by businesses chartered in the State, if the particular business holding the property is not the owner of it, and if there has been no contact with the owner for a specified period of time. *See* DUPL § 1133 (stating when property is presumed abandoned); § 1136 (listing indications of owner interest in property). Used properly, lost or abandoned property belonging to unknown owners is delivered to the State Escheator, who is charged with providing *Mullane*-style constitutional notice. The State Escheator then holds the property in a custodial trust capacity for "safekeeping." 12 Del. C. § 1155. The property never becomes the property of the State. *Id.* There is no statute of limitations concerning the property rights at issue and the prospective relief sought by Plaintiffs and Class.

As discussed on the face of the amended complaint and its prayer for relief, the Plaintiffs and Class seek prospective injunctive relief to protect them from further unnoticed, unconstitutional seizures of property.

The Plaintiffs and Class Members continue to hold other private property, including stocks, bank accounts, pensions, and amounts under $50, which they do not wish to have seized by the State Escheator.  In some instances, it is unclear whether Plaintiffs received all of their private property or the proceeds from the unnoticed sale back from the State Escheator, despite engaging in the "catch as catch can" claim process administered by the State Escheator.  Plaintiff Mark Hilferty, for instance, provided a list of potential accounts that could belong to him with names like "Mark Mark" or M. Hilferty attached to them. (*See* Deposition of Mark Hilferty dated September 24, 2024 27:2-24; 40:14-21.)

There is no statute of limitations that applies to the claims of the amended complaint in which these citizens plead with the Article III Judge to protect them from further harm from the overreaching state officials.

## IV.  CONCLUSION

Based on the Undisputed Material Facts, when applied to the law, Plaintiffs prevail on their First Claim Relief for violations of the Due Process Clause (Fourteenth Amendment).  The Court should enter summary judgment on the notice issue for the Plaintiffs.

Dated:  March 20, 2025

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

 */s/ Gaston P. Loomis*
Gaston P. Loomis, Esquire (No. 4812)
300 Delaware Ave., Suite 1014
Wilmington, DE 19801
Tel: (302) 300-4510
Email: gloomis@mdmc-law.com

-and-

PALMER LAW GROUP, a PLC
William W. Palmer (Admitted *Pro Hac Vice*)
PALMER LAW GROUP, A PLC
907 Westwood Blvd., No. 218
Los Angeles, CA  90024
Tel: (310) 984-5074
Email: wpalmer@palmercorp.com

*Attorneys for plaintiffs Walter Schramm, Christine*
*Kydd, Mark Hilferty, Ludovic Bonnin and Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and copy of **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was made on the below counsel of record via ECF service.

Dated:  March 20, 2025         MCELROY, DEUTSCH, MULVANEY
                                        & CARPENTER, LLP

                                        */s/ Gaston P. Loomis*
                                        Gaston P. Loomis, Esquire (No. 4812)
                                        300 Delaware Ave., Suite 1014
                                        Wilmington, DE 19801
                                        Telephone: (302) 300-4512
                                        Facsimile: (302) 654-4031
                                        E-mail: gloomis@mdmc-law.com