**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WALTER SCHRAMM; CHRISTINE KYDD; MARK HILFERTY; LUDOVIC BONNIN, on behalf of themselves and other persons similarly situated, *Plaintiffs*, v. BRENDA MAYRACK, in her capacity as the Delaware State Escheator, BRIAN WISHNOW, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, MICHAEL R. SMITH, in his official capacity as the Secretary of Finance for the State of Delaware; *Defendants*. | C.A. No. 22-1443-MN  CLASS ACTION COMPLAINT  DEMAND FOR JURY TRIAL |

**<u>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS</u>**

CONNOLLY GALLAGHER LLP
Arthur G. Connolly, III (#2667)
Max B. Walton (#3876)
Christina M. Thompson (#3976)
Lisa R. Hatfield (#4967)
1201 N. Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
cthompson@connollygallagher.com
lhatfield@connollygallagher.com

*Attorneys for Defendants*

Dated: April 10, 2025

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

      A.      Sanctions are Warranted Pursuant to D. Del. LR 1.3(a) and (b) ............................. 1

      B.      Answering Brief Issues ........................................................................................... 5

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*,
  29 F.3d 863 (3d Cir. 1994) ..........................................................................................................10

*Cox v. United Parcel Service, Inc.*,
  753 F. App'x 103 (3d Cir. 2018) ...................................................................................................2

*Eberhardt v. Integrated Design & Const., Inc.*,
  167 F.3d 861 (4th Cir. 1999) .........................................................................................................7

*Ferguson v. Valero Energy Corp.*,
  454 F. App'x 109 (3d Cir. 2021) ...................................................................................................7

*Harris v. Crown Castle Int'l Corp.*,
  2012 U.S. Dist. LEXIS 71693 ...................................................................................................6, 7

*Hildebrand v. Allegheny County*,
  923 F.3d 128 (3d Cir. 2019) ....................................................................................................2, 10

*Knoll v. City of Allentown*,
  707 F.3d 406 (3d Cir. 2013) ..........................................................................................................3

*LeSEA Inc. v. LeSEA Broadcasting Corp.*,
  C.A. No. 3:18CV914-PPS, 2024 WL 981849 (N.D. Ind. Mar. 6, 2024) .......................................8

*Lopez v. Brown*,
  C.A. No. 04-6267 (SRC), 2007 U.S. Dist. LEXIS 48215 (D.N.J. July 3, 2007) ..........................7

*Paluch v. Dawson*,
  C.A. No. 1:CV-06-01751, 2007 WL 4375937 (M.D. Pa Dec. 12, 2007) .....................................6

*Poulis v. State Farm Fire & Cas. Co.*,
  747 F.2d 863 (3d Cir. 1984) .....................................................................................................2, 3

*In re Prosser*,
  2015 U.S. Dist. LEXIS 91108 (D.V.I. July 14, 2015) ..................................................................6

*Thomas v. Tice*,
  948 F.3d 133 (3d Cir. 2020) ..........................................................................................................7

*TZE Glob. Dis Ticaret A.S. v. Papers Unlimited, Inc.*,
  2024 U.S. Dist. LEXIS 141679 (3d Cir. Aug. 9, 2024) ................................................................7

**Statutes**
28 U.S.C. § 1927 ............................................................................................................................7

**Other Authorities**

D. Del. LR 1.3 .................................................................................................................1, 2, 5, 10

D. Del. LR 26.2 ..............................................................................................................................8

Fed. R. Civ. P. 37(b) ..................................................................................................................1, 2

Fed. R. Civ. P. 41(b) ..................................................................................................................1, 2

**INTRODUCTION**

This sanctions motion ("Motion") arises not only from Plaintiffs' failure to file their brief by the March 5 deadline and inability to seek permission or file until just before midnight on March 20, but also from a pattern of dilatory conduct, tactical maneuvers to benefit other clients, and intentional presentation of misstatements to this Court that transcends mere sloppiness, recklessness, or negligence, rising to the level of sanctionable bad faith and willful misconduct. This Motion is not an "*ad hominem* attack on opposing counsel" intended to undermine an allegedly "meritless defense." AB 4.[1] For the reasons stated in Defendants MSJ[2] (D.I. 95), Plaintiffs' claims lack merit without resorting to sanctions. The Motion is warranted based upon Plaintiffs' counsels' willful disregard for the Local Rules and deadlines for which they offer no substantial contrition, characterizing their conduct as "sloppy" (AB 10), "not ideal" (AB 10), "problematic in some respects" (AB 18), and suggesting their actions "may warrant the court's disapproval or, at most, the imposition of a minor remedial measure." AB 14. The underlying conduct, however, is not in dispute. Plaintiffs have more than once willfully violated court ordered briefing deadlines and have made numerous misstatements. Sanctions should be imposed.

**ARGUMENT**

**A.    Sanctions are Warranted Pursuant to D. Del. LR 1.3(a) and (b)**

The Answering Brief is flawed in several ways including Plaintiffs' mistaken assertion that Defendants are seeking dismissal of this action under Fed. R. Civ. P. 11, 37(b) or 41(b). They are not. The Motion seeks sanctions pursuant to the Local Rules of this Court—specifically, D. Del.

---

[1]    Plaintiffs' Opposition to Defendants' Motion for Sanctions (D.I. 122) is hereinafter referred to as the "Answering Brief" and cited to herein as "AB _." Additionally, the exhibits attached to this reply brief are sequentially lettered to those attached to the Motion for continuity.
[2]    Capitalized terms not otherwise defined herein shall have the meaning prescribed to them in the Motion.

1

LR 1.3. Unlike Fed. R. Civ. P. 41(b), which permits dismissal of an action "if the plaintiff fails to prosecute or to comply with these rules or a court order," or Fed. R. Civ. P. 37(b)(2)(A)(iii) and (v) which permits the Court to, respectively, strike pleadings or dismiss an action as a discovery sanction, Local Rule 1.3 authorizes the Court to impose sanctions for late-filed briefs, which may include (i) refusing to accept the filing (D. Del. LR 1.3(a)); and (ii) deciding the motion in favor of the non-violating party (D. Del. LR 1.3(b)). The sanction is not dismissal; it is the consequence of not timely responding to a case-dispositive motion. As such, Defendants respectfully submit that cases imposing sanctions under Federal Rules 11, 37(b), or 41(b), while instructive, are different.

Nevertheless, consideration of the *Poulis* factors weighs in favor of imposing sanctions under the Local Rules. *See Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 863-868 (3d Cir. 1984) (stating that, for purposes of case dismissal under Fed. R. Civ. P. 41(b), a court should consider: (1) a party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders; (3) a history of dilatoriness; (4) whether the conduct was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim or defense). "No one factor is dispositive" and "a court may dismiss a case even if not all of the factors are satisfied." *Cox v. United Parcel Service, Inc.,* 753 F. App'x 103, 105 (3d Cir. 2018). There is no "magic formula" or "mechanical calculation" in evaluating the proprietary of dismissal. *Hildebrand v. Allegheny County,* 923 F.3d 128, 137 (3d Cir. 2019) (considering dismissal under Rule 41(b)).  Each of these factors weighs against Plaintiffs.

Plaintiffs' counsel requests that this Court refrain from imposing the sanctions allowed by the Local Rules because it would penalize clients for the actions of their counsel. AB 12. However, as established in *Poulis*, while the court must consider "the extent of the party's personal

responsibility," this factor "is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel."[3] *Poulis*, 747 F.2d at 868; *see also Knoll v. City of Allentown*, 707 F.3d 406, 410 (3d Cir. 2013) (holding that "parties cannot always avoid the consequences of the acts or omissions of this freely selected agent") (citation omitted). The Court in *Poulis* further noted that a distinction must be made between a singular act of non-compliance and, like the record in this case, "a pattern of dilatoriness." *Poulis*, 747 F.2d at 868 (emphasizing that "[i]f compliance is not feasible, a timely request for an extension should be made to the court. A history by counsel of ignoring these time limits is intolerable.").

Despite having sufficient opportunity to request an extension from this Court for the very same reasons they now contend hindered timely filing,[4] Plaintiffs' counsel failed to do so. Plaintiffs' counsel provides no justification for this decision.[5] Instead, the Answering Brief devotes significant effort to informing the Court of the necessity of Mr. Palmer's substantive involvement in this matter by presenting a self-promotional executive summary, a 17-year-old case opinion, a

---

[3] Based on the record in this case, the role of the actual Plaintiffs in this litigation is unclear. For example, both plaintiffs Kydd and Bonin confirmed during their depositions that they only asserted claims after they were contacted by DMM Global (Ex. I; Ex. J, p. 2-3), a company that seeks out potential claimants and files claims on their behalf for a fee. Notably, Bonin testified that he saw a family tree presented to the OUP in support of his claim for the first time when his lawyer sent the document to him on his phone. Ex. J, p. 4. Similarly, plaintiff Hilferty indicated that interrogatories, signed by Plaintiffs' counsel (Ex. K), purporting to show that Hilferty was the owner of thirteen additional properties not identified in the Amended Complaint were incorrect. Ex. L.

[4] Defense counsel made abundantly clear to Plaintiff's counsel on February 28, 2025, that they would agree to an extension until March 5 and "that's it." *See* Motion, Ex. C, at p. 8. If more time was required, Plaintiffs had five days to request an extension from the Court.

[5] While silent on this issue in the Answering Brief, in *Plaintiffs' Reply in Further Support of Their Motion to Deem Timely Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment and Answering Brief in Opposition to Defendants' Motion for Summary Judgment* (hereinafter, "Late Motion Reply") (D.I. 120), Plaintiffs offer only that they "concede they could have sought an extension earlier directly from the Court and take full responsibility for the delay." Late Motion Reply 10.

3

letter of appreciation from a California judge, and a published interview on celebrities' unclaimed property. None of these purported accolades satisfactorily elucidate why Delaware counsel was unable to file an extension motion during this period. Indeed, no specialized or particularized knowledge—beyond an understanding of the Local Rules of this Court—is required to inform the Court that counsel is experiencing difficulties that impede Plaintiffs from meeting a deadline in a timely manner. Instead, Plaintiffs' counsel opted to submit the brief fifteen days late and subsequently requested the Court to excuse the tardiness for "good cause."

Although the Plaintiffs may regard the sanctions requested as "extreme" (AB 1, 11, 12, 17) or "overly harsh" (AB 15, 19), the sanctions requested by the Defendants are not without precedent; they are explicitly outlined in the Local Rules. Counsel was aware that a late filing would not be automatically accepted by the Court and that, if the late filing were rejected, Defendants MSJ would be unopposed. Plaintiffs assumed this risk. Furthermore, Plaintiffs were cognizant that their failure to submit their brief by the deadline exposed them to the risk of an adverse ruling, one that would be case-dispositive given that the briefing involved a case-dispositive summary judgment motion. Again, Plaintiffs accepted this risk. Missing the deadline was not accidental, inadvertent or a simple mistake. Plaintiffs' counsel made a deliberate decision not to file a case-dispositive brief by the deadline (after many extensions) and not to seek a final extension from the Court before the deadline.

Following two partially dispositive motions, only the Notice Claim remains before this Court. Defendants moved for summary judgment on this claim because, among other reasons, the factual evidence demonstrates that the claims are moot, time-barred, and barred by the Eleventh Amendment. D.I. 95. Plaintiffs had the opportunity to fully brief their own motion for summary judgment and to respond to the Defendants' motion but placed this opportunity at risk by

4

intentionally filing their briefing late and, as such, application of D. Del. LR 1.3 is reasonable. The impact of counsel's affirmative litigation strategy on their clients should not prevent the imposition of sanctions.

Plaintiffs' actions in this litigation have prejudiced Defendants. *See* Motion 11. Plaintiffs' extensions (both stipulated and unilateral) garnered them 70 days to file responsive briefing.[6] To discount the prejudice this presented to Defendants, Plaintiffs' counsel seemingly chastises Defendants for requesting reciprocal extensions of time and wrongly suggest the Defendants leveraged these delays for additional time in Vial. AB 3. Defendants have been exceedingly accommodating of Plaintiffs' repeated requests for extensions and even their missed deadlines, regardless of the reasons provided, and have only requested that these extensions do not reduce the previously agreed-upon response time for Defendants or to avoid scheduling conflicts caused by this additional time. In Vial, defense counsel requested only two extensions of time to respond to the TRO motion based on the holidays, the conflicting deadlines, and other professional commitments.[7] These extension requests do not, in any way, excuse Plaintiffs' failure to file their brief in this case by the date required by Court order and do not eliminate the prejudice caused by the Plaintiffs' deliberate disregard of deadlines in favor of their own convenience.

**B.    Answering Brief Issues**

The Motion discusses in detail Plaintiffs' established pattern and history of dilatoriness in this litigation and will not be repeated herein. Notably, however, even in the face of a sanctions

---

[6]   Defendants note that, by virtue of the numerous extensions obtained by Plaintiffs' counsel in this case, Plaintiffs' counsel was able to shift the timing of this litigation in direct response to the pending motion for a temporary restraining order in the Vial matter and to avoid the impact of a potentially unfavorable decision in this case on the virtually identical claims raised in Vial. As such, Defendants dispute Plaintiffs' contention that their delay was not, at least in part, motivated by strategy.

[7]   Defendants received an additional extension of time to respond to the Complaint in order to align the briefing schedule with the motion for a temporary restraining order.

request and the risk that their late filed responsive pleading will not be accepted by the Court, Plaintiffs' questionable behavior persists. Plaintiffs' Late Motion Reply was not double-spaced and required refiling. The Answering Brief includes single-spaced text, purporting to quote Defendants, but reproduces a full-page passage from the Late Motion Reply (AB 7), ostensibly to offset applicable page limitations. The Answering Brief also states that "an analysis of the record here shows no indication that Plaintiffs' claims lack a legal foundation or factual basis; instead, Defendants waive various defenses from their answer, such as the claims are time-barred." AB 16. This is patently incorrect. The Fourth Affirmative Defense in Defendants' Answer to First Amended Complaint states "Plaintiffs' claims are barred by the statute of limitations." D.I. 84. In fact, Plaintiffs do not even raise this argument in their summary judgment brief.

Defendants have also identified no fewer than nine material and substantive inaccuracies and incorrect claims in the Answering Brief including: (i) two cases that appear to be nonexistent;[8] (ii) incomplete citations to LEXIS-reported cases lacking court information and pin cites;[9] and (iii) five cases that do not support the general proposition or the quoted language cited by the Plaintiff. For example, Plaintiffs' cite *In re Prosser,* 2015 U.S. Dist. LEXIS 91108, at *6 (D.V.I. July 14, 2015) as "noting that revocation of pro hac vice admission is appropriate only where an attorney's conduct exhibits a clear disregard for the court's authority or constitutes serious breaches of professional ethics." AB 17-18. This proposition appears nowhere in *Prosser*, a case involving a

---

[8] *See In re Skoula*, 45 F.3d 209, 212 (3d Cir. 1995); *Paluch v. Dawson*, 538 F. App'x 191, 194 n.2 (3d Cir. 2013). Counsel located a case by the same name, *Paluch v. Dawson*, C.A. No. 1:CV-06-01751, 2007 WL 4375937, at *8 (M.D. Pa Dec. 12, 2007) concerning a motion to compel discovery and stating only, in conclusion that "Plaintiff's request for the imposition of sanctions Defendants' is denied." If this the case that Plaintiffs intended to cite, it does not stand for the proposition Plaintiffs' claim.

[9] *See In re Prosser*, 2015 U.S. Dist. LEXIS 91108 (AB 17); *Harris v. Crown Castle Int'l Corp.*, 2012 U.S. Dist. LEXIS 71693 (AB 17); *Sears v. McCoy*, 2023 U.S. Dist. LEXIS 213658 (AB 14); *Smith v. RGIS, LLC*, 2021 U.S. Dist. LEXIS 27336 (AB 14).

motion to disqualify attorneys based upon a court rule limiting the number of appearances by a *pro hac vice* attorney and specifically noting that "applications for *pro hac vice* admission are not at issue in this case." Plaintiffs' also quote *Harris v. Crown Castle Int'l Corp.*, C.A. No. 11-1302, 2012 U.S. Dist. LEXIS 71693 (W.D. Pa. May 7, 2012) as stating that "[a] court must consider the extent to which dismissal would deny a litigant the opportunity to have claims adjudicated." AB 16-17. This quoted language does not appear anywhere in the case. Similarly, Plaintiffs contend that *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999) provides that "[l]ikewise, the Third Circuit requires that such inherent powers are applied with restraint and reserved for the 'rarest of cases.'" AB 10. The quoted words "rarest of cases" appear nowhere in this case (or any discussion of the Court's inherent powers), and the case does not even involve sanctions. Finally, Plaintiffs' incorrectly assert that in *Thomas v. Tice*, 948 F.3d 133 (3d Cir. 2020) the Court "noted that mere errors or delays attributable to attorney oversight or external challenges do not rise to the level of egregious misconduct required to revoke an attorney's admission." AB 18.[10] *Thomas* is a prisoner's rights case that does not involve attorney sanctions.

---

[10] In addition to the cases specifically discussed herein, Plaintiffs cites to a number of other cases that do not stand for the propositions they are cited for including *Ferguson v. Valero Energy Corp.,* 454 F. App'x 109, 112 (3d Cir. 2021) which, involves the propriety of sanctions under 28 U.S.C. § 1927, but contains absolutely no discussion that would support Plaintiffs' stated proposition that "[i]n assessing bad faith, the courts have emphasized that inadvertent errors or poor time management, while potentially warranting admonishment, do not constitute the type of egregious misconduct necessary to justify sanctions." AB 10. Other examples include *Lopez v. Brown,* C.A. No. 04-6267 (SRC), 2007 U.S. Dist. LEXIS 48215, *6 (D.N.J. July 3, 2007) (upholding the dismissal of a case following consideration of the Poulis factors) and *TZE Glob. Dis Ticaret A.S. v. Papers Unlimited, Inc.*, 2024 U.S. Dist. LEXIS 141679, at *9 (3d Cir. Aug. 9, 2024) in which the Eastern District of Pennsylvania actually *upheld* the imposition of sanctions in virtually every instance (and with no discussion of attempts to comply with orders) contrary to Plaintiffs' contention that the court, "consistently declined to impose sanctions where litigants have demonstrated an ongoing willingness to comply with orders, even in the face of prior delays." AB 11.

The legal merits of the Answering Brief citations are dubious at best. This behavior is not negligent, it is grounds for sanction. *LeSEA Inc. v. LeSEA Broadcasting Corp.*, C.A. No. 3:18CV914-PPS, 2024 WL 981849, *6 (N.D. Ind. Mar. 6, 2024) (finding that sanctions under § 1927 were appropriate based on counsel's pattern of conduct that "relied on non-existent quotes, undisclosed witnesses, unfounded statements of material fact, and repeated attempts to mislead this Court" and "counsel's habit of asserting facts not material to the issues presented, or asserting legal conclusions or otherwise misplaced content as assertions of material fact . . . goes beyond sloppy or negligent and betrays a serious disregard for the orderly process of justice and an objective bad faith . . . . ").

Moreover, Plaintiffs' counsel attempts to excuse their dilatory and bad faith behavior in this litigation by misstating facts that are inconsistent with their proffered supporting evidence. For example, Plaintiffs contend that "Defendants' counsel omits any discussion of their own requests or conduct which contributed to Plaintiffs' difficulties, such as repeatedly refusing to produce documents *that were promised* during Brenda Mayrack's deposition . . . on August 7, 2024" (AB 3) (emphasis added)) which they "repeatedly requested" for a "period of 2+ months." AB 4. In support, Plaintiffs offer Mr. Palmer's October 24, 2024 letter (AB at Ex. A) which includes excerpts of a confidential deposition which Plaintiffs routinely refer to as "sealed" (AB 4, 5; *see also* Ex. N).[11] These excerpts make it abundantly clear that, with the exception of a single print advertisement, Defendants never promised or agreed to produce any additional documents to Plaintiffs. Instead, the documents show that Defendants repeatedly lodged objections to Mr.

---

[11] The correspondence attached hereto as Ex. M and N, as well as the Stipulation and Order Regarding Briefing Schedule on Plaintiffs' Notice Claim (D.I. 83 at ¶5) make it abundantly clear that, although Plaintiffs objected to the designation of Mayrack's depositions as confidential under D. Del. LR 26.2, the onus was on the Plaintiffs to challenge this designation. They have never done so.

8

Palmer's requests for these documents as being outside the scope of discovery and, in the case of "reciprocal agreements" (AB, Ex. A at Ex. D), documents that do not exist. Defendants' refusal to provide documents to the Plaintiffs that are outside the scope of discovery in this case and irrelevant to the Notice Claim does not constitute dilatory behavior.

With respect to the single document that Defendants' counsel did agree to produce at the deposition, it was provided to Plaintiffs two days after the deposition on August 9. Ex. N, at p. 1. Plaintiffs' counsel fails to advise the Court of this fact in their Answering Brief and/or to include the entirety of the parties' correspondence on this issue which clearly demonstrates that Plaintiffs ignored this production and continued to insist that it was outstanding, using it as a tactical ploy to extend their deadline for summary judgment filing. *See generally*, Ex. N. No discovery dispute prevented Plaintiffs from filing their summary judgment motion on November 14, 2024.[12]

In reality, this "discovery dispute" was orchestrated to acquire information from the OUP for the Vial case. Ex. N. Mr. Palmer had disclosed in October 2023 his desire to add Vial as a plaintiff and to discuss "how best to handle the new action in conjunction with the present action" in September 2024. Ex. N, at p. 3. The purported discovery dispute arose after Defendants' counsel refused to "agree to any consolidation with the current case under any circumstances." *Id.* at p. 7. Vial was filed two weeks after Plaintiffs' belated summary judgment motion, incorporating documents and information obtained during discovery in this case. Once the TRO in Vial was filed, Plaintiffs' counsel began to request extensions of their briefing deadlines in this case. As discussed *supra*, these extensions (both agreed extensions and Plaintiffs' unilateral two-week

---

[12] Plaintiffs had notice of Defendants opinion for at least a month, yet took no proactive action to avoid missing their filing deadline. They did not ask the Defendants or the Court for more time and, notably, as stated in the Declaration of Cherise Bayani, did not seek the allegedly "key" information from the NewsJournal until November 14 - the day the brief was due. D.I. 90.

extension) resulted in the parties completing the TRO briefing in Vial before summary judgment briefing on this case, a preferred result for and engineered by Plaintiffs. This behavior is not merely negligent or inadvertent – it is a pattern of willful conduct and arises out of bad faith. "Willfulness involves intentional or self-serving behavior." *Hildebrand v. Allegheny Cty.,* 923 F.3d at 135 (quoting *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863 at 875 & 876 (3d Cir. 1994) (holding that a delay may reflect only "inexcusable negligent behavior" if there is "no indication it was strategic or self-serving.").

In this case, Plaintiffs' counsel has exhibited a pattern of careless and recurrent errors, fabricated a discovery dispute, submitted a brief replete with non-existent cases and inaccurate legal propositions, made incorrect factual assertions, and improperly accused Defendants of exploiting Plaintiffs' scheduling conflicts. These actions demonstrate that counsel's conduct is neither accidental nor inadvertent; it is willful and executed in bad faith, justifying the imposition of sanctions under the Local Rules.

## **CONCLUSION**

Defendants do not request the imposition of sanctions lightly. However, over the course of this litigation, Plaintiffs' counsel has demonstrated a consistent unwillingness to abide by the Local Rules of this Court culminating in the failure to file a responsive brief for two weeks after the Defendants declined to agree to an extension and without seeking prior leave of this Court. This behavior was willful and intentional and is believed to be taken in bad faith in an effort to stave off a potentially adverse ruling in this case that could affect the identical claims of Plaintiffs' counsel's other clients. Accordingly, Defendants respectfully request that the Court impose sanctions against Plaintiffs pursuant to D. Del. LR 1.3(a) and (b) or other sanctions as this Court deems just and proper.

                                      CONNOLLY GALLAGHER LLP

                                      */s/ Max B. Walton*
                                      Arthur G. Connolly, III (#2667)
                                      Max B. Walton (#3876)
                                      Christina M. Thompson (#3976)
                                      Lisa R. Hatfield (#4967)
                                      1201 N. Market St., 20th Floor
                                      Wilmington, DE 19801
                                      (302) 757-7300
                                      aconnolly@connollygallagher.com
                                      mwalton@connollygallagher.com
                                      cthompson@connollygallagher.com
                                      lhatfield@connollygallagher.com

                                      *Attorneys for Defendants*

Dated: April 10, 2025