# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WALTER SCHRAMM; CHRISTINE KYDD; MARK HILFERTY; LUDOVIC BONNIN, on behalf of themselves and other persons similarly situated,

Plaintiffs,

v.

BRENDA MAYRACK, in her capacity as the Delaware State Escheator, BRIAN WISHNOW, in his capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, and RICHARD J. GEISENBERGER, in his official capacity as the Secretary of Finance for the State of Delaware,

Defendants.

C.A. No.: 22-1443-MN

## [PROPOSED] AMENDED PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Gaston P. Loomis, Esquire (No. 4812)
300 Delaware Ave., Suite 1014
Wilmington, DE 19801
Telephone: (302) 300-4512
E-mail: gloomis@mdmc-law.com

-and-

PALMER LAW GROUP, a PLC
William W. Palmer (Admitted *Pro Hac Vice*)
907 Westwood Blvd., No. 218
Los Angeles, CA 90024
Telephone: (310) 984-5074
E-mail: wpalmer@palmercorp.com

*Attorneys for plaintiffs Walter Schramm; Christine Kydd; Mark Hilferty; Ludovic Bonnin and Members of the Proposed Class*

Dated:        April 3, 2025

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL STANDARD............................................................................................7

ARGUMENT ........................................................................................................9

    I.   Defendants Have Not Demonstrated Bad Faith or Willful Miscoduct Warranting Sanctions.................................................................................9

    II.  The *Poulis* Factors do Not Support Dismissal or Substantive Sanctions............12

        A.  Personal Responsibility.................................................................12

        B.  Prejudice to Defendants ...............................................................13

        C.  History of Dilatoriness .................................................................14

        D.  Willfulness or Bad Faith ..............................................................14

        E.  Effectiveness of Alternative Sanctions........................................15

        F.  Meritoriousness of the Claims .....................................................16

    III. Plaintiffs Counsel's Conduct Does Not Warrant Revocation Of Pro Hac Vice Admission ...................................................................................17

    IV. Financial Sanctions Should be Proportional And Limited .................................19

CONCLUSION....................................................................................................20

CERTIFICATE OF SERVICE ...........................................................................22

# TABLE OF AUTHORITIES

## CASES

*Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund,*
    29 F.3d 863, 875-76 (3d Cir. 1994) ........................................................10, 11, 13, 14

*Black Bear Energy Servs. v. Youngstown Pipe & Steel, LLC,*
    551 F. Supp. 3d 555 (2021) ........................................................................2

*Briscoe v. Klaus,*
    538 F.3d 252, 258-59 (3d Cir. 2008) ..............................................8, 13, 16

*Chambers v. NASCO, Inc.,*
    501 U.S. 32, 45-46 (1991) ...........................................................7, 10

*Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.,*
    843 F.2d 683, 693 (3d Cir. 1988)..................................................13

*Doering v. Union County Bd. of Chosen Freeholders,*
    857 F.2d 191, 194 (3d Cir. 1988)..................................................20

*Donnelly v. Johns-Manville Sales Corporation,*
    677 F.2d 339 (3d Cir. 1982).........................................................17

*DiFrancesco v. Aramark Corp.,*
    169 Fed. Appx. 127, 131 (3d Cir. March 1, 2006) .......................9

*Eash v. Riggins Trucking, Inc.,*
    757 F.2d 557, 562 (3d Cir. 1985)..................................................18

*Emerson v. Thiel Coll.,*
    296 F.3d 184, 191 (3d Cir. 2002)..................................................12

*Ferguson v. Valero Energy Corp.,*
    454 F. App'x 109, 112 (3d Cir. 2021) ..........................................10

*Hildebrand v. Allegheny County,*
    923 F.3d 128, 132 (3d Cir. 2019) ....................................8, 14, 16

*Hritz v. Woma Corp.,*
    732 F.2d 1178, 1184 (3d Cir. 1984) ............................................10

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,*
    469 F. Supp. 3d 357 (E.D. Pa. 2020).........................................16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   278 F.3d 175, 181 (3d Cir. 2002) ...........................................................................15, 18

*Jaime Vial v. Brenda Mayrack, et al.*,
   U.S. District of Delaware Case No. 1:24-cv-01313-UNA) ...........................................2

*Jan Peters v. Malia M. Cohen*,
   Ninth Circuit Docket No. 24-1040 .................................................................................7

*John v. State of La.*,
   828 F.2d 1129, 1131-33 (5th Cir. 1987) .......................................................................9

*Johnson v. Trueblood*,
   629 F.2d 287, 294 (3d Cir. 1980) ...............................................................................19

*Kaplan v. Exxon Corp.*,
   126 F.3d 221, 224 (3d Cir. 1997) ...............................................................................14

*Klein v. Stahl GMBH & Co.*,
   185 F.3d 98, 109 (3d Cir. 1999) ...........................................................................10, 19

*Mindek v. Rigatti*,
   964 F.2d 1369, 1373 (3d Cir. 1992) .............................................................................9

*Poulis v. State Farm Fire & Casualty Co.*,
   747 F.2d 863, 867-69 (3d Cir. 1984) .........................................................8, 9, 12, 14, 17

*Republic of the Philippines v. Westinghouse Elec. Corp.*,
   43 F.3d 65, 74 (3d Cir. 1994) ...........................................................................7, 9, 20

*Roman v. City of Reading*,
   121 F. App'x 955, 960 (3d Cir. 2005) .........................................................................15

*Scarborough v. Eubanks*,
   747 F.2d 871, 878 (3d Cir. 1984) ...........................................................................15, 16

*Scranton Prods. v. Bobrick Washroom Equip., Inc.*,
   2016 U.S. Dist. LEXIS 174260 (Dec. 16, 2016)..........................................................2, 3

*Titus v. Mercedes Benz of North America*,
   695 F.2d 746 (3d Cir. 1982) .......................................................................................17

*United States v. Gonzalez-Lopez*,
   548 U.S. 140, 152 (2006) ...........................................................................................18

*Ware v. Rodale Press, Inc.,*
   322 F.3d 218, 221 (3d Cir. 2003) ...........................................................................8, 14

## FEDERAL STATUTES AND REGULATIONS

### Federal Rules Of Civil Procedure

Rule 11 ...........................................................................................................................2

Rule 16(b)(4) .................................................................................................................2

## DELAWARE DISTRICT COURT LOCAL RULE

D. Del. LR 1.3 .................................................................................................................2

D. Del. LR 83.5 ...............................................................................................................2

D. Del. LR 83.6 ...............................................................................................................2

Plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, Ludovic Bonnin (collectively, "Plaintiffs") submit this Opposition to defendants Brenda Mayrack, as the Delaware State Escheator; Brian Wishnow; and Michael R. Smith (collectively, the "Defendants") Motion for Sanctions.

## **INTRODUCTION**

Plaintiffs submit this Opposition to Defendants' Motion for Sanctions ("MFS"). Defendants' MFS seeks extreme remedies, including barring Plaintiffs' counsel from further briefing, effectively granting summary judgment in favor of Defendants, and issuing disciplinary and monetary sanctions against Plaintiffs' counsel, including revocation of counsel's *pro hac vice* status. While Plaintiffs acknowledge certain delays in this litigation, the requested sanctions are disproportionate and unsupported by the legal standards governing sanctions in the Third Circuit. The imposition of sanctions, especially case-dispositive sanctions, represents an extraordinary measure that courts reserve for extreme circumstances, such as evidence of willful misconduct or bad faith. Defendants fail to meet this exceedingly high standard.

The Third Circuit has consistently emphasized that courts must approach sanctions with caution, ensuring that they are proportionate to the conduct at issue and appropriate in light of the specific facts of the case. Procedural delays, even if inconvenient to one party, are a common aspect of litigation and must be assessed within the broader context of the case's progression, the reasons underlying the delays, and the actions of the parties involved in resolving any procedural issues. Here, Plaintiffs' counsel acted in good faith, provided valid reasons for the delays, and took appropriate steps to mitigate any potential inconvenience to Defendants or the Court. Plaintiffs have likewise been patient and respectful of Defendants and provided extensions as

requested in this and in the related *Jaime Vial v. Brenda Mayrack*, *et al*., U.S. District Court District of Delaware Case No. 1:24-cv-01313-UNA ("Related Case").

Moreover, procedural delays or missteps that are inadvertent or attributed to unforeseen circumstances — such as personal or professional challenges faced by counsel — do not amount to the type of egregious conduct that would justify sanctions. Defendants' attempt to conflate routine litigation hurdles with intentional or abusive conduct under Rule 11 or under D. Del. LR 1.3, D. Del. LR 83.5 and 83.6 undermines the purpose of these provisions, which aim to deter truly improper legal conduct.

Defendants' attempt to impose sanctions as a punitive measure, absent evidence of bad faith or willful misconduct, is unsupported by law and inconsistent with the Third Circuit's jurisprudence on the imposition of sanctions. The severity of the sanctions sought underscores the disproportionate nature of Defendants' request, particularly given the constructive steps Plaintiffs have taken to address any procedural concerns. At this time, all discovery as ordered is complete, the Motion for Summary Judgment is briefed, and Plaintiffs are in the process of associating new and additional counsel into this case to avoid any future problems. Plaintiffs assert that the interests of fairness, justice, and judicial efficiency compel the denial of Defendants' MFS in its entirety.

Plaintiffs and their counsel acknowledge the importance of adhering to court deadlines but contend that their delay was the result of excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B). *See* Plaintiffs' Motion to Deem as Timely Their Reply Brief in Support of Plaintiffs' Motion for Summary Judgment and Answering Brief in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 117]. Plaintiffs further argue that good cause exists under Federal Rule of Civil Procedure 16(b)(4) to modify the scheduling order. *See Black Bear Energy Servs. v. Youngstown Pipe & Steel, LLC*, 551 F. Supp. 3d 555 (2021); *Scranton Prods. v. Bobrick*

*Washroom Equip.*, *Inc*., 2016 U.S. Dist. LEXIS 174260 (Dec. 16, 2016). Contrary to Defendants' assertions, Plaintiffs acted in good faith, and the delay has not caused undue prejudice to Defendants or disrupted judicial efficiency.

Defendants' counsel omits any discussion of their own requests or conduct which contributed to Plaintiffs' difficulties, such as repeatedly refusing to produce documents that were promised during defendant Brenda Mayrack's deposition taken by California *pro hac vice* counsel in Wilmington, Delaware on August 7, 2024. *See* Exhibit. A. Defendants fail to mention that Defendants extended the deadline to file their short answer from December 26, 2024, to January 30, 2025 (and eventually to February 27, 2025, because "[Defense counsel]'s workload was heavy" in February 2025 - another 30+ days). Exh. B. Likewise, Defendants requested multiple extensions in the Related Case by leveraging Plaintiffs' requests for extension in this case. When Defendants' Counsel learned of the Los Angeles fires, which occurred during January and February 2025 and that Plaintiffs' Counsel's practice was impacted, he stated "You can have a two-week extension if you need it. We simply ask that Defendants have the same extension (one or two weeks) to file their Reply." Exh. C. Verbally, Defense counsel was gracious: "Whatever you need."

Most important, there was absolutely no prejudice to Defendants who, as noted, continued to run their unnoticed property seizure program unabated. The website operated by Defendants on which the millions of citizens are to rely remains broken and inoperable, for all the world to see. *See* Declaration of Expert Witness Jan Peters in Support of Plaintiffs' Motion for Summary Judgment ("Peters Decl.") [Dkt. No. 91]. Citizens continue to receive no notice whatsoever prior to private property seizures and sales. Defendants understand they provide no notice prior to property seizures and that Defendants position in their case is meritless. In short, this is an effort

3

to capitalize off Plaintiffs' counsel's personal hardship in order to prevail in lawsuit where Plaintiffs' claims have merit. They further assert an *ad hominem* attack on opposing counsel rather than acknowledge that Plaintiffs' claims have merit.

Further, Defendants attempt to argue that Delaware counsel could address the pleadings. However, Mr. Palmer is uniquely qualified to respond to the arguments raised in this case in light he has been lead counsel throughout and given his extensive experience in handling similar matters. *See* William W. Palmer's Executive Summary attached as Exh. H; Letter from Hon. Judge Kaddo attached as Exh. I; C. Hedley, "British Celebrities' assets seized under Draconian California Law" The London Daily Telegraph (April 3, 2009) attached as Exh. J.

Defendants begin their timeline of events on page 7 of the MFS with Plaintiffs missing their deadline to file their motion and opening brief. Defendants do not alert this Court to the fact that for a period of 2+ months prior to November 2024, Plaintiffs repeatedly requested the documents promised during the deposition of Ms. Brenda Mayrack held on August 7, 2024. Additionally, over Plaintiffs' objections, Defendants unilaterally ordered the government employee's deposition to be sealed to hide the misconduct from the public and did not seek a protective order. On October 11, 2024, Plaintiffs' counsel requested the entire publication notice inserts. Exh. D. After speaking with Defense counsel, he noted in an email: "On the newspapers, as explained to [Delaware counsel], we will provide them (the whole papers as we have them) next week." *Id*. On October 24, 2024, Plaintiffs were forced to send Defense counsel a detailed discovery meet and confer letter. *See* Exh. A. Plaintiffs were then tasked with locating the post-2017 notices. *See* Declaration of Cherese Bayani in Support of Plaintiffs' Motion for Summary Judgment [Dkt. No. 90].

Defendants stipulated to a 6-day extension on the filing of Plaintiffs' motion, which also extended the time for Defendants to file their motion by 6-days.  Defendants filed their motion on December 20, 2024, and next requested additional time to file their redacted versions of their briefs from December 27, 2024 to January 10, 2025.  (Plaintiffs object to the efforts by Defendants to "seal" Ms. Mayrack's deposition transcript.)  Defendants stated: "Given the holidays, we think it makes sense to stipulate to extend the deadline to the first full week in January."  Exh. E.  While Defendants further requested an extension from Plaintiffs' Counsel in the Related Case *and* a 30+ day extension to file an abbreviated answer in this case.

On January 7, 2024, Defendants sent an email with a link to the redactions of Defendants' motion and requested an extension so that Defendants' reply brief would be filed on or before February 11, 2025.  That same day Plaintiffs' counsel requested an 8-day extension to file their responsive brief because of an upcoming mediation in an unrelated case caused by a co-counsel who abruptly shifted the burden to Mr. Palmer.  Two days later, Southern California experienced a national disaster with multiple unprecedented wildfires that brought Los Angeles and the surrounding areas to a standstill. Over 16,000 structures (homes and businesses) burned to the ground in just the one Pacific Palisades fire which is in the immediate vicinity of Mr. Palmer's residence.  When the evacuation line came within two blocks of his home, Mr. Palmer voluntarily vacated, and his staff in the Los Angeles office were told to only come to work if they felt safe in doing so, the air quality deteriorated, and the multiple fires resulted in later unforeseen flooding. Mr. Palmer's CPA and bookkeeper lost their Pacific Palisades businesses and files in the fire, and co-defense counsel in an another unrelated case lost his home and business to the fires. Mr. Palmer took over that action as well.

On January 14, 2025, the Plaintiffs reached out to Defendants regarding this emergency situation in California and requested only a 1-week extension (Counsel was uncertain how long the fires would affect his home and his practice),[1] to which Defendants noted:

> Of course, we will agree to a one-week extension for Plaintiffs to file their Opposition/Reply Brief under these circumstances.   You can have a two-week extension if you need it.  We simply ask that Defendants have the same extension (one or two weeks) to file their Reply. …We hope you will extend the same courtesy if Defendants in the Vial case end up needing additional time to file their opposition to the pending motion for a temporary restraining order and preliminary injunction given the changing schedule in this case and other pressing business. Please stay safe

Defendants' Motion at Exh. C at p. 3.

On January 31, 2025, the Plaintiffs requested additional time to file Plaintiffs' responsive brief and noted to Defendants that the fires (and a medical issue).  Defendants' Motion Exh. C at p. 4.  In making these statements, Defendants neglect to alert this Court that due to [Defense counsel's] "very busy schedule in February, we'd like to request additional extensions of time for Defendants to respond to the Complaint and the pending TRO/PI motion until February 27." Exh. B.

On February 20, 2025, the Plaintiffs reached out to Defendants' counsel requesting a 1-week extension due to unforeseen issues of a terminally ill friend and client in London. Mr. Palmer completed the estate work (California and London) and assumed the role of trustee of the two children.  The Defendants' counsel noted in an email: "We have authority to agree to a one-week extension assuming Defendants get an additional week to file their reply brief (from March 12 to March 19).  Please note we may not receive approval for any further extensions for Plaintiffs. Defendants opening and answering brief was filed two months ago on December 20."  Exh. F.

---

[1] In retrospect, Plaintiffs' Counsel should have brought this situation to the Court's attention directly and sought guidance.

At pages 10 -11 in their accompanying Objection to Plaintiffs' Motion [Dkt. No. 119], Defendants question the veracity of Counsel's statements; for example:

- On February 5, 2025, Counsel appeared before the Ninth Circuit Panel as ordered in *Jan Peters v. Malia M. Cohen*, Ninth Circuit Docket No. 24-1040. Counsel briefed and argued the case before the lower court. Mr. Palmer agreed that attorney Jonathan Massey, who clerked for Chief Justice Brennan (among many accomplishments) would take the lead before the Ninth Circuit.

- Next, Defendants question whether from February 17 to 21, 2025, Mr. Palmer was indeed ill with food poisoning (which can be confirmed by co-counsel and others) because he filed a complaint in another action. Counsel solely represented the 11-year-old owner of Axial Mfg., Inc., who is an orphan and under court-ordered guardianship, in a series of complex federal trademark infringement cases before the Central District Federal Court and the USPTO (United States Patent & Trademark Office). ounsel prevailed, and the cases settled globally. On February 21, 2025, with significant paralegal assistance, Counsel did indeed file a complaint against one of the insurance companies which denied coverage. *See Axial Manufacturing*, *Inc. v. StarStone Specialty Insurance Company*, U.S. District Court Central District of California Case No. 8:25-cv-00349. This is because the action was close to the statutory cutoff date which would be fatal to the filing. Likewise, on March 18, 2025, Counsel filed another action against the second insurance company. *See Axial Manufacturing*, *Inc. v. Great American E&S Insurance Company*, U.S. District Court Central District of California Case No. 8:25-cv-00519. Mr. Palmer was is the sole attorney representing the little girl. He served as the General Counsel for the California Department of Insurance where he handled complex insurance matters. Mr. Palmer could not delegate this responsibility.

## **LEGAL STANDARD**

The Third Circuit has consistently held that courts possess inherent authority to impose sanctions to manage litigation and deter misconduct. However, the exercise of this authority is subject to strict limitations, as sanctions under the court's inherent power generally require a finding of bad faith, vexatious conduct, or willful disregard of court orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (hereafter, "*Chambers*"); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994) (hereafter, "*Republic of the Philippines*"). It is well-understood that these inherent powers "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Furthermore, dismissal as a sanction is considered a drastic remedy and is reserved for cases involving egregious misconduct that severely disrupts the litigation

process. *See Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 867-69 (3d Cir. 1984) ("*Poulis*").

When evaluating whether dismissal is appropriate, courts in the Third Circuit apply the six-factor test established in *Poulis*. These factors include: (1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) history of dilatoriness; (4) willfulness or bad faith; (5) effectiveness of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 868. No single factor is dispositive, and the factors must be weighed in light of the circumstances of the case to ensure the imposition of sanctions is just and fair. *See Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008) ("*Briscoe*"); *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) ("*Ware*").

The court's discretion to impose sanctions must also take into account considerations of proportionality. For example, <u>dismissal or other severe penalties must be considered as a last resort</u>, particularly when alternative remedies such as monetary sanctions, additional warnings, or procedural restrictions may achieve the intended deterrent effect without unduly punishing the litigant. *See Poulis* 747 F.2d 863; *Hildebrand v. Allegheny Cty.*, 923 F.3d 128 (3d Cir. 2019) ("*Hildebrand*"). In this way, imposing sanctions aligns with the principle that cases should be resolved on their merits whenever possible. *See Hildebrand* 923 F.3d at 132.

Additionally, courts in the Third Circuit have emphasized the importance of distinguishing between the conduct of the litigant and the conduct of their counsel. Sanctions that unfairly punish a party for their counsel's errors undermine the fairness of judicial proceedings and may result in reversible error. *See Poulis*, 747 F.2d at 868. While a litigant bears some responsibility for their choice of counsel, dismissal is not justified in cases where counsel's actions, though negligent, do not rise to the level of willful misconduct or bad faith. *See Briscoe*, 538 F.3d at 259. The Third

Circuit has repeatedly cautioned that sanctions must serve to address the behavior at issue without imposing excessive hardship on those who bear little responsibility for it. *See*, *e.g.*, *DiFrancesco v. Aramark Corp.*, 169 Fed. Appx. 127, 131 (3d Cir. March 1, 2006) (holding that dismissal was not warranted as sanction for the plaintiff's failure to comply with scheduling order where there was no showing that the plaintiff caused any other delays, and the delay was not willful or the result of bad faith) (unpublished); *John v. State of La.*, 828 F.2d 1129, 1131-33 (5th Cir. 1987) (dismissal reversed where counsel's conduct was simply careless and not in bad faith and defiant, and where there was no wrongdoing by the plaintiff himself).

Critically, any analysis of sanctions must be grounded in specific findings, and claims of prejudice or delay must be substantiated. The Third Circuit demands that courts carefully articulate the basis for imposing sanctions, particularly dismissal, and expressly evaluate whether less severe sanctions could address the purported harm or deterrent need. *See Poulis*, 747 F.2d at 868; *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). Failure to do so risks unwarranted inequity and undermines the integrity of judicial administration. As such, the bar for severe sanctions is high, requiring courts to apply caution and engage in a thorough balancing of the equities presented.

## **ARGUMENT**

### I.    **DEFENDANTS HAVE NOT DEMONSTRATED BAD FAITH OR WILLFUL MISCONDUCT WARRANTING SANCTIONS.**

Defendants argue that Plaintiffs' counsel engaged in bad faith by repeatedly missing deadlines and by requesting extensions, framing this behavior as a calculated strategy to delay the litigation. However, the Third Circuit has articulated that findings of bad faith are usually a necessary prerequisite to imposing sanctions under a court's inherent authority. *See Republic of the Philippines*, 43 F.3d at 74. Bad faith in this context requires evidence of intentional misconduct, such as actions driven by vexatious motives or a willful effort to disrupt the orderly administration

of justice. *See Chambers*, 501 U.S. at 46. Here, Plaintiffs' counsel's delays, while unfortunate, do not rise to this level of intentional, obstructive behavior. Instead, these delays stemmed from logistical and professional difficulties, coupled with scheduling conflicts that prompted requests for extensions, all of which were made in good faith rather than for any improper purpose. Defendants requested similar extensions in this case and in the Related Case by leveraging Plaintiffs' requests for extension in this case.

In assessing bad faith, the courts have emphasized that inadvertent errors or poor time management, while potentially warranting admonishment, do not constitute the type of egregious misconduct necessary to justify sanctions. *See Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2021). Plaintiffs have provided reasonable explanations for the delays, including instances of unavoidable scheduling difficulties and other mitigating circumstances, which demonstrate an effort to comply with court-ordered deadlines rather than disregard or frustrate the litigation process. This conduct, though not ideal, demonstrates a lack of the bad faith or recklessness required to impose sanctions of the magnitude Defendants seek.

The Supreme Court has noted that courts' inherent power to sanction should be utilized "only in narrowly defined circumstances." *Chambers*, 501 U.S. at 44-45. Likewise, the Third Circuit requires that such inherent powers are applied with restraint and reserved for the rarest of cases. *See Klein v. Stahl GMBH & Co.*, 185 F.3d 98 (3d Cir. 1999). Courts also caution against conflating mistakes or delays with intentional rule violations. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1184 (3d Cir. 1984).

Furthermore, in examining whether alleged misconduct rises to a sanctionable level, courts are instructed to distinguish between negligent or sloppy practice and overt recklessness or willful misconduct. *See Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 875-76

(3d Cir. 1994) ("*Adams*"). Plaintiffs' counsel's conduct in the case, while difficult and not exemplary, does not meet the threshold of willfulness or bad faith under Third Circuit jurisprudence. There is no evidence to suggest Plaintiffs' counsel acted with the type of severe recklessness or malicious intent required to merit sanctions under the court's inherent authority. This distinction is critical, as missteps attributable to lack of organization or strained resources do not constitute sanctionable behavior absent evidence of intent to obstruct proceedings.

In addition, Plaintiffs have taken steps to address and minimize the impact of previous delays. The extensions sought were not unreasonable in duration, nor did they place additional burdens on Defendants or result in a fundamentally unfair process. Plaintiffs' actions in this case and the Related Case show engagement with the judicial process rather than a refusal to participate or cooperate in good faith.  Indeed, a TRO and Preliminary Injunction are pending to halt the Defendants' egregious unnoticed property seizure program and to repair their broken website on which millions of injured citizens depend.  *See* Peters Decl. [Dkt. No. 91]. Courts have consistently declined to impose sanctions where litigants have demonstrated an ongoing willingness to comply with orders, even in the face of prior delays. *Adams*, 29 F.3d at 875 (reversing dismissal where the plaintiff, although procedurally imperfect, made efforts to prosecute the case and respond to court directives).

Overall, Defendants have not sufficiently demonstrated that Plaintiffs' conduct rises to the level of bad faith or willful disregard for judicial procedures. Plaintiffs' counsel's delays may warrant the court's disapproval or, at most, the imposition of a minor remedial measure. However, such actions fall significantly short of the threshold for severe sanctions, such as those sought by Defendants, and do not justify the extreme remedies requested. Consequently, Plaintiffs respectfully request this Court deny Defendants' MFS on this basis.

## II.    THE *POULIS* FACTORS DO NOT SUPPORT DISMISSAL OR SUBSTANTIVE SANCTIONS.

Defendants' request for dismissal and summary judgment as sanctions is excessive and unwarranted when analyzed under the *Poulis* factors. A thorough examination of each factor demonstrates why severe sanctions are inappropriate:

**A.    Personal Responsibility:** Plaintiffs' counsel, not Plaintiffs themselves, bears primary responsibility for the delays. Courts in the Third Circuit have consistently recognized that sanctions should not unfairly punish litigants for the conduct of their attorneys unless the litigants themselves were directly involved in or contributed to the improper behavior. *See Poulis*, 747 F.2d at 869 ("A client cannot always avoid the consequences of the acts or omissions of its counsel, but sanctions which have the effect of essentially ending a case should only be imposed if the client shares in the responsibility for the delay or misconduct."). In this case, there is no evidence or allegation that Plaintiffs personally failed to comply with their responsibilities, disregarded court orders, or exhibited any misconduct.

The delays in this litigation were attributable solely to Counsel's actions or inactions, including requesting extensions due to personal or professional conflicts. Courts aim to avoid the unfair outcome of penalizing litigants for errors or delays that were outside of their direct control. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (holding that sanctions targeting counsel's behavior should not generally impair the rights of litigants unless there are egregious circumstances where counsel's misconduct is extreme and the litigants themselves bear some responsibility). Here, Plaintiffs have not acted in any manner to impede the litigation or to further delay proceedings - they have relied on their counsel to carry out their obligations within the litigation and to meet deadlines set by the Court.

Furthermore, the principles of equity and justice weigh heavily against holding Plaintiffs accountable for any procedural missteps by their counsel unless such missteps amount to gross misconduct, which is not evident in this case. Plaintiffs' counsel has acknowledged responsibility for the delays, apologized, and has made efforts to explain and remediate them during the course of proceedings. In the Related Case, where Defendants' counsel had requested continuances based on this case, Defendants can point to nothing.

**B.    Prejudice to Defendants:** While Defendants allege prejudice, they have not demonstrated specific harm caused by the delays. Defendants were always treated with respect and provided equal time. The Third Circuit has held that mere inconvenience or delay does not constitute sufficient prejudice to justify dismissal or other severe sanctions. For prejudice to warrant dismissal, it must result in a demonstrable impairment of the opposing party's ability to litigate the case effectively. *See Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 693 (3d Cir. 1988). Defendants must substantiate their claims of prejudice with concrete evidence, such as the loss of critical evidence, unavailability of witnesses, or substantial interference with trial preparation. *See Adams*, 29 F.3d at 874.

In this case, Defendants fail to identify any specific harm tied to the alleged delays. Defendants have not argued that essential evidence has been lost, that memories of material witnesses have faded irreparably, or that their ability to prepare or present their case has been meaningfully impacted. Instead, their claims of prejudice are speculative at best and focus on the inconvenience caused by extensions of deadlines and additional briefings. Such generalized grievances about delay do not meet the Third Circuit's standard for establishing prejudice significant enough to justify dismissal. *See Briscoe*, 538 F.3d at 265 ("Prejudice is not established when the opposing party has suffered no more than inconvenience and expense.").

Moreover, it is important to note that many of the delays in question were short and agreed upon mutually or granted by the Court, indicating that Defendants were not materially disadvantaged during these periods. If any inconvenience or disruption occurred, it was limited and did not materially obstruct the progress of the litigation. Importantly, courts have held that prejudice arising from delays must also outweigh the potential harm to the opposing party of imposing severe sanctions, such as dismissal. *See Ware*, 322 F.3d at 223.

C.    **History of Dilatoriness:** Although there have been multiple delays, the Third Circuit has held that a pattern of delay must be extensive and egregious to warrant dismissal. Courts have declined to impose dismissal sanctions despite repeated procedural missteps, emphasizing a preference for resolving cases on their merits. Courts note that sporadic delays or failures to meet deadlines, while frustrating, are not necessarily sufficient to show the type of deliberate or egregiously negligent conduct that warrants the extreme remedy of dismissal. *Adams*, 29 F.3d at 874; *Hildebrand*, 923 F.3d at 133. Moreover, the delays here do not rise to the level of egregiousness seen in cases where dismissal was granted, such as when parties repeatedly ignored court orders with no reasonable basis to do so over an extended period or acted with clear intent to obstruct the litigation process. Plaintiffs' counsel has submitted explanations for these delays, which were caused by an unprecedented natural disaster, health and personal issues rather than intentional disregard for the court's authority. The conduct in question, while not ideal, fails to meet the threshold for extraordinary sanctions like dismissal given the *Poulis* analysis.

D.    **Willfulness or Bad Faith:** As discussed above, there is no clear and convincing evidence of bad faith or willfulness. The Third Circuit has consistently held that bad faith requires intentional misconduct or actions taken with the purpose of frustrating or undermining the judicial process. *See Kaplan v. Exxon Corp.*, 126 F.3d 221, 224 (3d Cir. 1997) ("Bad faith can only be

14

established where a claim is frivolous, lacks merit, or is brought for an improper purpose."). Here, Plaintiffs' counsel has provided reasonable and detailed explanations for the procedural errors and delays, including significant personal and professional challenges such as health issues and the effects of natural disasters. These factors demonstrate, at most, negligence or inadvertence, which the Third Circuit has repeatedly held does not meet the high threshold for willfulness or bad faith. *See In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 278 F.3d 175, 181 (3d Cir. 2002) ("Mere negligence or inadvertence does not equate to bad faith.").

Furthermore, there is no evidence on record that Plaintiffs' counsel acted with intent to delay the proceedings or prejudice the Defendants. Any missteps are the result of external circumstances rather than intentional disregard for the court's rules or obligations to the opposing party. This is significant because courts are to assess the totality of the circumstances to determine whether the conduct in question evidences improper motives. As emphasized in *Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005) "failures rooted in mistake or misunderstanding, rather than willful misconduct, do not suffice to constitute bad faith or warrant severe sanctions."

Plaintiffs' counsel has taken steps to mitigate harm where possible, such as filing late submissions, offering reasonable explanations that were supported by documentation, and granted extensions to Defendants as requested in this and the Related Case. To determine otherwise would constitute an overly harsh application of the rule and would fail to align with the Third Circuit's strong preference for resolving cases on their merits wherever practicable. *See Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984) ("*Scarborough*") ("Sanctions should be tailored narrowly and sparingly, particularly where the party's ability to litigate on the merits is at stake.").

**E.    Effectiveness of Alternative Sanctions:** The Court must consider whether lesser sanctions, such as monetary penalties, warnings, or additional requirements for compliance, would

suffice to address and deter the conduct at issue. Though effectively the cross-motions for summary judgment are nearly complete and the case will be decided on the merits. The Third Circuit has emphasized that courts must explore <u>alternative measures before imposing severe sanctions</u>, particularly those such as dismissal, which are considered extraordinary remedies. *See Briscoe*, 538 F.3d at 263. In this case, Defendants have failed to demonstrate that lesser sanctions, such as monetary fines or additional compliance monitoring, would be inadequate to address any perceived harm or deter future delays.

The Third Circuit has repeatedly stressed that sanctions should be proportional to the circumstances and tailored to the specific misconduct. *See Scarborough*, 747 F.2d at 878 ("Sanctions should aim to rectify the harm while preserving fairness in the proceedings."). Monetary penalties are often considered an effective deterrent for procedural missteps, especially where there is no evidence of intentional misconduct or bad faith on the part of the offending party or counsel. Lesser sanctions also allow the court to address procedural violations without impeding the merits of the case.

**F.    Meritoriousness of the Claims:** Plaintiffs' claims have not been deemed frivolous or without merit; indeed, just the opposite is true, and the state officials are hard-pressed to explain their conduct and resulting harm to the public. The Court should exercise caution in imposing sanctions that would preclude a full and fair adjudication of the case on its merits. The Third Circuit has emphasized time and again that case-dispositive sanctions, such as dismissal or summary judgment, should be used sparingly and only as a last resort in the most egregious circumstances. *See In re Avandia Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 469 F. Supp. 3d 357 (E.D. Pa. 2020); *Hildebrand* F. 3d at 132 (Dismissal with prejudice is a drastic sanction and should be reserved for cases where the conduct in question is particularly egregious). An analysis of the

record here shows no indication that Plaintiffs' claims lack a legal foundation or factual basis; instead, Defendants waive various defenses from their answer, such as the claims are time-barred. Plaintiffs have raised issues deserving of judicial review, and dismissing the case at this stage would unduly impair their right to have their claims heard on the merits. As the court explained in *Titus v. Mercedes Benz of North America*, 695 F.2d 746 (3d Cir. 1982), courts must consider the extent to which dismissal would deny a litigant the opportunity to have claims adjudicated.  Courts have  cautioned that courts must protect against the risk of depriving litigants of remedies that could be fairly and appropriately resolved through the judicial process.  *Id*; *see also*, *Donnelly v. Johns-Manville Sales Corporation*, 677 F.2d 339 (3d Cir. 1982).

Importantly, no single *Poulis* factor is dispositive, and courts must weigh all factors carefully before imposing extreme sanctions. Here, while some delays may be acknowledged, the balance of factors does not justify dismissal or granting summary judgment in Defendants' favor. *Id*., 747 F.2d 863, dictates that courts consider all circumstances of the case before depriving a party of its day in court. Plaintiffs have moved the case forward, conducted the discovery of foreign clients and the deposition of the state official in Wilmington, Delaware, and provide reasonable justifications for their counsel's procedural lapses, further underscoring that dismissal or summary judgment would be inappropriate under the totality of the circumstances. Thus, the *Poulis* analysis weighs heavily against the severe measures sought by Defendants, making such sanctions neither equitable nor justifiable in this instance.

## III.    PLAINTIFFS COUNSEL'S CONDUCT DOES NOT WARRANT REVOCATION OF *PRO HAC VICE* ADMISSION.

Defendants' request to revoke Plaintiffs counsel's *pro hac vice* admission is both unwarranted and unsupported by the standards for such an extreme remedy under Third Circuit precedent. The revocation of *pro hac vice* status is a severe sanction that courts reserve for cases

involving significant ethical violations or egregious misconduct that directly undermines the administration of justice. *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, *supra*; *see also Eash v. Riggins Trucking, Inc*., 757 F.2d 557, 562 (3d Cir. 1985) (*en banc*). Plaintiffs' counsel's conduct, while problematic in some respects, does not meet these stringent criteria. In retrospect, Plaintiffs' counsel perhaps should have sought a significant extension, rather than piecemeal, and associated into the case additional counsel.

First, the deficiencies cited by Defendants, such as late filings and missed deadlines, are procedural in nature and do not amount to unethical or malicious behavior. The same extensions were provided to opposing counsel. Courts have consistently distinguished between procedural shortcomings, which may be addressed through lesser sanctions, and conduct that warrants the severe remedy of pro hac vice revocation. Courts note that mere errors or delays attributable to attorney oversight or external challenges do not rise to the level of egregious misconduct required to revoke an attorney's admission. *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, *supra*. Here, Plaintiffs' counsel has provided reasonable explanations for the procedural delays, including an unprecedented natural disaster that impacted not only Counsel, but counsel in other cases, and the businesses and local courts which Counsel relies on, personal health issues and unforeseeable disruptions. While these explanations do not excuse the impact on the court's schedule, they do demonstrate that the conduct was not willful or undertaken in bad faith. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (noting that disciplinary actions must be carefully considered and proportionate to the impact on the administration of justice). Defendants have not demonstrated that Plaintiffs' counsel's actions have materially disrupted the proceedings, prejudiced the Defendants' ability to litigate their case, or eroded confidence in the judicial process. To the contrary, Plaintiffs' counsel has continued to actively engage with the

litigation process by filing responses, addressing deficiencies, granting extensions in this and the Related Case, and immediately complying with Court directives when alerted to errors.

Third, revocation of *pro hac vice* admission is particularly disfavored where it would result in significant prejudice to the client. *See Johnson v. Trueblood*, 629 F.2d 287, 294 (3d Cir. 1980) (explaining that courts consider the potential impact on clients when imposing sanctions on counsel). Such a sanction would punish not only Plaintiffs' counsel but also the Plaintiffs, who are not personally responsible for the procedural delays. Finally, courts have emphasized that alternative measures, such as warnings or limited financial sanctions, are more appropriate tools for addressing an attorney's procedural missteps. *See Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 109, *supra* (noting that sanctions must be proportional and that severe measures are reserved for extreme cases involving intentional misconduct). Any concerns about Plaintiffs counsel's ongoing adherence to procedural and ethical standards can be adequately addressed through such lesser sanctions or through targeted directives from the court.

In light of the Third Circuit's clear standards, Defendants' request to revoke Plaintiffs counsel's *pro hac vice* admission is both excessive and unsupported. Plaintiffs' counsel's conduct, while not perfect, was always respectful does not rise to the level of egregiousness required for such a drastic remedy. Revocation at this stage would constitute a disproportionate response and would unnecessarily hinder the adjudication of this matter on its merits. Therefore, the Court should deny Defendants' request for this severe sanction.

## IV.    FINANCIAL SANCTIONS SHOULD BE PROPORTIONAL AND LIMITED.

If the court determines that sanctions are warranted, they should be limited to financial penalties that are proportional to the actual harm caused, if any, ensuring fairness to all parties while deterring future procedural missteps. The Third Circuit has consistently held that sanctions

should be corrective and not punitive, focusing on addressing the specific harm to the judicial process rather than imposing penalties that are overly harsh or unrelated to the misconduct. *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (explaining that sanctions must be tailored to the precise harm and not used to punish excessively).

In this case, Defendants have not demonstrated that Counsel's conduct caused significant harm beyond delay or inconvenience. While procedural delays are a concern, Defendants have not shown any substantive impairment of their ability to litigate the case, such as spoliation of evidence, loss of witnesses, or additional substantial litigation costs directly attributable to Plaintiffs' actions. Additionally, the court should weigh Plaintiffs' counsel's explanations for the delays in determining the appropriate scope of any financial sanctions. Plaintiffs' counsel has cited compelling reasons, including personal health challenges and unforeseen natural disasters, which indicate that the procedural lapses were not made with deliberate disregard for the court's rules. As the Third Circuit has stated, courts must consider the totality of the circumstances, including mitigating factors, before imposing monetary penalties. *See Republic of the Philippines*, 43 F.3d at 74 (noting the importance of considering whether the conduct was deliberate and whether reasonable alternatives exist to achieve compliance).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the court deny Defendants' Motion for Sanctions.

Dated:  April 3, 2025

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

 */s/ Gaston P. Loomis*
Gaston P. Loomis, Esquire (No. 4812)
300 Delaware Ave., Suite 1014
Wilmington, DE 19801
Tel: (302) 300-4510

Email: gloomis@mdmc-law.com

-and-

PALMER LAW GROUP, a PLC
William W. Palmer (Admitted *Pro Hac Vice*)
PALMER LAW GROUP, A PLC
907 Westwood Blvd., No. 218
Los Angeles, CA  90024
Tel: (310) 984-5074
Email: wpalmer@palmercorp.com

*Attorneys for plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, Ludovic Bonnin and Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and copy of **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS** was made on the below counsel of record via electronic mail by service of ECF:

CONNOLLY GALLAGHER LLP
Arthur G. Connolly (#2667)
Max B. Walton (#3876)
Christina M. Thompson (#3976)
1201 N. Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
cthompson@connollygallagher.com

Dated:  April 3, 2025

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

 */s/ Gaston P. Loomis*
Gaston P. Loomis, Esquire (No. 4812)
300 Delaware Ave., Suite 1014
Wilmington, DE 19801
Telephone: (302) 300-4512
Facsimile: (302) 654-4031
E-mail: gloomis@mdmc-law.com