IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WALTER SCHRAMM, et al.,                )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        C.A. No. 22-1443 (MN)
                                       )
BRENDA MAYRACK, et al.,                )
                                       )
                    Defendant.         )

## __MEMORANDUM OPINION__

Martin D. Haverly, MARTIN D. HAVERLY ATTORNEY AT LAW, Wilmington, DE; William W. Palmer, PALMER LAW GROUP – Attorneys for Plaintiffs.

Arthur G. Connolly, Max B. Walton, Christina M. Thompson, CONNOLLY GALLAGHER LLP, Wilmington, DE – Attorneys for Defendants.

September 30, 2025
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiffs Walter Schramm, Christine Kydd, Mark Hilferty, Ludovic Bonnin, ("Plaintiffs") move for summary judgment in their favor on Count I of the Amended Complaint. (D.I. 23, 86). Defendants Brenda Mayrack, Brian Wishnow, and Richard J. Geisenberger ("Defendants"), in their official capacities as the Delaware State Escheator, Assistant Director of Enforcement of the Office of Unclaimed Property ("OUP"), and Secretary of Finance for the State of Delaware, respectively, filed a cross-motion for summary judgment on the same Count. (D.I. 94). The motions have been briefed and submitted along with concise statements of fact. (D.I. 87, 88, 95, 98, 99).[1] The Court heard argument. (D.I. 137). After careful consideration, and for the reasons set forth below, the Court will DENY Plaintiffs' motion for summary judgment and GRANT Defendants' motion.

## I.    **BACKGROUND**

Plaintiffs are a group of individuals who argue Defendants unconstitutionally claimed their property, including securities, as abandoned and co-opted it for the State's general use under Delaware's Unclaimed Property Law, 12 Del. C. §§ 1130-1190 ("DUPL"), which codifies the common-law doctrine of escheat. (D.I. 79 at 1 n.1). To that end, Plaintiffs filed a putative class action against the State of Delaware and Defendants, all employees of the State, in their personal and official capacities on November 11, 2022 ("the Complaint"). (D.I. 1).

---

[1]    Well-acquainted readers will note that the Court cites only first-round briefing from the parties on the motions. This is because the Court denied the Plaintiffs' Motion to Deem Timely their Combined Answer and Reply Brief on summary judgment, which was filed months after the parties' originally-agreed schedule. *See* D.I. 138. After that motion was filed, the parties stipulated and the Court ordered on March 25, 2025, that Defendants need only file a reply if Plaintiffs' motion was granted. (D.I. 118). It was not, and at oral argument, Defendants asked the Court to decide summary judgment on the papers before it. (D.I. 137 at 106:4-5).

The Complaint alleged constitutional violations of the Fifth Amendment takings and Fourteenth Amendment due process clauses under 42 U.S.C. § 1983.  (*Id*.).  In response, the State and Defendants moved to dismiss the claims for lack of jurisdiction and failure to state a claim.  (D.I. 11).  The parties completed briefing on that motion on March 7, 2023.  (D.I. 12, 14, 15).  On September 29, 2023, the Court dismissed the claims against the State of Delaware entirely and against the Defendants in their personal capacities but permitted amendment against the Defendants in their official capacities as to the Fifth and Fourteenth Amendment claims.  Additionally, the Court ordered an expedited discovery schedule as to whether notice was given to Plaintiffs consistent with the Fourteenth Amendment's due process requirement.  (D.I. 17).

Plaintiffs then filed the Amended Complaint and the parties began discovery.  (D.I. 23, 24).  On November 17, 2023, Defendants filed a second motion to dismiss, which the parties finished briefing by February 9, 2024.  (D.I. 27, 28, 35, 45).  After considering the briefing, the Court dismissed Count II of the Amended Complaint, which alleged a takings claims under the Fifth Amendment.  (D.I. 79).  The Court also struck arguments Plaintiffs raised as outside the scope of leave to amend, including new arguments that "Defendants violated other Constitutional safeguards and federal securities laws" and "expan[sions] upon their allegations regarding third-party auditors."  (D.I. 79 at 11-12).  As such, the only claim that remains is Plaintiffs' First Claim for Relief, which challenges the notice provisions of the DUPL under the Fourteenth Amendment.  (D.I. 23, 80).

While the Court considered the briefing for the second motion to dismiss, the parties conducted discovery on the notice issue.   The parties exchanged requests for documents, interrogatories, and admissions.   (D.I. 25, 26).   They noticed and re-noticed depositions.  (*E.g.*, D.I. 39, 40, 41, 42, 61, 66, 67, 79).  Once complete, the parties informed the Court that

summary judgment motions and briefing were forthcoming.  (D.I. 81).  Consistent with that report and the Court's subsequent rulings, the parties filed their motions and briefs.  (D.I. 86, 87, 94, 95).  Following multiple stipulated extensions, Plaintiffs filed an untimely combined answering and reply brief.  (D.I. 115).  The Court heard argument on the Plaintiffs' request for that brief to be deemed timely filed and ultimately denied the request.  (D.I. 137, 138).  At the conclusion of argument, the Defendants elected not to file reply briefing and accepted the Court's decision to rule on the papers before it.  (D.I. 137 at 106:4-5).  The Court now considers summary judgment.

## II.  <u>LEGAL STANDARD</u>

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Beyond that burden, the court must also find for itself whether there exists a genuine dispute of material fact and if the movant deserves summary judgment.  *United States v. Brace*, 1 F. 4th 137, 143 (3d Cir. 2021).

"Material" facts are those that "could affect the outcome of the case."  *Thomas v. Tice*, 948 F. 3d 133, 138 (3d Cir. 2020) (citation omitted).  "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  *Lamont v. New Jersey*, 637 F. 3d 177, 181 (3d Cir. 2011).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  The non-moving party's evidence "must

amount to more than a scintilla but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989).

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F. 3d 217, 222 (3d Cir. 2014). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Aman v. Cort Furniture Rental Corp.*, 85 F. 3d 1074, 1081 (3d Cir. 1996) (citation modified).

## III.    DISCUSSION

When property is considered abandoned, the state as sovereign may escheat, or take title to, the property in question, whether by statute or by "operation of law." *Hamilton v. Brown*, 161 U.S. 256, 263 (1896). Today, "[a]ll fifty states, and the District of Columbia, have a set of unclaimed property laws." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F. 3d 374, 383 (3d Cir. 2012). In Delaware, the DUPL is administered by the State Escheator, who operates the Office of Unclaimed Property to help reunite individuals with their unclaimed property. *See, e.g.*, 12 Del. C. § 1132. The current version of the DUPL requires mailed notice before the State escheats property, although the prior-enacted version, under which Plaintiffs claim they suffered their injury, required only notice by newspaper publication circulated twice a year. *Compare* 12 Del. C. § 1150 (2017) (*added by* 81 Del. L. 2017, ch. 1, § 2, eff. Feb. 2, 2017) *with* 12 Del. C. §§ 1130-77 (2016).

Whether "notice reasonably calculated, under all the circumstances" was given to a party before the state assumes custody or ownership of property implicates that party's due process rights. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Arguing the DUPL violates that due process, Plaintiffs assert that the State Escheator exceeded her statutory and

constitutional authority by seizing ownership of their property and then failing to provide requisite notice. (D.I. 87 at 8). They also contend that the DUPL's present notice provisions, entailing direct mail, publication, and website notice, "fail[] to comply with the notice and due process requirements" guaranteed under the Constitution. *Id*.

In line with that argument, Plaintiffs request the Court order declaratory and injunctive relief pursuant to their "substantive due process rights." (D.I. 23 at 28). But here, where Plaintiffs assert that the "Defendants engage in unnoticed property seizures," including claims to shares of stock, Plaintiffs are really claiming violation of their procedural due process rights. (D.I. 87 at 5); *Abbott v. Latshaw*, 164 F. 3d 141, 146 (3d Cir. 1998) ("[P]rocedural due process is implicated [] where . . . there has been a taking or deprivation of a legally protected [] property interest."). Under that framework, to succeed, Plaintiffs must demonstrate that the notice afforded by the DUPL does not "provide due process of law," meaning that it does not afford "notice and opportunity for hearing appropriate to the nature of the case." *Thompson v. Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 44 F. 4th 188, 194 (3d Cir. 2022); *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (citing *Mullane*, 339 U.S. at 313)). In other words, if the DUPL were to "provide[] apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies," then Plaintiffs cannot argue the DUPL fails to provide due process of law. *Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 87 (3d Cir. 2020).

Countering Plaintiffs' motion, Defendants make two broad points: first, Defendants invoke justiciability, arguing that Plaintiffs fail to allege a due process violation because their claims lack standing, are precluded by the Eleventh Amendment and moot, or are otherwise barred by the 2-year statute of limitations applicable to § 1983 actions in Delaware; and, second, Defendants assert that the notice afforded Plaintiffs under the pre-2017 version of the DUPL, when all Plaintiffs

became aware of their escheated property, satisfied their due process rights. *See Thompson*, 44 F.

4th at 194; (D.I. 95 at 5-6). Defendants maintain that, on the law, Plaintiffs seek only injunctive

relief, and that they cannot seek retroactive injunctive relief on a version of the DUPL that no

longer exists. (*See* D.I. 95 at 14-21). They then assert that, should the Court find Plaintiffs' claims

justiciable, they nonetheless fail as a matter of law because the DUPL provided more than adequate

notice before the State took control of the property at issue. (*Id.* at 21-24). Success on any of the

justiciability arguments would be dispositive of the claim, so the Court begins there.

### A.    Plaintiffs Lack Standing to Challenge the DUPL

Standing requires an injury in fact that is both concrete and particularized, actual or

imminent, not hypothetical, and which is fairly traceable to the action of the defendant and

redressable by a court's favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

*(TOC), Inc.*, 528 U.S. 167, 180-181 (2000). When purporting to represent a class, as Plaintiffs do

here, each named plaintiff must demonstrate its own standing. *See Spokeo, Inc. v. Robins*, 578 U.S.

330, 338 n.6 (2016). And "[w]hen a plaintiff seeks prospective (forward-looking) relief in the

form of an injunction or a declaratory judgment, they must show that they are likely to suffer future

injury"; that is, the "threatened injury must be certainly impending to constitute injury in fact."

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 318 (3d Cir. 2022) (citation modified);

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). To show an injury

is impending, there "must be a realistic chance – or a genuine probability – that a future injury *will*

occur in order for that injury to be sufficiently imminent." *New Jersey Physicians, Inc. v. President*

*of U.S.*, 653 F. 3d 234, 238 (3d Cir. 2011) (emphasis added).

Defendants assert that Plaintiffs demonstrate no "imminent risk of future harm" given that

they seek only injunctive relief, that their escheatment claims have been remitted, and that they

seek relief on a statute that no longer exists. (D.I. 95 at 15). They contend that each Plaintiff has,

after the date at which their "abandoned property was reported and remitted to the State . . . since received notice of their property's reporting." (*Id.* at 14-15). Thus, they argue, Plaintiffs seek only prospective relief, to which there is no "redress [for] their alleged injury whatsoever," nor can there be "imminent risk of future harm," stripping the Plaintiffs of their standing. (*Id.*). The Court agrees.

As to standing, Plaintiffs' arguments and factual offerings are sparse. As the party invoking federal jurisdiction, Plaintiffs must establish standing when the lawsuit is brought and "maintain[] it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). For present purposes, the only claim Plaintiffs advance is a challenge to the DUPL's notice provisions. With that in mind, Plaintiffs could, then, establish standing if they can adduce facts that show that their interest – any property they might have – is subject to impending escheat by the Defendants, and that the DUPL's failure to provide notice would effectuate that escheat. *See Carney*, 592 U.S. at 60 (explaining a party must show a likelihood of injury contemplated by the challenged statute to demonstrate injury in fact). Of the four named Plaintiffs, three reside outside of the state of Delaware and clearly lack standing; the last, Plaintiff Hilferty, resides in Delaware, has less clear claims of property than the other three, and presents a closer case.

### 1.     The Non-Delawarean Plaintiffs

Were the non-Delawarean plaintiffs able to provide even one affidavit or allegation of specific fact, that might have supported their standing to bring suit seeking injunctive relief. But the Court, on the undisputed record, is able to make such no inference in Plaintiffs' favor. Conversely, each named plaintiff outside of the state of Delaware indicated that they face *no* imminent risk of escheat. Plaintiff Schramm testified that the securities the State remitted to him were the only shares at issue. (D.I. 96-1 at 18:3-5) ("Q. Is there any other property that you claim is at issue in this litigation or is that a complete list? A. That's the complete list."). Plaintiff Kydd

conceded that there was no other property that might be at issue. (D.I. 96-2 at 16:17-19) ("Q. Sitting right here, can you think of any other property that might be a component of this litigation? A. No."). Plaintiff Bonnin recounted the same. (D.I. 96-4 at 10:12-16) ("Q. And I just listed eight different companies. To the best of your knowledge, are there any other propert[ies] that you lay claim to at issue in this litigation? A. Not to my knowledge, no."). So with the undisputed record before it, the Court cannot find that any of the named, non-Delaware plaintiffs have articulated an injury, contemplated by the challenged notice provisions, that is "certainly impending." *Clapper*, 568 U.S. at 409.

*Carney* supports that conclusion. There, the Supreme Court considered a Delaware lawyer's claim of a violation of his federal constitutional rights. In support of his claim of standing, the plaintiff pointed to two recorded deposition statements and an interrogatory response. 592 U.S. at 60-61. Reviewing the appeal of summary judgment, the *Carney* Court could not reconcile those statements with the record evidence and found that the plaintiff's averments did not confer standing, as they were only able to "suggest[] an abstract, generalized grievance." *Id*. at 63.

Here, the record evidence contravenes Plaintiffs' position in a more decisive way. Plaintiffs attempt to derive standing from the same sort of abstract, generalized issue *Carney* precluded. *Compare* (D.I. 87 at 19) ("Delaware may seize private property *from anyone living anywhere in the world* without notice.") (emphasis added) *with Carney*, 592 U.S. at 58 ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"). And at argument, Plaintiffs' attorney reiterated that their theory of standing would support that conclusion. (D.I. 137 at 61:9-22) ("THE COURT: So under your theory . . . every person in the entire world has standing because every person in the entire world could some day have something

8

that gets escheated in Delaware. … MR. PALMER: Yes. THE COURT: Yes, every single person has standing? MR. PALMER: This is a threat to everyone."). But as is clear, those sorts of generalized grievances, without any supporting evidence, are insufficient to sustain standing.[2] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

### 2.    <u>Plaintiff Hilferty, a Delaware Resident</u>

With respect to Plaintiff Hilferty, the Court first reiterates that standing cannot be conferred simply by virtue of residence within the State, because it is again the type of generalized grievance that *Carney* precludes. *See Carney*, 592 U.S. at 58; *see also Food and Drug Admin.*, 602 U.S. at 381 ("A citizen may not sue based only on an asserted right to have the Government act in accordance with law.") (citation modified). So, although Plaintiff Hilferty acknowledged that there *may* be unclaimed property that may yet be escheated, he also testified – at length – that he did not hold an interest in 13 of the 14 properties claimed in the parties' interrogatories. (*See* D.I. 96-3 at 17:10-31:21, 41:9-12). Indeed, Hilferty never submitted a claim for the only purported property he claimed was at issue. (D.I. 96-3 at 33:24-34:2) ("Q. So you would agree with me that you never finished your claim with the OUP for this Inmar Brand Solutions property; is that correct? A. Yes.").

---

[2]    Plaintiffs might point to *Taylor v. Westly*, 488 F. 3d 1197, 1199 (9th Cir. 2007), as contradicting the Court's analysis given the escheat of Plaintiffs' shares in that case sufficed for standing. But that case is inapposite here; the Ninth Circuit adjudicated *Taylor* following the District Court's denial of a preliminary injunction. *Id.* At that stage, only *allegations* that a plaintiff "ha[s] suffered sufficient injury to comply with Article III's case or controversy requirement" are necessary, unlike the stricter standard at summary judgment. *Compare The Pitt News v. Fisher*, 215 F. 3d 354, 360 (3d Cir. 2000) *with Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And even then, the Ninth Circuit relied on California's escheat regime, which provided only publication notice, to infer a future likelihood of injury. *See Taylor*, 488 F.3d at 1199. Here, where the DUPL's regime has been changed to include mail and website publication notice, there is no similar likelihood of injury.

Thus, although the Court cannot make an inference on the undisputed record in Plaintiffs' favor conferring standing on Plaintiff Hilferty, there remains the *faintest* possibility that a claim he submits in the future may have standing, because the State's regime is not "so far removed from its distant (even if predictable) ripple effects" as to completely void his concerns about his constitutional rights. *Food and Drug Admin.*, 602 U.S. at 383. But again, standing requires a concrete and particularized injury, and without more than what is in the factual record, the Court cannot be satisfied at summary judgment that Plaintiff Hilferty has established standing. *Yaw*, 49 F.4th at 318.

In essence, Plaintiffs' theory of standing for Hilferty asks the Court to accept that *past* escheat of his property, without proper notice, creates standing for *future* risk of escheat, without proper notice, even if there is no property at risk of escheat. With better factual development, that might be so for a Delaware resident who is a likely target for the State's unclaimed property outreach. But here, with the record as developed, that theory is not supported and cannot confer standing. Accordingly, the justiciability inquiry ends here, summary judgment is appropriate for Defendants, and the Court need not turn to the Defendants' other arguments. The Court finds it prudent, however, to briefly address two other issues in the Plaintiffs' contentions before concluding.

## B.    Plaintiff Hilferty's Claims are Time-Barred Under Delaware's Statute of Limitations

Attacking again on justiciability grounds, Defendants argue the undisputed record shows that Plaintiffs' notice claim under § 1983 fails because the statute of limitations has run. (D.I. 95 at 17-21). Although the Court agrees that Plaintiff Hilferty does not have standing, the statute of limitations question is prudent for his claims, because although every other named plaintiff disavowed the possibility of future escheat, Plaintiff Hilferty did not; and accordingly, there is

some likelihood (however remote) his injury under the DUPL's notice provisions could come to pass, and so the Court explains below another ground as to why his claim is not justiciable.

For statute of limitations purposes, § 1983 claims are treated as personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). "In Delaware, § 1983 claims are subject to a two-year limitations period." *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017); 10 Del. C. § 8119. When an action accrues, or in other words when the statute of limitations begins to run, "is a question of federal law[;]" here, the answer to that question is "when the plaintiff *knew or should have known* of the injury upon which its action is based." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Sameric Corp. v. City of Philadelphia*, 142 F. 3d 582, 599 (3d Cir. 1998) (emphasis added).

Plaintiffs did not address the statute of limitations issue in their briefing. And as the Court has already concluded, the non-Delawarean plaintiffs do not have standing to pursue their claims. *Supra* III.A.1. But at argument, Plaintiffs' counsel cobbled together two arguments to support timeliness for the Plaintiffs' claims, including Mr. Hilferty; first, that because the Plaintiffs' received *constructive* notice, not actual notice, their claims cannot accrue until they receive the *actual*, deficient notice from the State. (D.I. 137 at 68:4-21, 72:14-19). And second, as the Court understands it, that even if the Plaintiffs *did* receive notice, the statute of limitations was tolled. (*Id*. at 73:15-25). Defendants responded to those arguments, emphasizing that accrual for statute of limitations purposes relies on "when you knew or should have known" that the cause of action existed, and that because Plaintiffs' claim is restricted to notice, that cause of action accrued as soon as Plaintiffs could piece together that they believed the DUPL's notice was deficient. (*Id*. at 81:12-82:7).

11

Again, Defendants have the better of the argument. Plaintiffs' contention that *actual* notice is required is unavailing, as accrual requires only that a plaintiff have enough information to be able to "file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997). This would be the same even if this aspect of § 1983 law were one of the several to which "federal law looks to the law of the State in which the cause of action arose," *Wallace*, 549 U.S. at 388, because Delaware law is clear that a statute of limitations begins to run when a plaintiff is "aware of the facts giving rise to the wrong, i.e. on inquiry notice." *Bertola v. Fisher-Price, Inc.*, No. N21C-01-115 (FJJ), 2025 WL 1166431, at *5 (Del. Super. Ct. Apr. 21, 2025) (citing *Weiss v. Swanson*, 948 A. 2d 433, 451 (Del. Ch. 2008)).

Plaintiff Hilferty was aware of the DUPL's supposedly deficient notice provisions as early as 2016; he filed a claim for property he would assumedly not have known was co-opted in 2016. (D.I. 96-3 at 9:6-12). And in deposition, he also admitted that he had learned, beyond the scope of the DUPL's notice provisions, of the State's property claiming regime in 2019, which prompted him to submit yet another claim. (D.I. 96-3, 12:7-10) ("A. I know that -- this wasn't initiated by anybody, but probably saw something on local news, check with your state for unclaimed [property] . . . And that's probably what initiated my – me to do that."). So, at the latest, Plaintiff Hilferty knew of the facts to which he could "file suit and obtain relief", or was "objectively aware of the facts giving rise to the wrong" in 2019, which places his current claims squarely outside Delaware's statute of limitations for a complaint filed in 2022. *Wallace*, 549 U.S. at 388; *Weiss*, 948 A. 2d at 451.[3]

---

[3]     This understanding of accrual comports with the Supreme Court's language in *Corner Post, Inc. v. Board of Governors of Fed. Res. Sys.*, which states that where an act is not injurious until consequences occur, accrual occurs when the loss or damage is incurred. 603 U.S. 799, 810-11 (2024) (citation modified). Here, even assuming that Plaintiffs' due process claim is such an act, Plaintiffs do not argue that there are genuine issues of material fact

Were Plaintiffs able to show that some rule of law tolls the statute of limitations, then Plaintiff Hilferty's claims might be timely. As it were, Plaintiffs' other argument that the statute of limitations should be tolled holds no weight either. The tolling of a statute of limitations is squarely one where federal law looks to state law. *Wallace*, 549 U.S. at 394. Under Delaware law, at summary judgment a plaintiff "bears the burden to show a viable tolling doctrine." *Bertola*, No. N21C-01-115 (FJJ), 2025 WL 1166431, at *2. Although the defenses to the statute of limitations were not defended on the papers, at argument counsel invoked theories of "estoppel [and] the discovery rule," and the Court thus considers their closest Delaware analogues, equitable tolling and the time-of-discovery rule. (D.I. 137 at 75:1-3); *Bertola*, No. N21C-01-115 (FJJ), 2025 WL 1166431, at *3.

Where the time-of-discovery rule is invoked, Delaware law prevents the statute of limitations from running until "a person of ordinary intelligence and prudence" discovers the facts, or circumstances that would lead to discovery of facts, which constitute the basis of action. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A. 2d 312, 319 (Del. 2019). As the Court has already noted, the undisputed record shows that Hilferty submitted claims for his unclaimed property in 2016 and 2019. (D.I. 96-3 at 9:6-12, 12:7-10). Consequently, the time-of-discovery rule can only reasonably toll his claims until 2019, which does not salvage his claims here.

Nor can the doctrine of equitable tolling right this timeliness wrong. That doctrine applies to "stop[] the statute from running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary." *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A. 3d 1160, 1217 (Del. Ch. 2022). On a claim challenging the State's notice provision in its escheat regime, it

---

that the consequences, of the purported violation occurred within the statute of limitations, nor can the Court discern that that is the case on the record submitted.

remains to be seen whether the State acts as fiduciary. But here, that is irrelevant; equitable tolling only stops the statute of limitations from running "until a plaintiff discovers, or by exercising reasonable diligence should have discovered, his injury." *Weiss*, 948 A.2d at 451. And again, Plaintiff Hilferty knew his property had been taken suffice to claim his property in 2016, or at the latest 2019, and so his claim at that point accrued, the statute of limitations began to run, and his claims are untimely. (D.I. 96-3 at 9:6-12).

### C.    The Court Will Not Consider Plaintiff's Previously Struck Arguments

Finally, Plaintiffs' summary judgment brief raises brand new arguments, again invoking the federal securities laws and now co-opting the law of escheat priority to attack third-party auditors. (D.I. 87 at 16-19). Those arguments essentially cut and paste allegations the Court struck from the Amended Complaint as outside the permissible scope of amendment. (D.I. 79 at 12-13). "As a rule[,] courts should be loathe" to revisit prior decisions; by raising those arguments again, that is exactly what Plaintiffs ask the Court to do. *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 817 (1988). The Court will not consider arguments it has already stricken.

## IV.    CONCLUSION

Plaintiffs have long maintained that Defendants have improperly escheated their property. But they fail to establish, on the undisputed record, their standing to challenge those supposed violations nor the timeliness of their claims. For that, and the above reasons, the Court will DENY Plaintiffs' motion for summary judgment (D.I. 86) and GRANT Defendants' motion for summary judgment. (D.I. 94). An appropriate Order will follow.